**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION (COLUMBUS)**

| | |
|---|---|
| BRIAN ECHARD, on behalf of himself and all others similarly situated, | Case No.: 2:21-cv-05080-MHW-KAJ |
| Plaintiff, | Judge Michael H. Watson |
| v. | Magistrate Judge Kimberly A. Jolson |
| WELLS FARGO BANK, N.A., | |
| Defendant. | MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT |

## I.    INTRODUCTION

Plaintiff consulted with Defendant under Local Rule 7.3 and Defendant does not oppose this motion and the preliminary approval of the Settlement Agreement.

In January 2021, Plaintiff Brian Echard filed this proposed nationwide class action on behalf of customers of Wells Fargo Bank, N.A. ("Wells Fargo") whose mortgages were placed into Wells Fargo's Coronavirus Aid, Relief, and Economic Security ("CARES") Act Forbearance program without adequate informed consent. Plaintiffs Stephen and Heather Shimp are joining Mr. Echard (collectively, "Plaintiffs" or "Class Representatives"). *See* Ex. 1 (Settlement Agreement) at Exhibit D (Second Amended Complaint). Plaintiffs allege that Wells Fargo breached its contracts and violated the CARES Act and other laws by placing mortgages into forbearances without customers' adequate informed consent.

On April 25, 2022, this Court ruled that Plaintiffs and Wells Fargo "deserve the opportunity" to try to resolve the dispute through mediation. ECF No. 106 at 11. Since that ruling, the Parties have been mediating before retired U.S. District Court Judge Andrew J. Guilford. After the exchange of extensive informal discovery, comprehensive briefing, and expert reports, and days of mediation, the Parties accepted Judge Guilford's mediator's proposal, negotiated other critical terms with the aid of Judge Guilford, and executed the Settlement Agreement (hereafter the "Settlement") which is now before the Court. This Settlement was only reached after four full days of mediation over the course of several months.

The proposed Settlement, if approved, would constitute a major victory for the proposed settlement class. It would create a non-reversionary, $94 million Settlement Fund[1] to provide meaningful compensation to all members of the Class. Upon the Settlement's effective date, the first $35 million will be paid out as Automatic Payments to all Class Members who do not opt out of the Settlement, split equally among the approximately 212,000-213,000 loans whose borrowers

---

[1] Capitalized terms are defined in the Settlement Agreement.

are members of the Class. The remaining Net Settlement Amount,[2] will form a Claims Fund to compensate Class Members for any actual damages they incurred due to being placed in Forbearance without informed consent. These Additional Payments will be distributed through a claims process overseen by a special master with extensive experience. Thus, the $94 million Settlement Fund will make the Class whole by providing an Automatic Payment to address inconvenience and non-compensatory claims that are common to the Class and will also make Additional Payments for actual damages incurred as a result of a Forbearance. As discussed below, the proposed Settlement is worthy of this Court's preliminary approval. Wells Fargo does not oppose this motion.

## II. FACTUAL AND PROCEDURAL HISTORY

### A. Factual Background and Case Proceedings

Plaintiffs in this action allege that their home mortgage loans serviced by Wells Fargo were placed into Forbearance without their adequate informed consent in the early days of the COVID-19 pandemic or as part of Wells Fargo's CARES Act Forbearance program, resulting in damages to their credit, their ability to borrow, and their ability to refinance at historically low interest rates. ECF No. 14 at 13, 30.

This case was filed on January 28, 2021, in the Western District of Washington. ECF No. 1. Since that time, Wells Fargo filed a motion to dismiss, ECF No. 6, to which Plaintiff Echard responded, ECF No. 13, and filed the First Amended Complaint. ECF No. 14. Subsequently, Wells Fargo's Motion for Judgment on the Pleadings was fully briefed by both Parties, but ultimately not ruled upon. ECF Nos. 19, 25, 26, 30. After a circuitous journey, the case traveled from Washington, to the Northern District of California, and ultimately to the Southern District of Ohio on October 19, 2021. ECF No. 56.

When Wells Fargo and Plaintiffs decided to attempt to settle the case through mediation,

---

[2] Net Settlement Amount is defined as the Settlement Fund after payment of any award of fees and expenses to Plaintiffs' counsel ("Class Counsel"), Class Representative service awards, and settlement administrator's ("Administrator") costs and expenses.

Counsel and plaintiffs in competing class actions[3] moved to intervene in this action for the purpose of transferring or staying the case, ECF No. 71 at 2, 4. Before the Parties had even begun mediation, the putative intervenors claimed, without any basis, that the planned mediation would be nothing but a "reverse auction." *Id*. at 5.

The Court denied to intervention to allow the mediation to go forward, holding, "If mediation efforts are successful, this action would be resolved, relief may be provided to the putative class, and the cost of litigation would be reduced. Thus, intervention to transfer or stay would delay or deny efficient mediation in this case . . . with potential resolution near— intervention is not favored." ECF No. 106 at 11.

### B.    Mediation

The Parties mediated the case with the assistance of retired U.S. District Court Judge Andrew J. Guilford. ECF No. 105; Decl. of Ret. Judge Andrew Guilford in Supp. of Mot. for Prelim. Approval ("Guilford Decl."). In advance of mediation, Wells Fargo shared over 37,000 relevant documents with Plaintiffs' counsel, including Class-wide records and 179 data fields with information for over a million customers, and met with Plaintiffs' counsel on multiple occasions during which Wells Fargo explained the records and data it produced and answered Plaintiffs' questions. Decl. of Knoll Lowney ("Lowney Decl."), ¶ 12. Through formal discovery, Wells Fargo produced over 83,000 pages of documents and responded to requests for production. *Id*. Plaintiffs' negotiations were also informed by several experts. Plaintiffs retained an expert in data analysis to assist with further understanding of the Wells Fargo data. *Id.* at ¶ 14; *and see*

---

[3] There is now effectively one putative nationwide class action against Wells Fargo with claims and putative classes that overlap with Plaintiff Echard's, *In re Wells Fargo Forbearance Litigation*, 3:20-cv-06009-JD (N.D. Cal.), which consists of the following actions that were consolidated on August 19, 2022 for all pretrial proceedings: *Delpapa v. Wells Fargo Bank, N.A. et al.*, 3:20-cv-06009-JD (N.D. Cal); *Green v. Wells Fargo & Co., et al.*, 3:20-cv-5296; *Urista v. Wells Fargo & Co. et al.*, 3:22-cv-00227 (N.D. Cal.); *Forsburg v. Wells Fargo & Co, et al.*, No. 3:22-cv-02890 (N.D. Cal); and *Healy v. Wells Fargo Bank, N.A. et al.*, 3:22-cv-00226 (N.D. Cal). *See* ECF No. 71 at 1, 86 at 1. The consolidated actions were brought in district courts nationwide. While in the Northern District of California, Plaintiff Echard attempted to collaborate with the other plaintiffs but was unsuccessful. ECF Nos. 71 at 3, 86 at 5, 89 at 1. A second case, *Harlow v. Wells Fargo, et al.*, A.P. No. 20-07028 (Bankr. W.D. Va.) (Pet. No. 17-71487), alleges only bankruptcy claims and does not overlap with the instant case. *See Harlow v. Wells Fargo & Co.*, No. 7:22-cv-00267, 2022 U.S. Dist. LEXIS 109459, at *26 (W.D. Va. June 21, 2022) (granting Wells Fargo's motion to dismiss non-Chapter 13 claims and remanding the case to bankruptcy court).

---

MOTION FOR PRELIMINARY APPROVAL                                                    3

Decl. of Arthur Olsen ("Olsen Decl."). Plaintiffs also retained a highly credentialed economist to assist Plaintiffs with formulating and refining damages theories and calculations to inform an appropriate demand for settlement. Decl. of Stanley Smith ("Smith Decl."); Lowney Decl., ¶ 14. Finally, following unfounded accusations of impropriety from counsel in the competing putative class actions, Plaintiffs engaged a specialist in Ohio ethics rules and class action ethics to further ensure that the interests of absent Class Members were never compromised. Lowney Decl., ¶ 14.

Judge Guilford presided over four full days of mediation between April and July 2022. *See* Guilford Decl. On the third day of mediation, the Parties' negotiations stalled, which was only broken when both Parties accepted Judge Guilford's "mediator's proposal" for what he deemed to be a fair and reasonable settlement. *Id*. Given the competing counsels' disparagement of the mediation, Judge Guilford took the unusual step of submitting a declaration to this Court testifying to the vigorous, arms-length negotiation that resulted in the proposed Settlement. *Id*.

## III.     PROPOSED SETTLEMENT TERMS

### A.     Class Definition and Size

The Settlement Class (hereinafter "Settlement Class," "Class," or "Class Members") is defined in the Settlement Agreement as follows:

> All persons in the United States who: (a) had a Mortgage serviced by Wells Fargo that was placed into a Forbearance without Adequate Informed Consent between March 1, 2020 and December 31, 2021.

Ex. 1 (Settlement Agreement). "Without Adequate Informed Consent" is defined in detail in the Settlement Agreement. *Id*. at I.64. For example, it includes certain customers (i) whose loans were placed into forbearance as a result of an online or automated phone system ("IVR") request before more robust disclosures were added; (ii) who were put into forbearance through a Proactive Wells Fargo Business Decision, rather than in response to the customer's express request for forbearance; and (iii) whose forbearances Wells Fargo previously determined were erroneous.[4]

---

[4] Excluded from the Settlement Class are customers (i) who were in a Chapter 13 bankruptcy case on the date that they entered Forbearance; (ii) Defendant's officers, directors, and employees; and (iii) Defendant's attorneys and Named Plaintiffs' attorneys. *Id*. at I.11.

Wells Fargo has identified approximately 212,000-213,000 loans whose borrowers are customers to be included in the Settlement Class. Lowney Decl., ¶ 24.

**B.     Benefits to Class Members**

This Settlement, if approved, will provide generous compensation to each and every Class Member, as specified in the Distribution Plan. Ex. 1 (Settlement Agreement) at Ex. B. To summarize, the first $35 million will be distributed pro rata among the Class (the "Automatic Payment Fund"), for an average minimum payment of approximately $165 per loan that is included in the Class. *Id.* at ¶ B.1. Then, all Class Members are eligible for an additional payment from the Settlement Fund as part of a claims process. *Id.* at ¶ B.2. The "Claims Fund" for this purpose is the net of the first $35 million and the amount to fund the service awards, Class Counsel fees and expenses, and the cost of class administration. *Id.* at ¶ I.10. Finally, any amount remaining after distribution of the Automatic Payment Fund and the Claims Fund will be distributed pro rata again, unless the per person amount does not exceed $10, in which case, the remaining funds will go to *cy pres*. *Id.* at Ex. B, ¶ B.3.

The Distribution Plan ensures that all Class Members are provided with compensation and allows those Class Members who suffered actual, provable harm as a result of Wells Fargo's actions to request further compensation for those injuries. *Id.*

The Settlement treats all Class Members equally and would not create any subclasses or entitlement to preferred benefits. Immediately after the Settlement becomes effective, the Administrator will promptly send to each Class Member their pro rata share of the $35 million Automatic Payment Fund, and every Class Member will be entitled to file a claim if they suffered any actual, provable loss as a proximate result of the Forbearance.

**C.     Fees, Costs, and Service Awards**

The Settlement provides that Plaintiffs may file a separate motion to seek a service award

---

of up to $12,500 for each Class Representative (individual or married couple),[5] through separate motion. This potential service award reflects the Class Representatives' assistance in representing the Class throughout the litigation and in the mediation process. Notably, they assisted counsel in providing detailed and often cumbersome records of their mortgages and mortgage statements, their credit histories, and their communications with Wells Fargo, including having to review texts, emails, and journal entries. Lowney Decl., ¶ 13. They also assisted in reviewing pleadings, preparing declarations, consulting with counsel during the course of litigation, monitoring the course of this case, and consulting with counsel regarding the terms of the Settlement. *Id.*; ECF No. 26.

Class Counsel intends to request up to 25% of the Settlement Fund for a Fee & Expense Award through a separate motion to be filed within forty-five (45) days of the Notice Deadline. Ex. 1 at VII.A. These awards are then subject to Court approval.

## IV.     ARGUMENT

### A.     This Court Should Grant Preliminary Approval of the Proposed Settlement

Rule 23(e) of the Federal Rules of Civil Procedure governs settlement of class action lawsuits and provides that a "class may be settled, voluntarily dismissed, or compromised only with the court's approval." Approval of a class action settlement generally proceeds through three stages: (1) preliminary approval; (2) notice to the class; and (3) a fairness hearing and final approval. *Alvarado v. Memphis-Shelby Cty. Airport Auth.*, Nos. 99-5159; 99-5162, 2000 U.S. App. LEXIS 21259, *15 (6th Cir. Aug. 15, 2000) (citation omitted).

Because the Settlement in this matter passes the standards for this first step in the approval process—consideration of preliminary approval—Plaintiffs, with the agreement of Wells Fargo, ask the Court to grant their request for preliminary approval of the proposed Settlement.

---

[5] These amounts are reasonable, representing only 0.01% of the gross settlement amount. *See, e.g.*, *O'Donnell v. Fin. Am. Life Ins. Co.*, No. 2:14-cv-1071, 2018 U.S. Dist. LEXIS 244674, at *4, 19 (S.D. Ohio Aug. 24, 2018) (Watson, J.) (approving incentive award of $7,500 in a case with gross settlement amount of $1.13 million); *Rotondo v. JPMorgan Chase Bank, N.A.*, No. 2:19-cv-2328, 2019 U.S. Dist. LEXIS 201616, at *24-26 (S.D. Ohio Nov. 20, 2019) (approving incentive payment of $20,000 in case with gross settlement amount of $5,000,000) (collecting cases).

---

### i.     This settlement meets the standards for preliminary approval

At the preliminary approval stage, the Court must determine "whether the settlement is fair, reasonable, and adequate." *Stanley v. Turner Oil & Gas Props.*, No. 2:16-cv-386, 2018 U.S. Dist. LEXIS 239761, at *5 (S.D. Ohio Mar. 6, 2018) (citation omitted). Courts often recite the following standard when considering motions for preliminary approval:

> In determining whether preliminary approval is appropriate, the Court should evaluate whether the proposed settlement "appears to be the product of serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."

*In re Polyurethane Foam Antitrust Litig.*, No. 10-MD-2196 (JZ), 2012 U.S. Dist. LEXIS 192151, at *14 (N.D. Ohio Jan. 23, 2012) (quoting *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)).[6]

"In making this preliminary assessment, the court should not act as a rubber stamp; but neither should the court substitute its opinion for the parties' opinion." *Wendy's Co. S'holder Derivative Action*, No. 1:16-cv-1153, 2020 U.S. Dist. LEXIS 262824, at *13 (S.D. Ohio Jan. 24, 2020) (citation and internal quotation marks omitted). "[W]hen a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 380 (N.D. Ohio 2001) (citing *Williams v. Vukovich*, 720 F.2d 909, 923 (6th Cir. 1983); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 68 (D. Mass. 1997) ("in general, a settlement arrived at after genuine arm's length bargaining may be presumed to be fair")) (additional citations omitted). Furthermore, "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2015 U.S. Dist. LEXIS 23482, at *13 (N.D. Ohio Feb. 26, 2015) (quoting *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010)).

---

[6] *See also Stanley*, 2018 U.S. Dist. LEXIS 239761, at *5 ("As long as the settlement agreement falls 'within the range of possible approval,' preliminary approval is appropriate.") (citing *In re Inter-Op Hip Prosthesis*, 204 F.R.D. 359 (N.D. Ohio 2001)) (citations omitted).

The Court should preliminarily approve this settlement, because it (1) was negotiated at arm's length by experienced counsel; (2) is within the range of reasonable resolutions for this case; (3) has no obvious deficiencies; and (4) does not favor any Class Member or segment of the Class.

### ii. This settlement is the product of well-informed arms-length negotiation.

"Courts presume 'that the class representatives and counsel handled their responsibilities with the independent vigor that the adversarial process demands.'" *Int'l Union, UAW v. Ford Motor Co.*, No. 07-CV-14845, 2009 U.S. Dist. LEXIS 104036, at *39-40 (E.D. Mich. Nov. 9, 2009) (quoting *UAW v. GMC*, 497 F.3d 615, 628 (6th Cir. 2007)).

In this case, the proposed Settlement comes after a year and a half of litigation which included: (1) fully briefing a motion to dismiss; (2) filing an amended complaint; (3) fully briefing a motion for judgment on the pleadings; (4) extensive informal discovery; (5) significant formal discovery; (6) extensive expert investigation and consultation; (7) many phone calls between counsel debating liability and damages; (8) four full mediation sessions occurring over several months, including an in-person mediation session in California; and (9) a settlement built around a mediator's proposal. Lowney Decl., ¶¶ 10-12, 15-18; Olsen Decl.; Smith Decl.; Guilford Decl.; ECF Nos. 6, 13, 14, 19, 25. The Parties' negotiations led to acceptance of a mediator's proposal, and then to finalization of the Settlement placed before this Court. Guilford Decl.; Lowney Decl., ¶¶ 15-18.

It is well established that the use of a neutral mediator, and acceptance of a mediators' proposal, is evidence of a fair and arms-length settlement. *See Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702, at *9 (E.D. Mich. Dec. 12, 2013) (finding that the mediator's proposal was "strong evidence that the negotiations were vigorous, were conducted at arm's length, and were without any fraud or collusion"); *see also Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007) ("The participation of an independent mediator in the settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."). Counsel for Plaintiffs have extensive class action experience and

---

MOTION FOR PRELIMINARY APPROVAL                                               8

have successfully represented classes against major national banks, resulting in settlements for tens of millions of dollars. Lowney Decl, ¶¶ 4-9.

Class Counsel were well-situated to evaluate the strengths and challenges of Plaintiffs' case, and the Settlement at issue is the result of hard-fought adversarial work such that it is worthy of preliminary approval by the Court. Lowney Decl, ¶¶ 15-21; Guilford Decl.; *Cf. Koenig v. USA Hockey, Inc.*, No. 2:09-cv-1097, 2012 U.S. Dist. LEXIS 207799, at *9-10, 30 (S.D. Ohio Jan. 10, 2012) (Watson, J.) (granting final approval where agreement reached with a year of litigation, analysis of data related to over 500,000 potential class members and thousands of pages of information, a fully briefed a motion to dismiss, a day-long mediation and informal information exchange, including conference calls on liability and damages).[7]

### iii. This Settlement is within the range of reasonable resolutions for this case.

The proposed Settlement, including the $94 million Settlement Fund, represents a favorable outcome for the Settlement Class. This amounts to approximately $441 per loan in the Class, including substantial Automatic Payments to Class Members and a Claims Fund to address any actual damages suffered as a result of the Forbearance. Such a settlement is the "gold standard" for this type of consumer claim. *Reyes v. Experian Info. Sols.*, 856 F. App'x 108, 110 (9th Cir. 2021).

The size of the Settlement is better or comparable to similar class action settlements. For example, *Jabbari, et al. v. Wells Fargo Company, et al.*, No. 15-cv-02159-VC (N.D. Cal. Jul. 8, 2017), involved the fraudulent opening of millions of unauthorized accounts, where Wells Fargo's

---

[7] Courts in this district have approved settlements where formal discovery had not yet been conducted and where no motions practice had occurred. *See In re Nationwide Fin. Servs. Litig.*, No. 2:08-CV-00249, 2009 U.S. Dist. LEXIS 126962, at *11 (S.D. Ohio Aug. 19, 2009) (Watson, J.) (approving settlement before the motion to dismiss stage); *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *8 (N.D. Ohio Mar. 26, 2019) (approving settlement before any motion practice where parties had conducted only informal discovery to inform their views of the case); *Moore v. Aerotek, Inc.*, No. 2:15-cv-2701, 2017 U.S. Dist. LEXIS 102621, at *11-12 (S.D. Ohio June 30, 2017), report and recommendation adopted, 2017 U.S. Dist. LEXIS 115946 (S.D. Ohio July 25, 2017 (approving settlement where parties did not complete any formal discovery); *Mees v. Skreened, Ltd.*, No. 2:14-cv-142, 2016 U.S. Dist. LEXIS 1242, at *8-9 (S.D. Ohio Jan 26., 2016) (finding discovery adequately informed counsel where parties exchanged "thousands of pages" of documents but had yet to depose any witnesses).

liability was not seriously in dispute. The approved settlement fund amounted to less than $100 per class member,[8] an automatic payment of approximately $67 per class member and required most class members to submit a claim to obtain relief. And unlike in *Jabbari*, here Wells Fargo has a plausible reason for its actions. Wells Fargo has consistently maintained that its actions were taken in the early days of the pandemic to ensure that every customer who needed help with their mortgage payments got it in the form of a Forbearance and that no customer needing help was missed. While Plaintiffs had an argument that Wells Fargo's actions were profit-driven, that argument was far from a certainty.[9]

The proposed Automatic Payment of approximately $165 per loan plus additional compensatory damages compares favorably to other recent settlements of Fair Credit Reporting Act ("FCRA") claims. *See Moore v. Aerotek, Inc.*, No. 2:15-cv-2701, 2017 U.S. Dist. LEXIS 102621, at *14-15 (S.D. Ohio June 30, 2017) (finding that per class member payments of between $13-$80 strike a satisfactory balance between the likelihood of success on the merits and the relief offered in the settlement); *Fosbrink v. Area Wide Protective, Inc.*, No. 8:17-CV-01154-JSM-CPT, 2019 U.S. Dist. LEXIS 234562 at *2 (M.D. Fla. Jan. 22, 2019) (approving a claims-made class settlement awarding class members a gross pro rata share of $39 in a case involving FCRA claims);

---

[8] Like in *Jabbari*, the proposed Settlement provides a pro rata payment to Class Members and then provides a claims process. In both, the present Settlement is more favorable. Here, the pro rata Automatic Payment will be approximately $165 per loan, well over the Jabbari pro rata payment of approximately $67 per class member. *See Jabbari, et al. v. Wells Fargo Company, et al.*, No. 15-cv-02159-VC, Second Supplemental Interim Report of Class Counsel and Motion for Class Distribution Order, ECF No. 402 (N.D. Cal. Sept. 23, 2020). The claims process here is also more generous because it will compensate Eligible Class Members for any provable damages proximately caused by the Forbearance.

[9] At trial, Plaintiffs would have argued that Wells Fargo was motivated to place serviced mortgages into Forbearance due to the resulting ability to purchase loans at a discount through what is known as "Early Pool Buyout" (EPBO), and then to re-sell the loans at market rate once the loans are out of Forbearance and rehabilitated. But Wells Fargo denies that the potential EPBO profits arise from forbearances because customers must actually be three months delinquent in their payments before loans are eligible for early purchase from a pool, and it further adamantly denies that any activity in the capital markets influenced or motivated its Forbearance program. Moreover, while Plaintiffs contend they can recoup what they deem to be massive wrongful gain from the EPBO program, that legal question is in serious dispute. *See Delpapa et al. v. Wells Fargo & Company et al.*, No. 3:20-cv-06009-JD (N.D. Cal July 8, 2022), ECF No. 128 at 6-8 (Wells Fargo's motion to dismiss competing plaintiffs' unjust enrichment claims which are based on EPBO). Additionally, the court in the competing case of *Harlow v. Wells Fargo & Co.* recently dismissed the plaintiffs' RICO claims, which were based on allegations that Wells Fargo schemed to profit from forbearances. No. 7:22-cv-00267, 2022 U.S. Dist. LEXIS 109459, at *11-23 (W.D. Va. June 21, 2022).

---

*Dukes v. Air Canada*, No. 8:18-cv-2176-T-17JSS, 2019 U.S. Dist. LEXIS 221914 at *2 (M.D. Fla. Sept. 6, 2019), *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 221913 (M.D. Fla. Sept. 26, 2019) (preliminarily approving a class action settlement equaling $77.41 per class member in a case involving FCRA claims).

The monetary relief obtained here is also reasonable in light of Plaintiffs' risk of Wells Fargo prevailing on class certification, its motions to dismiss, or other phases of litigation. ECF Nos. 19, 52. As this Court has noted, "no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *In re Nationwide Fin. Servs. Litig.*, No. 2:08-cv-00249, 2009 U.S. Dist. LEXIS 126962, at * 6 (S.D. Ohio, August 18, 2009) (Watson, J.) (quoting *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970)); *see also Shanechian v. Macy's, Inc.*, No. 1:07-cv-828, 2013 U.S. Dist. LEXIS 208302, at * 12-13 (S.D. Ohio June 25, 2013) (noting significant obstacles in plaintiffs' path, even after defeating dispositive motions and obtaining class certification). Accordingly, Plaintiffs balanced the risk to the Class of achieving no recovery at all, or waiting years for recovery, and reasonably determined that the $94 million Settlement proposal proposed by the mediator was in the best interest of the Class.

Without settlement, litigation would go on for years, delaying any prospect for relief, while substantially increasing transactional costs to the detriment of the Class. This case is very complex and presents novel legal theories. The First Amended Complaint sets forth nine causes of action, which involve violations of several complex federal statutes, including the CARES Act, enacted in March 2020 and about which little precedent has been developed. ECF No. 14.

Plaintiffs also recognized that the ongoing litigation in other venues also threatens the Class and its ability to achieve a recovery. In recent months, competing class actions have suffered a series of legal setbacks, including the dismissal of multiple important claims that arguably overlap with this case. *See Harlow v. Wells Fargo & Co.*, No. 7:22-cv-00267, 2022 U.S. Dist. LEXIS 109459 (W.D. Va. June 21, 2022). Other dispositive motions are soon to be argued. *See In re Wells Fargo Forbearance Litigation*, No. 3:20-cv-06009-JD (N.D. Cal. August 19, 2022), ECF No. 152

Plaintiffs were faced with the real threat that litigation over which they had no control could seriously strengthen Wells Fargo's hand and bring a $94 million Settlement Fund out of reach. In any event, these overlapping cases create a multi-front litigation environment that adds further costs, risks, and delay.

### iv. There are no obvious deficiencies in this proposed Settlement.

The proposed Settlement bears no obvious deficiencies that would preclude its approval by the Court, such that notifying the Class and proceeding to a formal fairness hearing would be a waste of time.[10]

As discussed below, the proposed settlement gives no preference to Plaintiffs or other particular members of the Class. The potential fee and expense award, capped at 25%, and the service awards, capped at $12,500 per Class Representative, will be subject to Court approval through a later motion, and are reasonable, common, and not excessive.[11]

### v. The Settlement favors no members of the Class and gives no preferential treatment to anyone.

As described in the Distribution Plan and Notice, the proposed Settlement provides a pro rata cash benefit to all Class Members. $35 million shall be allocated to an Automatic Payment Fund.[12] Each mortgage within the Class whose borrower or co-borrower does not opt out of the litigation shall be entitled to a single pro rata fixed sum payment that will be paid by check to the last known address of the Class Members (or electronically for those who prefer) with no claim form or other action required. In addition to the pro rata payment described above, each Settlement

---

[10] *See* NEWBERG § 11:25 (4th ed. 2002) (referring to the Court's inquiry as to, *inter alia*, "obvious deficiencies"); *and see In re Wendy's Co. S'holder Derivative Action*, No. 1:16-cv-1153, 2020 U.S. Dist. LEXIS 262824, at *13 (S.D. Ohio Jan. 24, 2020).

[11] *See, e.g.*, NEWBERG § 15:73 (5th ed. 2016) (noting that a "33% figure provides some anchoring for the discussion of class action awards [to counsel]" and that "many courts have stated that . . . fee award in class actions average around one-third of the recovery."); Theodore Eisenberg & Geoffrey Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, 1 J. OF EMPIRICAL LEGAL STUDIES, 27, 31, 33 (2004) (finding that courts consistently award between 30-33% of the common fund); *In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 762 (S.D. Ohio 2007) ("[S]even circuits, including the Sixth, have explicitly approved the percentage approach in common fund cases.").

[12] The payment amount per mortgage shall be determined by dividing the total amount of the Automatic Payment Fund by the number of mortgages placed into Forbearance on the final Class list. If there are multiple obligors on a mortgage, then the check shall be made payable to all obligors on the mortgage.

---

Class Member will be eligible to receive a payment out of the Settlement Fund from a "Claims Fund," consisting of the Net Settlement Fund less the Automatic Payments. Each Settlement Class Member shall have the opportunity to submit a claim to the Administrator together with proof that they incurred damages as a result of having been placed in a Forbearance.  If there are then Remaining Funds, as expected, they will be distributed on a pro rata basis to the Class Members who cashed their first check.[13]

Thus, all Class Members, including Class Representatives, are treated fairly based upon objective criteria relating to their mortgages and damages. Each Class Member not only gets an equal automatic payment but also has an equal opportunity to submit an additional claim.

The service award to be requested by the Plaintiffs is fair because of the time and effort they put into the litigation. The potential award of $12,500 is within the range of payments courts have approved in similar cases,[14]and will be presented to the court for approval by separate motion. Accordingly, all of the substantive factors weigh in favor of approval.[15]

**B.      The Court should certify the proposed Class for settlement purposes.**

Under Rule 23(a), a party seeking class certification, whether for settlement or litigation purposes, must demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the

---

[13] The Parties agree, however, that if the remaining Settlement Fund is so small to make this second payment infeasible, remaining sums would be paid to a *cy pres* recipient.

[14] *See Estes v. Willis & Brock Foods, Inc.*, No. 6:18-cv-00197-GFVT, 2022 U.S. Dist. LEXIS 41317, at *9 (E.D. Ky. Mar. 7, 2022) (citing *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019 U.S. Dist. LEXIS 11019, 2019 WL 275711, at *6 (S.D. Ohio Jan. 18, 2019)) (granting service award of $10,000); *Arledge v. Domino's Pizza, Inc.*, No. 3:16-cv-386-WHR, 2018 U.S. Dist. LEXIS 179474, at *6 (S.D. Ohio Oct. 17, 2018) (granting service award of $10,000); *Physicians of Winter Haven LLC v. Steris Corp.*, No. 1:10 CV 264, 2012 U.S. Dist. LEXIS 15581, at *31 (N.D. Ohio Feb. 6, 2012) (granting service award of $15,000); *Hainey v. Parrott*, No. 1:02-CV-733, 2007 U.S. Dist. LEXIS 98444, at *16-17 (S.D. Ohio Nov. 6, 2007) (granting service awards of $50,000); *In re Polyurethane Foam Antitrust Litig.*, 135 F. Supp. 3d 679, 694 (N.D. Ohio 2015) (granting service awards of $35,000).

[15] *Estes*, 2022 U.S. Dist. LESIX 41317, at *9 ("The agreement treats all class members equitably, save for the additional service award given to the named plaintiff. . . . Each class member had an equal opportunity to opt-in, so all class members were treated equitably."); *see also Shane Grp., Inc. v. Blue Cross Blue Shield*, No. 10-CV-14360, 2019 U.S. Dist. LEXIS 168191, at *25-26 (E.D. Mich. Sep. 30, 2019) (approving a settlement equating to 25 percent of the $118 million plaintiffs' expert estimated defendants caused class members and prospective class members in damages "[b]ecause the settlement does not give preferential treatment to Plaintiffs or perfunctory relief to unnamed class members").

---

MOTION FOR PRELIMINARY APPROVAL                                                                                          13

representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see also Smith v. Ajax Magnethermic Corp.*, No. 4:02-CV-0980, 2007 U.S. Dist. LEXIS 85551, at *5 (N.D. Ohio Nov. 6, 2007). In addition, Plaintiffs here must establish the action is maintainable under Rule 23(b)(3). *Id*. at *10.

### i. The proposed Class meets the requirements of Rule 23(a)

#### a. Numerosity is satisfied—there are hundreds of thousands of Class Members

Discovery from Wells Fargo makes plain that Plaintiffs can identify every Wells Fargo Customer who falls within the Class definition, and that there are approximately 212,000-213,000 such loans which fit within the Class definition. Given this fact, numerosity is easily satisfied.[16] Lowney Decl., ¶ 24.

#### b. Common questions of law and fact

Plaintiffs must show that "there is at least one question of law or fact common to the class." *Kelly*, 2007 U.S. Dist. LEXIS 93656, at *9 (citing *Sprague v. GMC*, 133 F.3d 388, 397 (6th Cir. 1998)). "Even a single common question" will do. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (punctuation and citation omitted). "[W]hen a plaintiff alleges a common course of conduct arising out a single set of operative facts, the commonality requirement is generally satisfied." *In re Nationwide Fin. Servs. Litig.*, 2009 U.S. Dist. LEXIS 126962, at *25 (citing *Yadlosky v. Grant Thornton L.L.P.*, 197 F.R.D. 292 (E.D. Mich. 2000)) (citations omitted).

Here, Plaintiffs allege all potential Class Members had loans placed into forbearance without adequate informed consent, with common a question of fact being whether Wells Fargo's standardized processes could elicit informed consent, and common legal questions including whether such consent was necessary, whether Wells Fargo's actions violated its contracts with

---

[16] *See Amos v. PPG Indus., Inc.*, No. 2:05-cv-70, 2018 U.S. Dist. LEXIS 3068, at *16-17 (S.D. Ohio Jan. 5. 2017) (citing *Taylor v. CSX Transp., Inc.*, 264 F.R.D. 281, 288 (N.D. Ohio 2007) (finding numerosity satisfied at forty proposed class members)); *Kelly v. Montgomery Lynch & Assocs., Inc.*, No. 1:07-CV-919, 2007 U.S. Dist. LEXIS 93656, at *7-8 (N.D. Ohio Dec. 19, 2007) (fifty); *see also Bittinger v. Tecumseh Products Co*., 123 F.3d 877, 884 at n.1 (6th Cir. 1997) (Objection to numerosity of 1,100 was "frivolous").

customers, and whether its actions violated TILA, FCRA, RESPA, the ODTPA or other unfair trade practices or debt collection statutes.

          **c.**      **Settlement Class Representatives' claims are typical of other Class Member's claims.**

 "'A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory . . . . The typicality requirement may be satisfied even if there are factual distinctions between the class members and those of other class members.'" *In re Telectronics Pacing Sys.*, 164 F.R.D. 222, 228 (S.D. Ohio 1995) (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). Plaintiffs' claims are typical of the Class because Plaintiffs allege they are the product of the same course of conduct and they suffered the same type of injury as the Settlement Class.

          **d.**      **Named Plaintiffs and Class Counsel will fairly and adequately protect interests of the Class.**

Finally, Rule 23(a)(4) requires a determination that plaintiffs "will fairly and adequately represent the interests of the class." In making this determination, courts must confirm that (1) "the representative must have common interests with the unnamed members of the class," and (2) "it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Am. Med. Sys.*, 75 F.3d 1069, 1083 (6th Cir. 1996). "The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentive to pursue the claims of the other class members." *Id.*

Here, as to the second element, Plaintiffs' claims are co-extensive with members of the Settlement Class, as discussed *supra*, at section IV.B.i.c. Each Plaintiff has the same interest in establishing Wells Fargo's liability, as each alleges to have been injured in the same manner as the rest of the Class, by allegedly being placed into Forbearance without their consent. There is no conflict among them.

Also, each Plaintiff has agreed to assume the responsibility of representing the Class, and each has made him or herself available to do so, including by way of assisting with drafting complaints, consulting with counsel during the course of this litigation, monitoring the course of this case, and consulting with counsel regarding the proposed terms of the settlement.

As to the qualification of counsel, as discussed and referenced in the declaration of counsel, Class Counsel has extensive experience and expertise in prosecuting complex class actions, including commercial, consumer, and banking cases. Lowney Decl., ¶¶ 4-9; *see, e.g.*, *Childress v. JPMorgan Chase & Co.*, No. 5:16-CV-298-BO, 2019 U.S. Dist. LEXIS 110396, at *21-22 (E.D.N.C. July 2, 2019) (finding Smith & Lowney adequate for purposes of class certification based on experience in litigation consumer and other class actions). Qualified counsel have pursued this litigation vigorously, and they remain committed to advancing and protecting the common interests of all members of the Class.

Thus, the demands of Rule 23(a)(4) are satisfied here for purposes of this Settlement.

### ii. The requirements of Rule 23(b)(3) are met.

Once the prerequisites of Rule 23(a) are satisfied, the Court must determine if one of the subparts of Rule 23(b) are also satisfied. *Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997). Here, Rule 23(b)(3) is satisfied because, with Plaintiffs' substantial allegations, questions common to Class Members predominate over questions affecting only individual Class Members, and the class action device provides the best method for the fair and efficient resolution, via settlement, of Class Members' claims.

When addressing the propriety of class certification, the Court should consider the fact that, in light of the Settlement, trial will now be unnecessary, such that the manageability of the Class for trial purposes is no longer a relevant question, nor does the Court need to reach dispositive conclusions of unsettled legal questions. *Carson v. Am. Brands Inc.*, 450 U.S. 79, 88 n.14 (1981) (the court "need not decide the merits of the case or resolve unsettled legal questions"). It is settled that to evaluate a proposed settlement, the court need not possess sufficient "'evidence to decide the merits of the issue, because the compromise is proposed in

order to avoid further litigation.'" *UAW v. GMC*, 2006 U.S. Dist. LEXIS 14890, at \*59 (quoting NEWBERG § 11:45).[17]

Furthermore, the Defendant supports this motion to certify the Settlement Class and approve the Class Settlement proposed here by the Parties.

### a. Common questions predominate in this case.

Rule 23(b)(3) requires an examination of whether "questions of law or facts common to the members of the class predominate over any questions affecting only individual members . . . ." As the Supreme Court stated in *Amchem*, the "Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." 521 U.S. at 623. It "does *not* require a plaintiff seeking class certification to prove that each elemen[t] of [her] claim [is] susceptible to classwide proof." *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 469 (2013) (citations omitted). Instead, the rule only requires "that common questions *predominate* over any questions affecting only individual [class] members." *Id* (citation omitted, emphasis original).

In a "settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Prods.*, 521 U.S. at 620 (citation omitted). Also, to satisfy the predominance requirement "individualized damages questions do not defeat a predominance finding." *Kuchar v. Saber Healthcare Holdings LLC*, 340 F.R.D. 115, 123 (N.D. Ohio 2021). "[W]hen adjudication of questions of liability common to the class will achieve economies of time and expense, the predominance standard is generally satisfied even if damages are not provable in the aggregate." *Hicks v. State Farm Fire and Cas. Co.*, 965 F.3d 452, 460 (6th Cir. 2020) (quoting *In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013)).

In light of the above, and for purposes of this Settlement, common questions plainly predominate. Among the predominate questions, which are released by the Settlement, are:

---

[17] *See also id.* at \*59-60 ("Instead, the district judge need only have 'sufficient facts before [him] to intelligently approve or disapprove the settlement.'") (citations omitted).

whether Wells Fargo breached its mortgage contract with Class Members as well as its duty of good faith; whether Wells Fargo violated TILA, FCRA, RESPA, the ODTPA or other unfair trade practices or debt collection statutes when it placed Class Members' mortgages into forbearance without adequate informed consent and furnished information concerning the Forbearance to credit reporting agencies; and whether Class Members suffered damages as a result. *See* ECF No. 14.

Given that common questions here predominate over any individual questions in this settlement context, the predominance requirement is satisfied.

### b. Class treatment is the superior method for adjudicating claims of members of the proposed Settlement Class.

As for the requirement in Rule 23(b)(3) that the class action be "superior to other available methods for fair and efficient adjudication of the controversy," class treatment will facilitate the fair and efficient resolution, via Settlement, of all putative Class Members' claims. Given that Plaintiffs are aware of over two hundred thousand loans falling under the defined Class, the class device is the most efficient and fair means of adjudicating these many claims.

Here, "[t]he alternative to adjudicating this case as a class action is for the Court to handle thousands, perhaps tens of thousands, of individual cases." *Geary v. Green Tree Servicing, LLC*, No. 2:14-CV-00522, 2017 U.S. Dist. LEXIS 93000, at *27 (S.D. Ohio June 16, 2017). As this Court noted in a prior case, "[t]he reality is that few individual plaintiffs would sue or receive any redress at all in individual actions." *Id*. This is particularly true in this case in light of the arms-length settlement that has already been negotiated and will provide immediate monetary benefit to the Settlement Class Members. Class treatment is far superior to the alternative of thousands upon thousands of individual suits or piecemeal litigation; in this matter, the class action mechanism will function to promote access to justice, conserve scarce judicial resources, and promote the consistency of adjudication. Accordingly, the superiority aspect of Rule 23(b)(3) is readily met.

### C. The proposed Notice Program and Administrator should be approved.

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or

compromise . . . .'"[18] In order to protect the rights of absent Class Members, the Court must direct the best notice practicable to them.[19]

In addition, "Rule 23 . . . requires that individual notice in [opt-out] actions be given to class members who can be identified through reasonable efforts. Those who cannot be readily identified must be given the 'best notice practicable under the circumstances.'"[20]

Here, the Parties' proposed Settlement provides for direct notice to Class Members, the best practicable notice under the circumstances. Lowney Decl., ¶ 24; Ex. 1 at ¶ II.D. Discovery from Wells Fargo makes evident that Plaintiffs can identify every Class Member, and direct notice will be easily facilitated. Lowney Decl., ¶ 24; Decl. of Gina Intrepido-Bowden ("Intrepido-Bowden Decl."), ¶¶ 14-25. The Parties have consulted with class action administration experts JND Legal Administration, whom the Parties propose to administer the settlement and who will be prepared to facilitate notice to the Class Members and will provide the requisite mechanisms for those who desire to opt out. *See* Intrepido-Bowden Decl. Furthermore, the Administrator will establish a settlement website where Notice of Class Action Settlement and key documents will be available. *Id*. at ¶¶ 31-34. Class Counsel's website will include links to the settlement website. Lowney Decl., ¶ 24.

The proposed notice plan meets all requirements by:

- defining the Class;

- describing clearly the options open to Class Members and the deadlines for taking action, including identifying overlapping lawsuits pending in other districts and the option to opt-out of the Class to participate in such litigation;

- describing the essential terms of the proposed Settlement;

- disclosing any special benefits provided to the Class Representatives;

- providing information regarding potential attorneys' fees and costs;

---

[18] MANUAL FOR COMPLEX LITIGATION ("MANUAL") § 21.312, at 293 (4th ed. 2004).
[19] *See, e.g.*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974).
[20] MANUAL § 21.311, at 287.

---

MOTION FOR PRELIMINARY APPROVAL                                                              19

- indicating the time and the place of the hearing to consider approval of the Settlement;

- describing the method for objecting to or opting out of the settlement;

- explaining the procedures for allocating and distributing the cash settlement amount and clearly set forth any variations among different categories of Class Members;

- explaining the basis for valuation of non-monetary benefits;

- providing information that will enable Class Members to estimate their individual recoveries; and

- prominently displaying the address and phone number of Class Counsel and how to make inquiries.[21]

Here, the proposed notice, modelled on those provided by the Federal Judicial Center, satisfy these requirements. Ex. 1 (Settlement Agreement) at Ex. C.

The notice program and related documents will ensure that notice to the Class occurs in a comprehensive and reasonable manner. Plaintiffs respectfully ask the Court to approve the proposed form and method of notice.

### D. Proposed final approval hearing schedule.

If the Court grants preliminary approval, the Court should then set a schedule toward final approval of the Parties' Settlement. The Plaintiffs, with the agreement of Wells Fargo, respectfully request the schedule as set forth in the proposed order submitted with this motion.

## V. CONCLUSION

For all of the foregoing reasons, Plaintiffs, with the agreement of the Defendant, ask respectfully that the Court grant preliminary approval of the Parties' proposed Settlement and the further relief requested here.

RESPECTFULLY SUBMITTED,

*s/ Nathan A. Hunter* (0096389)

---

[21] MANUAL § 21.312, at 295 (citation omitted).

Trial Attorney
Nathan A. Hunter (0096389)
Hunter & Hunter LLC
1491 Polaris Pkwy #21416
Columbus, OH 43240
Tel: (234) 738-4648
nathan@hunterfirm.org

*s/ Knoll Lowney*
Knoll Lowney (*admitted pro hac vice*)
Marc Zemel (*admitted pro hac vice*)
Smith & Lowney, PLLC
2317 E. John Street
Seattle, WA 98112
Tel: (206) 860-2883
knoll@smithandlowney.com
marc@smithandlowney.com

*Counsel for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that a true and exact copy of the foregoing document and supporting exhibits were filed electronically on the 9th day of September, 2022, via the Court's electronic filing system and notice of this filing will be sent to all Parties by operation of the Court's electronic filing system.


<u>*/s/ Marc Zemel*</u>
Marc Zemel (pro hac vice)
**Attorney for Plaintiffs**