# EXHIBIT 1

**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF OHIO**

**EASTERN DIVISION (COLUMBUS)**

| | |
|---|---|
| BRIAN ECHARD, | CASE NO.  2:21-cv-05080-MHW-KAJ |
| Plaintiff, | (Judge Michael H. Watson) |
| v. | (Magistrate Judge Kimberly A. Jolson) |
| WELLS FARGO BANK, N.A. | |
| Defendant. | **SETTLEMENT AGREEMENT** |

# TABLE OF CONTENTS

**Page**

I.    DEFINITIONS ................................................................................... 3

II.   PRELIMINARY APPROVAL ORDER, NOTICE ORDER AND SETTLEMENT HEARING ........................................................................................... 10

    A.    Certification of Class and Appointment of Class Counsel ................. 10

    B.    Amendment of the First Amended Complaint .................................... 11

    C.    Motion for Preliminary Approval ....................................................... 11

    D.    Class and CAFA Notices ..................................................................... 12

    E.    Motion for Final Approval and Entry of Final Judgment .................. 12

    F.    Stay Order ........................................................................................... 15

III.  RELEASES .......................................................................................... 15

    A.    Plaintiffs and Class Release of Wells Fargo ...................................... 15

        1.    No Future Actions Following Release .................................... 16

        2.    Covenant Not to Sue ............................................................... 16

        3.    Waiver of California Civil Code § 1542 and Similar Laws.... 16

        4.    Dismissal ................................................................................ 18

        5.    Agreement To Be Bound ........................................................ 18

IV.  SETTLEMENT CONSIDERATION .................................................. 18

    A.    Settlement Fund .................................................................................. 18

    B.    Distribution of Net Settlement Amount .............................................. 19

        1.    Automatic Payments ............................................................... 19

        2.    Claims Fund ............................................................................ 19

        3.    Remaining Amounts ............................................................... 19

        4.    Administrative Costs and Expenses........................................ 19

V.   NOTICE AND ADMINISTRATION OF SETTLEMENT ................. 20

    A.    Claim Form ......................................................................................... 20

    B.    Notice ................................................................................................. 20

    C.    Time to Appeal ................................................................................... 20

    D.    No Liability for Distribution of the Settlement Fund ......................... 20

VI.  DUTIES OF THE SETTLEMENT ADMINISTRATOR..................... 20

SETTLEMENT AGREEMENT
*BRIAN ECHARD VS. WELLS FARGO BANK, N.A., CASE NO. 2:21-CV-05080-MHW-KAJ*

|  | A. | The Settlement Administrator will administrate the Settling Parties' Settlement | 21 |

VII. SERVICE AWARDS, ATTORNEYS' FEES, AND REIMBURSEMENT OF EXPENSES ............................................................................................ 24

|  | A. | Fee and Expense Application | 24 |
|  | B. | Payment of Fee and Expense Award | 24 |
|  | C. | Award of Attorneys' Fees and Expenses Shall Not Impact the Effectiveness of this Agreement | 25 |
|  | D. | No Liability for Attorneys' Fees and Expenses of Class Counsel | 25 |
|  | E. | Class Representatives' Service Award Application | 25 |

VIII. CONDITIONS OF SETTLEMENT AND EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION ..................................................... 26

|  | A. | Effective Date | 26 |
|  | B. | Depositing Money into the Settlement Fund and Occurrence of Effective Date | 27 |
|  | C. | Failure of Effective Date to Occur | 27 |
|  | D. | Requests for Exclusion/Opt-Outs | 28 |
|  | E. | Objections | 29 |
|  | F. | Termination | 30 |
|  | G. | Other Orders | 30 |

IX. NO ADMISSION OF LIABILITY ......................................................... 31

|  | A. | Final and Complete Resolution | 31 |
|  | B. | Federal Rule of Evidence 408 | 31 |
|  | C. | Use of Agreement as Evidence | 31 |

X. REPRESENTATIONS AND WARRANTIES .......................................... 32

XI. MISCELLANEOUS PROVISIONS ....................................................... 34

|  | A. | Voluntary Settlement | 34 |
|  | B. | Reasonable Best Efforts to Effectuate This Settlement | 34 |
|  | C. | Subsequent Events Impacting Administration | 34 |
|  | D. | Potentially Related Actions | 35 |
|  | E. | Claims in Connection with Administration | 35 |
|  | F. | Binding Effect | 35 |
|  | G. | Authorization to Enter Settlement Agreement | 35 |

SETTLEMENT AGREEMENT
*BRIAN ECHARD VS. WELLS FARGO BANK, N.A., CASE NO. 2:21-CV-05080-MHW-KAJ*

| | | |
|---|---|---|
| H. | Notices | 36 |
| I. | No Party Deemed to Be the Drafter | 36 |
| J. | Choice of Law | 36 |
| K. | Amendment | 37 |
| L. | Waiver | 37 |
| M. | Execution in Counterparts | 37 |
| N. | Integrated Agreement | 37 |
| O. | Attorneys' Fees and Costs | 38 |
| P. | Return or Destruction of Confidential Materials | 38 |
| Q. | Intended Beneficiaries | 38 |
| R. | Regular Course of Business | 39 |
| S. | Tax Consequences | 39 |
| T. | Qualified Settlement Fund | 39 |
| U. | Taxes for the Settlement Fund | 40 |
| V. | Bankruptcy Proceedings | 40 |
| W. | No Conflict Intended; Headings | 40 |
| X. | Class Member Obligations | 40 |
| Y. | Press Release | 41 |
| Z. | Further Disputes | 41 |

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made and entered as of the Execution Date between the Plaintiffs, both individually and on behalf of the Class, and Wells Fargo (the "Settling Parties"). This Agreement is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the claims described herein, upon the following terms and conditions.

WHEREAS, Plaintiffs are prosecuting the above captioned Action on their own behalf and on behalf of the proposed Class against Wells Fargo;

WHEREAS, in the early days of the COVID-19 pandemic, many Wells Fargo customers expressed concern about financial hardship and their ability to make their next Mortgage payment;

WHEREAS, in an attempt to help those Customers who were concerned they would not be able to make their next Mortgage payment, Wells Fargo provided Mortgage Forbearances to certain Customers who had expressed hardship or potential hardship, but had not explicitly requested a Forbearance, including some customers who did not want a Forbearance;

WHEREAS, a Forbearance temporarily suspends a Customer's obligation to make payments on their Mortgage;

WHEREAS, Wells Fargo believes that the vast majority of Customers who received a Forbearance requested or wanted and used the Forbearance;

WHEREAS, since 2020, Wells Fargo has worked to address any Customer complaints regarding Forbearances and to make any injured Customers whole;

WHEREAS, Plaintiffs' First Amended Complaint (ECF No. 14) alleged, among other things, that Wells Fargo placed Customers, including Plaintiffs, into a Forbearance without their informed consent, and asserted claims for breach of contract, breach of fiduciary duty, fraud, violations of TILA, violations of RESPA, violations of FCRA, unjust enrichment, negligence and negligent misrepresentation, and violations of the Ohio Deceptive Trade Practices Act;

WHEREAS, Wells Fargo denies each and all of the claims and allegations of wrongdoing made by Plaintiffs; denies that Defendant has violated any law or other duty; denies that Defendant

has engaged in any wrongdoing or any other act or omission that would give rise to liability or cause Plaintiffs' injuries, damages, or entitlement to any relief; denies that Defendant placed any individual into a Forbearance in an attempt to make a profit; and would contest certification of a non-settlement Rule 23(b)(3) damages class and/or a Rule 23(b)(1) or Rule 23(b)(2) declaratory and injunctive relief class if Plaintiffs sought to certify such classes; and states that Defendant is entering into this Agreement to avoid the further uncertainty, expense, inconvenience, delay, and distraction of burdensome and protracted litigation, and thereby to put to rest this controversy with respect to Plaintiffs and the Class and avoid the risks inherent in complex litigation;

WHEREAS, the Parties have engaged in extensive formal and informal discovery concerning the strength and value of Plaintiffs' claims;

WHEREAS, the Plaintiffs and Wells Fargo participated in four mediations in this case with the Honorable Judge Andrew Guilford (Ret.) on April 6, 2022, April 28, 2022, May 18, 2022, and July 19, 2022;

WHEREAS, Plaintiffs and Wells Fargo have agreed to the terms of this arm's-length Agreement, which embodies all of the terms and conditions of the Settlement between the Settling Parties, subject to the approval of the Court as provided below, and which is intended to supersede any and all prior agreements between the Settling Parties, including but not limited to the Term Sheet entered into by the Parties on July 22, 2022;

WHEREAS, the Plaintiffs and Class Counsel have concluded, after due investigation and after carefully considering the relevant circumstances, including, without limitation, the claims asserted in Plaintiffs' First Amended Complaint, the legal and factual defenses thereto and the applicable law, that the claims asserted in the Action have merit and it is in the best interests of the Plaintiffs and the Class to enter into this Agreement to avoid the uncertainties of litigation and to assure that the benefits set forth below are obtained for the Plaintiffs and the Class, and, further, that Class Counsel consider the Settlement set forth in this Agreement to be fair, reasonable, and adequate and in the best interests of the Plaintiffs and the Class; and

WHEREAS, the Plaintiffs and Wells Fargo stipulate that the fact of this Agreement, any of the terms in this Agreement, any documents filed in support of this Agreement, or any statement made in the negotiation thereof shall not be deemed or construed to be an admission or evidence of (i) any violation of any statute or law, (ii) any liability or wrongdoing by Wells Fargo, (iii) liability on any claims or allegations or the value thereof, or (iv) the propriety of certifying a litigation class in any proceeding, and shall not be used by any person for any purpose whatsoever in the Action or any other legal proceeding, including but not limited to arbitrations, mediations, or subsequent litigations other than a proceeding to enforce the terms of this Agreement;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the Settling Parties, by and through their attorneys of record, that, subject to the approval of the Court, the Action and the Class Released Claims shall be finally and fully settled, compromised, and dismissed on the merits and with prejudice upon and subject to the terms and conditions of this Agreement, as follows:

## I.        DEFINITIONS

As used in the Agreement, the following terms have the meanings specified below:

1.        "Action" means *Echard v. Wells Fargo Bank, N.A.*, Case No. 2:21-cv-05080-MHW-KAJ, currently pending in the United States District Court for the Southern District of Ohio.

2.        "Additional Compensation" means payment from the Claims Fund for which Eligible Class Members may be considered by submitting the Claim Form to the Settlement Administrator as set forth in Paragraph IV.B.2 of the Agreement.

3.        "Administrator" or "Settlement Administrator" or "Claims Administrator" means JND Legal Administration.

4.        "Agreement" means this settlement agreement entered into by the Settling Parties.

5.        "At-Issue Forbearance" means a Forbearance that Wells Fargo provided to a Customer Without Adequate Informed Consent between March 1, 2020 and December 31, 2021.

6.     "Automatic Payment" means the *pro-rata* fixed sum payments made to Eligible Class Members out of the Automatic Payment Fund.

7.     "Automatic Payment Fund" means a $35,000,000 fund that the Settlement Administrator will create after Final Approval utilizing funds from the Settlement Fund.

8.     "Claim Form" means the form, in substantially the same form and with substantially the same content as **Exhibit A**, that Eligible Class Members will need to complete and submit to the Settlement Administrator to be considered for Additional Compensation out of the Claims Fund as set forth in Paragraph IV.B.2. of the Agreement.

9.     "Claim Form Deadline" means the date by which Eligible Class Members must submit a completed Claim Form to the Settlement Administrator in accordance with the requirements set forth in Exhibit B of the Agreement and which shall be one hundred and twenty (120) Days from the Notice Deadline.

10.     "Claims Fund" means the fund that the Settlement Administrator will create and utilize to distribute Additional Compensation to Eligible Class Members who complete and submit a Claim Form (and supporting documentation) pursuant to the criteria set forth in Paragraph V.A.. The Claims Fund will consist of the amounts remaining in the Settlement Fund after: (a) making Automatic Payments to Eligible Class Members from the Automatic Payment Fund; (b) deducting any Fee and Expense Award and Service Awards approved by the Court; and (c) paying for the Settlement Administrator's Costs and Expenses.

11.     "Class" or "Class Member" means all persons in the United States who: (a) had a Mortgage serviced by Wells Fargo that was placed into a Forbearance Without Adequate Informed Consent between March 1, 2020 and December 31, 2021; (b) were not in a Chapter 13 bankruptcy case on the date that the person was placed into the Forbearance; and (c) are not Wells Fargo's officers, directors, or employees, Counsel for Wells Fargo, or Class Counsel.

12.     "Class Counsel" shall refer to Smith & Lowney, PLLC.

13.     "Class Notice" has the meaning set forth in Paragraph II.D. of the Agreement.

14. "Class Released Claims" has the meaning set forth in Paragraph III.A. of the Agreement.

15. "Class Releasors" has the meaning set forth in Paragraph III.A. of the Agreement.

16. "Class Releasees" has the meaning set forth in Paragraph III.A. of the Agreement.

17. "Class Representatives" means Plaintiffs Brian Echard, Heather Shimp, and Stephen Shimp.

18. "Counsel for Wells Fargo" shall refer to William C. Mayberry and Amy P. Williams of Troutman Pepper Hamilton Sanders, LLP and D. Jeffrey Ireland of Faruki, PLL.

19. "Court" shall refer to the United States District Court for the Southern District of Ohio.

20. "Customers" means individuals who had a Mortgage serviced by Wells Fargo.

21. "Day" or "Days" has the meaning ascribed to it in Federal Rule of Civil Procedure 6, and all time periods specified in this Agreement shall be computed in a manner consistent with that rule. All references to days shall be interpreted to mean calendar days, unless otherwise noted.

22. "Defendant" means Wells Fargo Bank, N.A.

23. "Distribution Plan" is the plan for distributing the Net Settlement Amount, attached as **Exhibit B.**

24. "Effective Date" means the first date by which all of the events and conditions specified in Paragraph VIII.A. of the Agreement have occurred and have been met.

25. "Eligible Class Member" means a Class Member who did not exclude himself or herself from the Settlement by the Exclusion/Objection Deadline.

26. "Exclusion/Objection Deadline" means the deadline for requesting exclusion from the Class or objecting to the Settlement, which shall be sixty (60) Days from the Notice Deadline.

27. "Execution Date" means the latest date associated with a signature on the fully executed Agreement as set forth on the Agreement's signature pages.

28. "FCRA" shall mean the Fair Credit Reporting Act.

29. "Fee and Expense Application" means the application Class Counsel submits to the Court for an award of attorneys' fees and reimbursement of reasonable expenses incurred in connection with prosecuting the Action not to exceed the amount set forth in Paragraph VII.A. of the Agreement.

30. "Fee and Expense Award" means any amounts that are awarded by the Court in response to Class Counsel's Fee and Expense Application.

31. "Final" means, with respect to any order of the Court, including, without limitation, the Judgment, that such order represents a final and binding determination of all issues within its scope and is not subject to further review on appeal or otherwise. Without limitation, an order becomes "Final" when: (a) no appeal has been filed and the prescribed time for commencing any appeal has expired; or (b) an appeal has been filed and either (i) the appeal has been dismissed and the prescribed time, if any, for commencing any further appeal has expired, or (ii) the order has been affirmed in its entirety and the prescribed time, if any, for commencing any further appeal has expired. For purposes of this Agreement, an "appeal" includes appeals as of right, discretionary appeals, interlocutory appeals, proceedings involving writs of certiorari or mandamus, and any other proceedings of like kind. Any appeal or other proceeding pertaining solely to any order issued with respect to an application for attorneys' fees and expenses consistent with this Agreement shall not in any way delay or preclude the Judgment from becoming Final.

32. "Final Approval" has the meaning set forth in Paragraph II.E. of the Agreement.

33. "Final Approval Hearing" means the hearing, to be scheduled by the Court, at which the Court will consider the Motion for Final Approval.

34. "Final Approval Order" has the meaning set forth in Paragraph II.E. of the Agreement.

35. "First Amended Complaint" means the "First Amended Complaint – Class Action" filed by Plaintiffs in this Action on May 3, 2021.

36. "Forbearance" means a temporary suspension of a customer's monthly mortgage payment obligations.

37. "Judgment" means the order of judgment and dismissal of the Action with prejudice.

38. "Mortgage" means a mortgage loan, home equity loan, or home equity line of credit.

39. "Net Settlement Amount" means all amounts in the Settlement Fund, including interest, which is available for distribution to Eligible Class Members after payment of the Fee and Expense Award approved by the Court, the Service Awards approved by the Court, and the Settlement Administrator's Costs and Expenses.

40. "Notice Deadline" means the deadline for the Settlement Administrator to send the Notice of Settlement and Claim Form to the Class Members in accordance with the Notice Plan and which shall be sixty (60) Days after Preliminary Approval.

41. "Notice of Settlement" means the written notice of the Settlement that will be provided to the Class in substantially the same form and with substantially the same content as **Exhibit C.**

42. "Notice Plan" has the meaning set forth in Paragraph II.D. of the Agreement concerning the proposed form of notice to the Class.

43. "Opt-Out" means a person who falls within the definition of the Class who has timely and validly elected to be excluded from the Class pursuant to the procedures set forth in Paragraph VIII.D. of the Agreement. It does not include any person whose request for exclusion is challenged by Defendant and the challenge is not overruled by the Court or withdrawn by Defendant, any person whose communication is not treated as a request for exclusion, and/or any person whose request for exclusion is not valid or is otherwise void.

44. "Opt-Out List" is the list of Class Members who submit valid and timely Requests for Exclusion from the Class as set forth in Paragraph VIII.D. of the Agreement.

45.     "Plaintiffs" means Brian Echard, Heather Shimp, and Stephen Shimp.

46.     "Potentially Related Actions" includes the following pending cases: (1) *In re Wells Fargo Forbearance Litigation*, 3:20-cv-06009-JD (N.D. Cal.), which consists of the following actions that were consolidated on August 19, 2022 for all pretrial proceedings: *Delpapa v. Wells Fargo Bank, N.A., et al.*, 3:20-cv-06009-JD (N.D. Cal); *Green v. Wells Fargo & Co., et al.*, 3:20-cv-5296; *Urista v. Wells Fargo & Co., et al.*, 3:22-cv-00227 (N.D. Cal.); *Forsburg v. Wells Fargo & Co, et al.*, No. 3:22-cv-02890 (N.D. Cal); and *Healy v. Wells Fargo Bank, N.A., et al.*, 3:22-cv-00226 (N.D. Cal); and (2) *Harlow v. Wells Fargo & Co., et al.*, A.P. No. 20-07028 (Bankr. W.D. Va) (Pet. No. 17-71487).

47.     "Preliminary Approval" has the meaning set forth in Paragraph II.C. of the Agreement.

48.     "Preliminary Approval Order" has the meaning set forth in Paragraph II.C. of the Agreement.

49.     "Proactive Wells Fargo Business Decision" means:

a.      Customers who requested Forbearance on one Mortgage account between March 9 and April 7, 2020, and were provided a Forbearance on one or more other Mortgage accounts;

b.      Customers who contacted Wells Fargo by phone between March 9 and March 31, 2020, expressing COVID-19 impact and who were provided a Forbearance without an express request;

c.      Customers who sent a secured email to Wells Fargo conveying COVID-19 impact or hardship, or requesting assistance or information, between March 20, 2020 and April 2, 2020, and who were provided a Forbearance without an express request; and

       d.     Customers who had a pending application in the home preservation process as of March 25, 2020 and who were provided a Forbearance without an express request.

50. "Protective Order" means the Stipulated Protective Order entered in this Action on November 5, 2021.

51. "Remaining Amounts" means any monies that remain in the Settlement Fund after the Settlement Administrator distributes: (a) the Automatic Payments; (b) Additional Compensation; (c) the Fee and Expense Award approved by the Court; (d) the Service Awards approved by the Court; and (e) the Settlement Administrator's Costs and Expenses.

52. "RESPA" shall mean the Real Estate Settlement Practices Act.

53. "Service Award" means any amounts that are awarded by the Court to Plaintiffs for their service as Class Representatives as described in Paragraph VII.E of the Agreement.

54. "Service Award Applications" has the meaning set forth in Paragraph VII.E of the Agreement.

55. "Settlement" means the settlement of the claims released by the Agreement.

56. "Settlement Administrator's Costs and Expenses" means the Settlement Administrator's costs and expenses to administer the Settlement (including but not limited to the fees of the Special Master for work performed pursuant to Paragraph IV.B.2. herein).

57. "Settlement Fund" means the $94,000,000 that will be deposited by Well Fargo into an interest bearing account administered by the Settlement Administrator to cover the amounts to be paid for: (a) the Automatic Payments; (b) Additional Compensation; (c) the Fee and Expense Award approved by the Court; (d) the Service Awards approved by the Court; and (e) the Settlement Administrator's Costs and Expenses.

58. "Settlement Website" means the website created by the Settlement Administrator for purposes of submitting Claim Forms online with a URL acceptable to the Settling Parties subject to Wells Fargo's final right of approval.

59. "Settling Parties" means the Plaintiffs, both individually and on behalf of the Class, and Wells Fargo.

60. "Special Master" means the qualified individual retained by the Settling Parties to assist with distribution of Additional Compensation from the Claims Fund pursuant to Paragraph IV.B.2 of the Agreement.

61. "Term Sheet" means the Term Sheet agreed to by the Settling Parties on or about July 22, 2022.

62. "TILA" shall mean the Truth in Lending Act.

63. "Wells Fargo" means Wells Fargo Bank, N.A.

64. "Without Adequate Informed Consent" means:

    a. the Mortgage entered Forbearance via Wells Fargo's online banking or interactive voice response ("IVR") portal before May 11, 2020, unless the customer (i) made no payments from the date that the Forbearance was requested and continuing during the entire Forbearance period; (ii) made more than one request for Forbearance; or (iii) requested an extension of the Forbearance; or

    b. the Mortgage entered Forbearance as a result of a Proactive Wells Fargo Business Decision, unless the customer (i) requested forbearance online or through the IVR portal, or (ii) requested an extension of the Forbearance; or

    c. Wells Fargo has previously determined that the Forbearance was erroneous.

65. As used in the Agreement, the plural of any defined terms includes the singular thereof and vice versa, except where the context requires otherwise.

## II. PRELIMINARY APPROVAL ORDER, NOTICE ORDER, AND SETTLEMENT HEARING

### A. Certification of Class and Appointment of Class Counsel.

For settlement purposes only, the Settling Parties agree to certification of the Class pursuant to Rule 23(a) and (b)(3) and to the appointment of Smith & Lowney, PLLC as Class Counsel for the Class under Rule 23(g). The Settling Parties do not agree to, and Plaintiffs do not pursue, class certification pursuant to Rule 23(b)(2). The Settling Parties' stipulation to the certification of the Class is for purposes of the Settlement set forth in this Agreement only. Wells Fargo's agreement to certification of the Rule 23(b)(3) Class is solely for the purpose of this Agreement and does not, and shall not, constitute, in this or any other proceeding, an admission by Wells Fargo of any kind or any determination that certification of a class for trial or other litigation purposes in the Action or any other separate action is, or would be, appropriate. If the Settlement is not granted Final Approval or this Agreement is otherwise terminated or rendered null and void, the certification of the Class shall be automatically vacated and shall not constitute evidence of or any determination that the requirements for certification of a class for trial or other litigation purposes in this Action or any other action are satisfied; in such circumstances, Wells Fargo reserves all rights to challenge certification of any class for trial or other litigation purposes in the Action or in any other action on all available grounds as if no class had been certified in this Action for purposes of the Settlement.

**B. Amendment of the First Amended Complaint.**

As soon as practicable following the Execution Date, and prior to or concurrent with filing a Motion for Preliminary Approval of this Agreement, Plaintiffs, through Class Counsel, shall amend the First Amended Complaint to add Heather and Stephen Shimp as named plaintiffs in the Action in substantially the same form as **Exhibit D** attached hereto.

**C. Motion for Preliminary Approval.**

As soon as practicable following the Execution Date, Class Counsel shall file a Motion for Preliminary Approval of this Agreement (including all Exhibits) to the Court and shall apply for entry of an order ("Preliminary Approval Order") that would, for settlement purposes only: (1)

11

preliminarily approve this Settlement ("Preliminary Approval"); (2) certify a conditional settlement class pursuant to Fed. R. Civ. P. 23(a) and (b)(3); and (3) appoint Class Counsel.

### D. Class and Class Action Fairness Act Notices.

As part of the Motion for Preliminary Approval, Class Counsel shall submit to the Court for approval a proposed form of, method for, and schedule for dissemination of notice to the Class that is acceptable to Wells Fargo (the "Notice Plan"). The Notice Plan shall, at a minimum, include direct notice by mail and email (to the extent email addresses are available). In addition, a Settlement Website will be established by the Settlement Administrator, with a URL acceptable to the Settling Parties subject to Wells Fargo's final right of approval. The Motion for Preliminary Approval shall ask the Court to find that the proposed form of and method for dissemination of notice to the Class constitutes valid, due, and sufficient notice to the Class; constitutes the best notice practicable under the circumstances; and complies fully with the requirements of Fed. R. Civ. P. 23 and constitutional due process. The proposed form of notice to the Class pursuant to the Notice Plan ("Class Notice") is attached hereto as **Exhibit C**. The Preliminary Approval Order, Class Notice, and Notice Plan must be agreed to by Wells Fargo before submission to the Court.

Wells Fargo shall provide contact information for the Class Members as soon as practicable after the Execution Date but no later than thirty (30) Days after Preliminary Approval. The Settlement Administrator will use reasonable efforts to update and confirm the accuracy of the Class Members' contact information through the United States Postal Service change of address system.

On or before the Notice Deadline (sixty (60) Days after Preliminary Approval), the Settlement Administrator shall send the Notice of Settlement and Claim Form to the Class Members in accordance with the Notice Plan. Wells Fargo, through the Administrator, shall be responsible for providing all notices required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

### E. Motion for Final Approval and Entry of Final Judgment.

Not less than fourteen (14) Days prior to the date set by the Court to consider whether this Settlement should be finally approved, Class Counsel shall submit a Motion for Final Approval of the Settlement by the Court. Class Counsel shall seek entry of the Final Approval Order and Judgment, which shall be approved as to form and content by Wells Fargo prior to submission by Class Counsel, containing at least the following:

1. Finding that the Court has personal jurisdiction over Plaintiffs and all Class Members and that the Court has subject matter jurisdiction to approve this Settlement and Agreement;

2. Certifying the Class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3), solely for purposes of this Settlement;

3. Fully and finally approving this Agreement and its terms as being fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23, and directing its consummation pursuant to its terms and conditions;

4. Declaring this Agreement and the Final Approval Order and Judgment to be binding on and to have res judicata and preclusive effect in all pending and future lawsuits or other proceedings encompassed by the Class Released Claims maintained by or on behalf of the Class Releasors;

5. Finding that the notice given to the Class Members pursuant to the Notice Plan and Class Notice (i) constituted the best notice practicable under the circumstances; (ii) constituted notice that was reasonably calculated under the circumstances to apprise Class Members of the pendency of the Action, of their right to object to or exclude themselves from the proposed Settlement as applicable, of their right to appear at the Final Approval Hearing, and of their right to seek relief; (iii) constituted reasonable, due, adequate, and sufficient notice to all Persons entitled to receive notice; and (iv) complies in all respects with the requirements of Fed. R. Civ. P. 23, due process, and any other applicable law;

6.      Finding that Class Counsel and Plaintiffs adequately represented Class Members for purposes of entering into and implementing this Agreement and Settlement;

7.      Directing that the Action and claims for damages be dismissed with prejudice and, except as otherwise explicitly provided for in the Agreement, without costs;

8.      Discharging and releasing the Class Releasees from all Class Released Claims;

9.      Permanently barring and enjoining the institution and prosecution, by Class Releasors, of any and all of the Class Released Claims;

10.     Approving the Opt-Out List and determining that the Opt-Out List is a complete list of all persons who have timely and validly requested exclusion from the Class, and accordingly, who shall neither share in nor be bound by the Final Approval Order and Judgment;

11.     Determining that the Agreement and the Settlement provided for therein and any proceedings taken pursuant to it are not and should not in any event be offered or received as evidence of a presumption, concession, acknowledgment, or an admission of liability or of any wrongdoing by Wells Fargo or the Class Releasees or of the suitability of these or similar claims to class treatment for litigation, trial, or any other purpose except settlement; provided, however, that reference may be made to this Agreement and the Settlement provided for herein in such proceedings as may be necessary to effectuate the Agreement;

12.     Reserving continuing and exclusive jurisdiction over the Settlement, including all future proceedings concerning the administration, consummation, and enforcement of this Agreement;

13.     Authorizing the Settling Parties, without further approval from the Court, to agree to and adopt such amendments, modifications, and expansions of this Agreement as shall be consistent in all material respects with the Final Approval Order and Judgment and not limit the rights of the Settling Parties or Class Members; and

14.     Containing such other and further provisions consistent with the terms of this Agreement to which the Settling Parties expressly consent in writing.

### F.      Stay Order.

Upon the date that the Court enters the Preliminary Approval Order, Plaintiffs and all Class Members shall be barred and enjoined from commencing or instituting any new action or any proceeding of any kind (including, but not limited, to an action for actual damages, statutory damages, and/or exemplary or punitive damages) in any court of law, arbitration tribunal, administrative forum, or other forum of any kind worldwide, based on the Class Released Claims.

### III.      RELEASES

Upon the Effective Date, and pursuant to the Court's entry of the Final Approval Order and Judgment, the Settling Parties provide the following releases:

### A.      Plaintiffs and Class Release of Wells Fargo.

Plaintiffs and each and every Class Member, individually or together, and each and every one of their former, present, or future agents, predecessors, successors, heirs, legatees, executors, administrators, insurers, assigns, trustees, spouses, and domestic partners ('Class Releasors') releases and fully discharges Wells Fargo, and each of its former, present, or future agents, insurers, predecessors, successors, subsidiaries, parent company(ies), affiliates, officers, directors, employees, and attorneys ('Class Releasees') from any and all past and/or present claims, counterclaims, lawsuits, set-offs, costs, losses, rights, demands, charges, complaints, actions, causes of action, obligations, or liabilities of any and every kind, whether class, individual, or otherwise in nature, including, without limitation, those known or unknown or capable of being known; those which are unknown but might be discovered or discoverable based upon facts other than or different from those facts known or believed at this time; those which are foreseen or unforeseen, suspected or unsuspected, asserted or unasserted, and/or contingent or non-contingent; and those which are accrued, unaccrued, matured or not matured, under the laws of any jurisdiction, which they, whether directly, representatively, derivatively, or in any other capacity, ever had, now have, or hereafter can, shall, or may have, resulting from, arising from, or relating

in any way to the Forbearances that Class Releasees provided to the Class Releasors (the "Class Released Claims").

### 1. No Future Actions Following Release.

The Class Releasors shall not after the Effective Date seek (directly or indirectly) to commence, institute, maintain, or prosecute any suit, action, or complaint of any kind (including, but not limited to, claims for actual damages, statutory damages, restitution, and exemplary or punitive damages) against Class Releasees (including pursuant to the Action), based on the Class Released Claims, in any forum worldwide, whether on his or her own behalf or as part of any putative, purported, or certified class or as part of an action by any other plaintiff on his or her behalf.

### 2. Covenant Not to Sue.

Class Releasors hereby covenant not to sue the Class Releasees with respect to any Class Released Claims, including any claims that Class Releasors, or any of them, does not know or suspect to exist in his or her favor at the time of the release that if known by him or her, might have affected his or her settlement with and release of the Class Releasees, or might have affected his or her decision not to object to or opt-out of this Settlement. Class Releasors shall be permanently barred and enjoined from instituting, commencing, or prosecuting any claims against the Class Releasees of any kind (including, but not limited to, for actual damages, statutory damages, restitution, and exemplary or punitive damages) based on the Class Released Claims. The Class Releasors contemplate and agree that this Agreement may be pleaded as a bar to a lawsuit, and an injunction may be obtained preventing any action from being initiated or maintained, in any case sought to be prosecuted on behalf of any Class Releasors (including, but not limited to, for actual damages, statutory damages, and exemplary or punitive damages) based on the Class Released Claims.

### 3. Waiver of California Civil Code § 1542 and Similar Laws.

In addition, the Class Releasors expressly acknowledge that they are familiar with and, upon Final Approval of this Settlement, waive and release with respect to the Class Released Claims any and all provisions, rights, and benefits conferred (a) by Section 1542 of the Civil Code of the State of California, which reads:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR;

(b) by any and all equivalent, similar, or comparable federal or state rules, regulations, laws, or principles of law of any other jurisdiction that may be applicable herein; and/or (c) any law or principle of law of any jurisdiction that would limit or restrict the effect or scope of the provisions of the release set forth in the Agreement. The Class Releasors expressly agree that by executing this Agreement, and for the consideration received hereunder, it is their intention to release, and they are releasing, all Class Released Claims, including any claims that Class Releasors, or any of them, does not know or suspect to exist in his or her favor at the time of the release that if known by him or her, might have affected his or her settlement with and release of the Class Releasees, or might have affected his or her decision not to object to or opt-out of this Settlement. The Class Releasors acknowledge that they may hereafter discover claims or facts other than or different from those which they know, believe, or suspect to be true with respect to the subject matter of the Class Released Claims, but the Class Releasors expressly waive and fully, finally, and forever settle and release any and all past, present, and future claims, counterclaims, lawsuits, set-offs, costs, losses, rights, demands, charges, complaints, actions, causes of action, obligations, or liabilities of any and every kind, whether class, individual, or otherwise in nature, including, without limitation, those known or unknown or capable of being known; those which are unknown but might be discovered or discoverable based upon facts other than or different from those facts

SETTLEMENT AGREEMENT
*BRIAN ECHARD VS. WELLS FARGO BANK, N.A., CASE NO. 2:21-CV-05080-MHW-KAJ*

known or believed at this time; those which are foreseen or unforeseen, suspected or unsuspected, asserted or unasserted, and/or contingent or non-contingent; and those which are accrued, unaccrued, matured or not matured, all from the beginning of the world until the Effective Date, under the laws of any jurisdiction, which Class Releasors or any of them, whether directly, representatively, derivatively, or in any other capacity, ever had, now have, or hereafter can, shall, or may have, arising out of the Class Released Claims. The release of unknown, unanticipated, unsuspected, unforeseen, and unaccrued losses or claims in this paragraph is contractual and not a mere recital.

### 4. Dismissal.

Subject to Court approval, all Class Releasors shall be bound by this Agreement, and all of their claims shall be dismissed with prejudice and released, even if they never received actual notice of the Action or this Settlement.

### 5. Agreement To Be Bound.

All members of the Class shall be subject to and bound by the provisions of this Settlement Agreement, the Class Released Claims, and the Judgment with respect to all Class Released Claims regardless of whether such Class Members obtain payment pursuant to the Settlement.

## IV. SETTLEMENT CONSIDERATION

In full, complete, and final settlement of any and all claims in the Action, and as consideration for the Releases provided by this Agreement, Wells Fargo agrees as follows:

### A. Settlement Fund.

Wells Fargo agrees to deposit $94 million ($94,000,000.00) into a non-reversionary Settlement Fund to be used to pay for the following obligations under this Agreement: (1) Automatic Payments to Eligible Class Members from the Automatic Payment Fund; (2) Additional Compensation payments to Eligible Class Members from the Claims Fund; (3) the Fee and Expense Award approved by the Court; (4) the Service Awards approved by the Court; and (5) all costs and expenses associated with administering the Settlement. In no event shall Wells Fargo

deposit any additional funds into the Settlement Fund to cover any obligations set forth in the Agreement. Wells Fargo shall have no responsibility or liability for the maintenance, preservation, investment, or distribution of any amount of the Settlement Fund.

### B. Distribution of Net Settlement Amount.

The Net Settlement Amount shall be distributed according to the Distribution Plan attached as **Exhibit B**. In summary:

### 1. Automatic Payments.

Within thirty (30) Days of the Effective Date, the first $35,000,000 will be distributed equally to Eligible Class Members based upon the number of At-Issue Forbearances.

### 2. Claims Fund.

The remainder of the Net Settlement Amount shall be placed into a Claims Fund and available to pay Additional Compensation to Eligible Class Members who submit a valid claim that they were (i) denied credit; (ii) paid an increased interest rate or other cost of credit; or (iii) suffered other provable damages proximately caused by being placed into an At-Issue Forbearance.

### 3. Remaining Amounts.

Remaining Amounts shall be distributed *pro-rata* to Eligible Class Members who cashed a previous Settlement check, unless each such Class Member would receive less than $10, in which case the Remaining Amounts would be distributed to a *cy pres* recipient approved by the Court.

### 4. Administrative Costs and Expenses.

All necessary costs to administer the terms of this Settlement, including but not limited to the costs of the Notice Plan and the Settlement Administrator, the Special Master and any required experts and professionals, and payment of taxes, shall be paid for exclusively out of the Settlement Fund. Wells Fargo shall have no responsibility or liability for the maintenance, preservation, investment, or distribution of any amount of the Settlement Fund. Up to $500,000.00 from the Settlement Fund may be used to pay the Settlement Administrator for initial costs and expenses

for implementing the terms of the Agreement after Preliminary Approval but before Final Approval.

## V. NOTICE AND ADMINISTRATION OF SETTLEMENT

### A. Claim Form.

The Claim Form shall be substantially in conformance with the format and content set forth in **Exhibit A** to this Agreement, subject to reasonable modifications required by the Court. The Claim Form will allow Class Members to submit and complete the Claim Form online and by electronic signature and will include a link to the Settlement Website and/or a QR Code or any other appropriate available technology to allow Class Members to submit claims electronically. Class Members will also be able to complete, sign, and mail a copy of the completed Claim Form to the Settlement Administrator, or upload it to the Settlement Website.

### B. Notice.

The Notice shall be substantially in conformance with the format and content set forth in **Exhibit C** to this Agreement, subject to reasonable modifications required by the Court.

### C. Time to Appeal.

The time to appeal from an approval of the Settlement shall commence upon the Court's entry of the Judgment regardless of whether or not the Fee and Expense Application has been submitted to the Court or resolved.

### D. No Liability for Distribution of the Settlement Fund.

The Settling Parties shall not have any liability with respect to the distribution of payments; the determination, administration, or calculation of claims; or any losses incurred in connection with any such matters. In addition to the releases set forth herein, the Class Releasors hereby fully, finally, and forever release, relinquish, and discharge the Class Releasees, and their counsel from any and all such liability. No Person shall have any claim against the Settlement Administrator based on the distributions made substantially in accordance with this Agreement.

## VI. DUTIES OF THE SETTLEMENT ADMINISTRATOR

20

## A. The Settlement Administrator will administrate the Settling Parties' Settlement.

The Settlement Administrator shall be responsible for the following tasks:

1. Conducting a National Change of Address search to obtain up-to-date address information on Class Members prior to disseminating the Notice of Settlement;

2. Printing and disseminating the Notice of Settlement by first-class mail and email (where available) to each and every Class Member;

3. Printing and disseminating the applicable Claim Form by first-class mail and email (where available) to each and every Class Member;

4. Furnishing promptly to Counsel for the Settling Parties copies of any Requests for Exclusion, Opt-Out Forms, objections, or other written or electronic communications from each Class Member that the Settlement Administrator receives;

5. Determining the amount of the Automatic Payments and the Additional Compensation payments owed to Eligible Class Members in accordance with this Agreement;

6. Keeping track of each request for exclusion and Opt-Out form, including maintaining the original mailing envelope in which the request for exclusion or Opt-Out form was mailed and reporting to Counsel for both sides the total number and identities of those who have requested exclusion or returned completed Opt-Out forms;

7. Taking all steps necessary to implement the Distribution Plan, including working with the Special Master and issuing Automatic Payments and Additional Compensation payments;

8. Skip-tracing or otherwise attempting to ascertain current address information for each Settlement check returned as undeliverable;

9. Placing a stop-pay order on all Settlement checks not cashed before their void date;

10.     Performing all tax reporting duties required by federal, state, and/or local law related to any Automatic Payments, Additional Compensation, Fee and Expense Award, and Service Awards pursuant to this Settlement Agreement;

11.     Responding to inquiries of Class Members regarding the terms of Settlement and procedures for filing objections, requests for exclusion, and Claim Forms;

12.     Referring to Class Counsel all inquiries by Class Members regarding matters not within the Settlement Administrator's duties specified herein and contemporaneously giving Counsel for Wells Fargo notice of all such inquiries;

13.     Responding to inquiries of Class Counsel regarding Class Members who have contacted Class Counsel regarding the terms of the Settlement and contemporaneously giving Counsel for Wells Fargo notice of all such inquiries;

14.     Apprising Class Counsel and Counsel for Wells Fargo of the activities of the Settlement Administrator via a weekly report, including status reports regarding the Class Notice, requests for exclusion, completed Opt-Out forms, and completed Claim Forms received, and promptly providing copies to Class Counsel and Counsel for Wells Fargo of such documents and all electronic or written communications between the Settlement Administrator and any Class Member;

15.     Responding to requests for further information from Class Members via a toll-free number, including providing a copy of this Settlement Agreement, the First Amended Complaint, or any other materials available on the Settlement Website, to any Class Member who requests such documents;

16.     Creating and maintaining the Settlement Website, and removing the Settlement Website from the Internet promptly if the Settlement is terminated or if the Court denies Final Approval of the Settlement, and, in any event, within ninety (90) Days after the Effective Date;

17. Obtaining approval from the Settling Parties for the name of the Settlement Website before publishing;

18. Maintaining adequate records of its activities, including the dates of the mailing of Class Notice(s), second mailing, requests for exclusion, and Opt-Out forms, returned mail and other communications, and attempted written or electronic communications with Class Members;

19. Confirming in writing the substance of its activities and its completion of the administration of the Settlement;

20. Responding timely to communications from Class Counsel or Counsel for Wells Fargo;

21. Reporting timely each Automatic Payment, Additional Compensation, and Remaining Amounts payment on an IRS Form W-2 and IRS Form 1099 to each applicable Class Member;

22. Reporting timely on an IRS Form 1099 the Fee and Expense Award and Service Awards to the Class Counsel and Class Representatives, respectively;

23. Providing assistance with mailing the CAFA notices required by the Settlement Agreement which shall be provided to the appropriate federal and state officials within ten (10) Days after the filing of the Preliminary Approval Motion pursuant to 28 U.S.C. § 1715;

24. Emailing and/or calling Class Members who did not cash their Automatic Payment or Additional Compensation checks so that a new Settlement check can be issued;

25. Disbursing any Remaining Amounts of the Settlement Fund in accordance with Paragraph IV.B.3. of the Agreement; and

26. Performing such other tasks as the Settling Parties mutually agree or that are specified in this Agreement.

**B.** The Settlement Administrator shall keep all information it obtains relating to the identification and contact information of Class Members strictly confidential pursuant to the

Protective Order previously entered in this case and use it only for the sole purposes described herein and shall destroy or return all such information to Counsel for Wells Fargo upon completion of the Settlement administration tasks. Furthermore, upon completion of its duties, the Settlement Administrator shall destroy or return to Class Counsel and Counsel for Wells Fargo all documents related to the Action, including all documents it received in connection with this case from the Settling Parties, Class Members, Plaintiffs, or any other individuals (including, but not limited to, objections, Requests for Exclusion, and Opt-Out Forms).

C. Class Counsel and Counsel for Wells Fargo will provide the Settlement Administrator with a copy of this Settlement Agreement which identifies and lists duties to be performed by the Settlement Administrator, as described above.

D. All disputes relating to the Settlement Administrator's ability and need to perform its duties shall be resolved jointly by Class Counsel and Counsel for Wells Fargo consulting in good faith. If the Settling Parties are unable to reach agreement, either may raise the disagreement with the Court.

## VII. SERVICE AWARDS, ATTORNEYS' FEES, AND REIMBURSEMENT OF EXPENSES

### A. Fee and Expense Application.

Class Counsel may submit an application or applications (the "Fee and Expense Application") to the Court for payment of: (a) an award of attorneys' fees; plus (b) reimbursement of reasonable and actual expenses incurred in connection with prosecuting this Action. Class Counsel agree that the Fee and Expense Application will not seek an amount in excess of twenty five percent (25%) of the Settlement Fund for attorneys' fees, plus reasonable and actual expenses.

### B. Payment of Fee and Expense Award.

Any amounts that are awarded by the Court pursuant to the paragraph above (the "Fee and Expense Award") shall be paid by the Settlement Administrator from the Settlement Fund within thirty (30) Days of the Effective Date. The Fee and Expense Award, plus interest that has accrued

on the Fee and Expense Award while held in escrow, shall be paid to Smith & Lowney, PLLC, which may further pay such funds to other counsel, subject to the terms herein.

**C.** **Award of Attorneys' Fees and Expenses Shall Not Impact the Effectiveness of this Agreement.**

The procedure for and the allowance or disallowance by the Court of the Fee and Expense Application are not part of the Settlement set forth in this Agreement and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Agreement. Any order or proceeding relating to the Fee and Expense Application, or any appeal from any Fee and Expense Award or any other order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Agreement. No order of the Court or modification or reversal on appeal of any order of the Court concerning any Fee and Expense Award shall constitute grounds for cancellation or termination of this Agreement.

**D.** **No Liability for Attorneys' Fees and Expenses of Class Counsel.**

Neither the Class Releasees nor their counsel shall have any responsibility for, interest in, or liability whatsoever with respect to any payment(s) to Class Counsel pursuant to this Agreement and/or to any other Person who may assert some claim thereto or any Fee and Expense Award that the Court may make in the Action, other than as set forth in this Agreement. Similarly, neither the Class Releasees nor their counsel shall have any responsibility for, interest in, or liability whatsoever with respect to allocation among Class Counsel, and/or any other person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Action.

**E.** **Class Representatives' Service Award Application.**

Class Counsel and Class Representatives may submit application(s) to the Court for a Service Award ("Service Award Applications"). Class Counsel and Class Representatives agree that the Service Award Applications shall not exceed $12,500 for each Class Representative (individual or married couple), for their time, effort, and expense in prosecuting this litigation and achieving this Settlement. Any Service Awards that are awarded by the Court shall be paid from

the Settlement Fund. Any Service Awards, plus interest that has accrued on the Service Award while held in escrow, shall be paid by the Settlement Administrator from the Settlement Fund within thirty (30) Days of the Effective Date.

## VIII.   CONDITIONS OF SETTLEMENT AND EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION

### A.   Effective Date.

The Effective Date of this Agreement shall be conditioned on the occurrence of all of the following events:

1.     Wells Fargo no longer has any right to terminate this Agreement, nor is there a possibility of termination of this Agreement as set forth herein or, if Wells Fargo does have such right, Wells Fargo has given written notice to Plaintiffs' Counsel that it will not exercise such right;

2.     The Court has finally approved the Settlement as described herein, following notice to the Class and a hearing, as prescribed by Fed. R. Civ. P. 23, and has entered the Final Approval Order and Judgment;

3.     The Class Released Claims and the Action are dismissed with prejudice pursuant to the Final Approval Order and Judgment; and

4.     The expiration of appeal periods and/or resolution of all appeals:

a.     If no appeal is taken from the Final Approval Order or Judgment, the date after the time to appeal therefrom has expired; or

b.     If any appeal is taken from the Final Approval Order or Judgment, the date after all appeals therefrom, including petitions for rehearing or re-argument, petitions for rehearing en banc, and petitions for certiorari or any other form of review, have been finally disposed of, such that the time to appeal therefrom has expired, in a manner resulting in an affirmance without material modification of the relevant order or judgment.

**B.**     **Depositing Money into the Settlement Fund and Occurrence of Effective Date.**

Within sixty (60) Days after Preliminary Approval of the Settlement, Wells Fargo will transfer the sum of $94,000,000 to the Settlement Administrator to be held in an escrow account maintained by the Settlement Administrator as the Settlement Fund.  After the occurrence of Effective Date, and all of the events referenced in Paragraph VIII.A, the Settlement Administrator shall make the following payments:

1.     The Automatic Payments to the Class shall be issued within thirty (30) Days after the Effective Date;

2.     The Fee and Expense Award and Service Awards payments shall be issued within thirty (30) Days after the Effective Date; and

3.     The Additional Compensation payments to the Class shall be issued as soon as reasonably practicable.

**C.**     **Failure of Effective Date to Occur.**

If all of the conditions specified in this Section are not met, then this Settlement Agreement shall be cancelled and terminated and any funds deposited with the Settlement Administrator, including any interest thereon accrued, shall be returned to Wells Fargo, subject to and in accordance with the provisions set forth herein unless the Settling Parties mutually agree in writing to proceed with this Settlement Agreement.  The effectiveness of the Settlement is expressly conditioned on the Settlement Agreement being approved by the Court and any appellate court reviewing the Settlement without it being rejected or required to be materially modified by any Court ruling or any order resulting from an appeal or other review.  If the Settlement is not finally approved by the Court and any appellate court reviewing it without material modification, the Agreement shall terminate and cease to have any effect.

**D.      Requests for Exclusion/Opt-Outs.**

Any Class Member who wishes to opt-out of the Class must do so on or before the Exclusion/Objection Deadline specified in the Class Notice in the manner laid out in the Class Notice.

1.      In order to become an Opt-Out, a Class Member must mail a request for exclusion with the Settlement Administrator with a post-mark date no later than the Exclusion/ Objection Deadline.  The request for exclusion must be personally signed by the Class Member and include all information specified in the Class Notice.  Opt-Outs may opt-out of the Class only on an individual basis; so-called "mass" or "class" opt-outs shall not be allowed and shall be of no force or effect.  For the avoidance of doubt, no Class Member, or any person acting on behalf of or in concert with that Class Member, may submit a request for exclusion of any other Class Member.  If a Class Member submits both a request for exclusion and a Claim Form, the Claim Form shall take precedence and the Class Member shall not be deemed to have validly excluded themselves from the Settlement.

2.      No later than five (5) Days after the Exclusion/Objection Deadline, the Settlement Administrator shall provide Class Counsel and Counsel for Wells Fargo a complete and final list of Opt-Outs.  With the Motion for Final Approval of the Settlement, Class Counsel will file with the Court a complete list of Opt-Outs, including the name, city, and state of the person requesting exclusion (the "Opt-Out List").

a.      With respect to any Opt-Outs, Wells Fargo reserves all legal rights and defenses, including, but not limited to, any defenses relating to whether the person qualifies as a Class Member and/or has standing to bring any claim.

b.      Wells Fargo may challenge the validity of any Opt-Out by filing a motion with the Court within five (5) Days of the Settlement Administrator providing Counsel for Wells Fargo a complete and

final list of Opt-Outs. The Court shall have jurisdiction to resolve any disputes regarding the validity of Opt-Outs. Any decision by Wells Fargo not to dispute an Opt-Out shall not be a waiver, determination, or preclusive finding against the Class Releasees in any proceeding.

c.      In the event that the number of Opt-Outs is more than five percent (5%) of Class Members, Wells Fargo, in its sole discretion, may terminate this Agreement pursuant to Paragraph VIII.F.

**E.      Objections.**

Class Members who wish to object to any aspect of the Settlement, including any Fee and Expense Application, must file with the Court a written statement containing their objections prior to the Exclusion/Objection Deadline and abide by the requirements laid out in the Class Notice. The written objections must also be mailed to the Settlement Administrator with a post-mark date no later than the Exclusion/Objection Deadline, with a copy to Class Counsel and Wells Fargo's Counsel. The written statement must include all required information as specified in the Notice of Settlement, including but not limited to a description of all objections to the Settlement, the reasons for said objections, and any legal authority supporting the objections. Class Members who opt-out of the Settlement shall not have the right to object to the Settlement and shall not have standing to do so. Any award or payment of attorneys' fees made to the counsel of an objector to the Settlement shall be made only by Court order and upon a showing of a substantial benefit conferred to the Class. Any award of attorneys' fees by the Court will be conditioned on the objector and his or her attorney stating under penalty of perjury that no payments shall be made to the objector based on the objector's participation in the matter other than as ordered by the Court.

Neither the Settling Parties nor any person acting on their behalf shall seek to solicit or otherwise encourage anyone to object to the Settlement, or appeal from any order of the Court that is consistent with the terms of this Settlement.

### F. Termination.

Plaintiffs, through Class Counsel, and Wells Fargo shall have the right, but not the obligation, to terminate this Agreement if: (1) the Court rejects, modifies, or denies approval of any portion of this Agreement or the proposed Settlement that results in a substantial modification to a material term of the proposed Settlement; (2) the Court, or any appellate court(s), does not enter or completely affirm, or alters, narrows, or expands, any portion of the Final Approval Order, that results in a substantial modification to a material term of the proposed Settlement; or (3) the number of Opt-Outs is more than five percent (5%) of Class Members. The terminating party must exercise the option to withdraw from and terminate this Agreement, as provided in this Section, by a signed writing served on the other Settling Parties no later than ten (10) Days after receiving notice of the event prompting the termination. If, but only if, this Agreement is terminated pursuant to this Section then:

1. The Settling Parties will be returned to their positions *status quo ante* and this Agreement shall be null and void and shall have no force or effect and all of its provisions, and all negotiations, statements, and proceedings relating to it shall be without prejudice to the rights of Plaintiffs, Wells Fargo, or any Class Member, all of whom shall be restored to their respective positions existing immediately before the execution of this Agreement, except that the Settling Parties shall cooperate in requesting that the Court set a new scheduling order such that no Party's substantive or procedural rights are prejudiced by the settlement negotiations and proceedings; and

2. Neither this Agreement, the fact of its having been made, nor the negotiations leading to it, shall be admissible or entered into evidence for any purpose whatsoever.

### G. Other Orders.

No Settling Party shall have any obligation whatsoever to proceed under any terms other than those substantially in the form provided and agreed to herein; provided, however, that no order of the Court concerning any Fee and Expense Application, or any modification or reversal

on appeal of such order, shall constitute grounds for cancellation or termination of this Agreement by any Settling Party. Without limiting the foregoing, Wells Fargo shall have, in its sole and absolute discretion, the option to terminate the Settlement in its entirety in the event that the Judgment, upon becoming Final, does not provide for the dismissal with prejudice of the Action and the Class Released Claims.

## IX. NO ADMISSION OF LIABILITY

### A. Final and Complete Resolution.

The Settling Parties intend the Settlement as described herein to be a final and complete resolution of all disputes between them with respect to the Action, and to compromise claims that are contested, and it shall not be deemed an admission by any Settling Party as to the merits of any claim or defense or any allegation made in the Action.

### B. Federal Rule of Evidence 408.

The Settling Parties agree that this Settlement Agreement, its terms, and the negotiations surrounding this Settlement Agreement shall be governed by Federal Rule of Evidence 408 and any state-law equivalents and shall not be admissible or offered or received into evidence in any suit, action, or other proceeding, except upon the written agreement of the Settling Parties hereto, pursuant to an order of a court of competent jurisdiction, or as shall be necessary to give effect to, declare, or enforce the rights of the Settling Parties with respect to any provision of this Agreement.

### C. Use of Agreement as Evidence.

Whether or not this Agreement becomes Final or is terminated pursuant to its terms, the Settling Parties expressly agree that neither this Agreement nor the Settlement, any act performed or document executed pursuant to or in furtherance of this Agreement or the Settlement may be deemed to be or may be used as an admission of, or evidence of: (a) the validity of any claims released by the Agreement, any allegation made in the Action, or any violation of any statute or law or of any wrongdoing or liability of Wells Fargo, and evidence thereof shall not be discoverable or used, directly or indirectly, in any way, whether in the Action or in any other

proceeding; or (b) any liability, fault, or omission of the Class Releasees in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal. Neither this Agreement nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the Settlement, shall be admissible in any proceeding for any purpose, except to enforce the terms of the Settlement; provided, however, in the event this Settlement becomes Final, the Class Releasees may file this Agreement (including the Exhibits), the Final Approval Order, and/or the Judgment in any action for any purpose, including, but not limited to, in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

## X.     REPRESENTATIONS AND WARRANTIES

A.     This Agreement and the Settlement shall be subject to the ordinary and customary judicial approval procedures under Fed. R. Civ. P. 23. Until and unless this Agreement is dissolved or becomes null and void by its own terms, or unless otherwise ordered by the Court, or if Final Approval is not achieved, Plaintiffs and Wells Fargo represent and warrant that they shall take all appropriate steps in the Action necessary to preserve the jurisdiction of the Court, use reasonable efforts to cause the Court to grant Preliminary and Final Approval of this Agreement as promptly as possible, and take or join in such other steps as may be necessary to implement this Agreement and to effectuate the Settlement. This includes the obligation to (a) oppose non-meritorious objections and to defend the Agreement and the Settlement before the Court and on appeal, if any; (b) seek approval of this Agreement and of the Settlement by the Court; (c) move for the entry of the orders required to effectuate Preliminary and Final Approval; and (d) join in the entry of such other orders as are necessary to effectuate this Agreement.

B.     Any Fee and Expense Award that Plaintiffs and Class Counsel may seek upon application to the Court pursuant to this Agreement shall include all attorneys' fees and litigation costs that Plaintiffs, Class Counsel, and any of the current and former owners, predecessors,

successors, partners, shareholders, agents (alleged or actual), representatives, employees, and affiliates of Class Counsel, seek or may have any right or claim to in connection with the Action and the Class Released Claims.

 C. Plaintiffs represent and warrant that other than Class Counsel, as that term is defined herein, there is no other Person having any interest in any award of attorneys' fees, expenses, or litigation costs in connection with the Action, Agreement, or Settlement.

 D. Plaintiffs and Wells Fargo represent and warrant that he, she, it, or they have full authorization and capacity to enter into this Agreement and to carry out the obligations provided for herein. Each Person executing this Agreement on behalf of a Settling Party, entity, or other Person(s) covenants, warrants, and represents that he, she, or it has been fully authorized to do so by that Settling Party, entity, or other Person(s). The Plaintiffs and Wells Fargo represent and warrant that he, she, it, or they intend to be bound fully by the terms of this Agreement.

 E. Plaintiffs and Wells Fargo represent and warrant that they have not, nor will they, unless expressly authorized to do so by the terms of this Agreement, (a) attempt to void this Agreement in any way; (b) Opt-Out of the Settlement under this Agreement; (c) solicit or encourage in any fashion a member of the Class to Opt-Out; or (d) solicit or encourage in any fashion any effort by any Person to object to the Settlement under this Agreement.

 F. If any Person breaches the terms of any of the representations and warranties in this section, the Court shall retain jurisdiction over this matter to entertain actions by a Settling Party against such Person for breach and/or any Settling Party's request for a remedy for such breach.

 G. Class Counsel represent and warrant that they (a) will not seek out or solicit, and (b) have no present intention to pursue individual or class claims against Wells Fargo or any of the Class Releasees with respect to matters within the scope of the Class Released Claims unless this Settlement is not granted Preliminary or Final Approval by the Court. The Settling Parties understand and agree that nothing in this paragraph imposes or shall be construed to prohibit or

restrict Class Counsel from representing persons who seek representation for such claims arising subsequent to the date of this Agreement.

H.    Plaintiffs and Class Counsel represent and warrant that they will comply with the Protective Order that applies to this Action and will not use or seek to use the fact or content of the Settlement in this Action in connection with any other claim, action, or litigation against any Class Releasee (excepting only actions to enforce or construe this Agreement).

I.    Class Counsel represent and warrant to Wells Fargo that they have the authority to execute this Agreement on behalf of Plaintiffs, and themselves, and thereby to bind Plaintiffs, to all terms and conditions of this Agreement, and, subject to Court approval, to bind all Class Members to the terms and conditions of this Agreement.

## XI.    MISCELLANEOUS PROVISIONS

### A.    Voluntary Settlement.

The Settling Parties agree that the terms of the Settlement as described herein were negotiated in good faith by the Settling Parties with the assistance of an independent mediator, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

### B.    Reasonable Best Efforts to Effectuate This Settlement.

The Settling Parties: (a) acknowledge that it is their intent to consummate this Agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement the terms and conditions of this Agreement and to exercise their best efforts to accomplish the terms and conditions of this Agreement.

### C.    Subsequent Events Impacting Administration.

In the event that there are any developments in the effectuation and administration of this Agreement that are not dealt with by the terms of this Agreement, then such matters shall be dealt with as agreed upon by the Settling Parties, and failing agreement, as shall be ordered by the Court.

### D. Potentially Related Actions.

Plaintiffs and Class Counsel retain sole discretion to allow one or more named plaintiffs in a Potentially Related Action, if an Eligible Class Member, to join this Settlement. In such event, the additional plaintiff would sign a joinder to this Settlement and agree to be bound by the Settlement, in a form acceptable to the Settling Parties, and the Settling Parties would notify the Court and take other procedural actions they deem appropriate to have such additional plaintiff(s) be considered additional named plaintiff(s) in this Action. Such joinder would have no impact on any provision in this Agreement, except that Plaintiffs' Service Award Application may seek a Service Award for such additional plaintiff(s) (individual or married couple) subject to the limitations in Paragraph VII.E.

### E. Claims in Connection with Administration.

No Person shall have any claim against Plaintiffs, Wells Fargo, Counsel for Wells Fargo, Class Counsel, the Settlement Administrator, or the Class Releasees or their agents based on administration of the Settlement substantially in accordance with the terms of the Agreement or any order of the Court or any appellate court.

### F. Binding Effect.

This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties hereto. Without limiting the generality of the foregoing, each and every covenant and agreement herein by Plaintiffs shall be binding upon all Class Members.

### G. Authorization to Enter Settlement Agreement.

The undersigned representatives of Wells Fargo represent that they are fully authorized to enter into and to execute this Agreement and any modifications or amendments to the Agreement on behalf of Wells Fargo. Class Counsel, on behalf of Plaintiffs and the Class, represent that they are, subject to Court approval, expressly authorized to take all action required or permitted to be taken by or on behalf of the Class pursuant to this Agreement to effectuate its terms and to enter

into and execute this Agreement and any modifications or amendments to the Agreement on behalf of the Class that they deem appropriate.

    **H.**    **Notices.**

All notices and responses to notices under this Agreement shall be in writing. Each such notice or response shall be given either by email unless otherwise specified herein or in the notice to the Class; and, if directed to any Class Member, shall be addressed to Plaintiffs' Counsel at their email addresses set forth below, and if directed to Wells Fargo, shall be addressed to Counsel for Wells Fargo at the email addresses set forth below or such other email addresses as Class Counsel or Wells Fargo may designate, from time to time, by giving notice to all Settling Parties hereto in the manner described in this paragraph.

If directed to Plaintiffs or any Class Member, email address notice to:

    Knoll Lowney, knoll@smithandlowney.com

    Claire Tonry, claire@smithandlowney.com

    Marc Zemel, marc@smithandlowney.com

    Alyssa Koepfgen, alyssa@smithandlowney.com

If directed to Wells Fargo, email address notice to:

    William C. Mayberry, bill.mayberry@troutman.com

    Amy P. Williams, amy.williams@troutman.com

    **I.**    **No Party Deemed to Be the Drafter.**

None of the Settling Parties hereto shall be deemed to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law, rule of interpretation, or construction that would or might cause any provision to be construed against the drafter hereof.

    **J.**    **Choice of Law.**

This Agreement shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of Ohio, and the rights and obligations of the Settling Parties to this Agreement shall be construed and enforced in accordance with, and governed by, the

internal, substantive laws of the State of Ohio without giving effect to that State's choice of law principles.

### K. Amendment.

This Agreement shall not be modified in any respect except by a writing executed by Wells Fargo and Plaintiffs or Class Counsel, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving party. Should an amendment occur before Final Approval, the Settling Parties shall file a notice with the Court and notify the Class through a posting on the Settlement Website. Up until the deadline for Service Award Applications, Plaintiffs retain sole discretion to name one or more Eligible Class Members as additional or substitute Class Representatives, without amendment of this Agreement, subject to the approval of the Court at the Final Approval Hearing.

### L. Waiver.

The waiver by any party of any breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement. Nothing in the Settlement Agreement (including the fact of Settlement) constitutes or shall be construed as a waiver by Wells Fargo of whatever rights it may have under any arbitration agreement, including with respect to any claim, lawsuit, or judicial proceeding initiated by a member of the Class who has opted-out of the Settlement.

### M. Execution in Counterparts.

This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Counsel for the Settling Parties to this Agreement shall exchange among themselves original signed counterparts and a complete set of executed counterparts shall be filed with the Court.

### N. Integrated Agreement.

This Agreement constitutes the entire agreement between the Settling Parties with respect to the Settlement. This Agreement supersedes all prior negotiations and agreements, including but

not limited to the Term Sheet, and may not be modified or amended except by a writing signed by the Settling Parties and their respective counsel. The Settling Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, or understanding concerning any part of the subject matter of this Agreement has been made or relied on except as expressly set forth in this Agreement. It is understood by the Settling Parties that, except for the matters expressly represented herein, the facts or law with respect to which this Agreement is entered into may turn out to be other than or different from the facts now known to each Settling Party or believed by such party to be true. Each Settling Party therefore expressly assumes the risk of the facts or law turning out to be different and agrees that this Agreement shall be in all respects effective and not subject to termination by reason of any such different facts or law.

**O.    Attorneys' Fees and Costs.**

Except as otherwise expressly provided in this Agreement, each party shall bear its own costs and attorneys' fees.

**P.    Return or Destruction of Confidential Materials.**

The Settling Parties agree to continue to comply with the Protective Order entered in this Action at the conclusion of the case. All agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Agreement.

**Q.    Intended Beneficiaries.**

No provision of this Agreement shall provide any rights to, or be enforceable by, any Person that is not one of the Plaintiffs, a Class Member, Wells Fargo, one of the Class Releasees, Class Counsel, or Counsel for Wells Fargo, except that this Agreement will be binding upon and inure to the benefit of the successors and assigns of the Settling Parties. No Class Representative,

Class Member, or Class Counsel may assign or otherwise convey any right to enforce any provision of this Agreement.

**R.     Regular Course of Business.**

The Settling Parties agree that nothing in this Agreement shall be construed to prohibit communications between Class Releasees, on the one hand, and Class Members, on the other hand, in the regular course of business.

**S.     Tax Consequences.**

No representations or advice regarding the tax consequences of this Agreement have been made by any Settling Party.  The Settling Parties further understand and agree that each Settling Party, each Class Member, each of Class Counsel, and Plaintiff shall be responsible for his, her, its, or their own taxes, if any, resulting from this Agreement and any payments made pursuant to this Agreement.

**T.     Qualified Settlement Fund.**

The Settling Parties agree that the Settlement Fund shall be maintained as a qualified settlement fund within the meaning of Treasury Regulation § 1.468 B-1, and that the Settlement Administrator, within the meaning of Treasury Regulation § 1.468 B-2(k)(3), shall be responsible for filing tax returns and any other tax reporting for or in respect of the Settlement Fund and paying from the Settlement Fund any taxes owed with respect to the Settlement Fund.  Defendants shall have no obligation to replenish the Settlement Fund as a result of any taxes owed or paid out of the Settlement Fund or for any other reason.  The Settling Parties agree that the Settlement Fund shall be treated as a qualified settlement fund from the earliest date possible and agree to any relation-back election required to treat the Settlement Fund as a qualified settlement fund from the earliest date possible.

**U.**     **Taxes for the Settlement Fund.**

All taxes relating to the Settlement Fund shall be paid out of the Settlement Fund, shall be considered an administrative expense, and shall be timely paid by the Settlement Administrator without prior order of the Court.

**V.**     **Bankruptcy Proceedings.**

1.     The Settling Parties agree that any Class Member who is in active bankruptcy proceedings or previously was a party to bankruptcy proceedings during the period of time covered in the definition of the Class may only participate in the Settlement subject to applicable bankruptcy law and procedures. Wells Fargo is under no obligation to notify any bankruptcy court that has, had, or may have jurisdiction over such Class Member's bankruptcy proceedings or any trustee or examiner appointed in such Class Member's bankruptcy proceedings of this Agreement or the benefits conferred by the Agreement and the Settlement.

2.     The Settling Parties agree that any dispute concerning the rights of the bankruptcy estate to the proceeds of any payment under the Settlement or Service Award shall be adjudicated by the applicable Bankruptcy Court. The Settlement Administrator shall follow any direction of the Bankruptcy Court with respect to the proceeds of any payment or Service Award.

**W.**     **No Conflict Intended; Headings.**

Any inconsistency between this Agreement and the exhibits attached hereto shall be resolved in favor of this Agreement. The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

**X.**     **Class Member Obligations.**

Under no circumstances shall the Settlement or Agreement or any release herein be deemed to alter, amend, or change the terms and conditions of any account or loan to which any Class Member is or was a party, or to provide a defense to any such loan, nor shall the Agreement or any release herein be deemed to have any effect in any bankruptcy case, in any foreclosure proceeding, or in any other action involving a Class Member hereto, nor shall the Settlement or the Agreement

create or be construed as evidence of any violation of law or contract. In the event this Agreement is so construed as to a particular Class Member, it can be declared by Wells Fargo to be null and void as to that Class Member only (and in such latter event, the Class Released Claims as to that Class Member shall also be void).

**Y. Press Release.**

Plaintiffs and Class Counsel shall not issue, or otherwise cause to be issued, any press release or advertisement, concerning the Action and/or the facts and circumstances that were the subject of, or disclosed in discovery in the Action, excepting only such documents created and disbursed as part of the Class Notice. Plaintiffs and Class Counsel shall not seek media interviews concerning: (i) the Action; (ii) the facts and circumstances that were the subject of, or disclosed in discovery in the Action; and/or (iii) the Settlement of the Action, excepting only that such statements may be made to individual Class Members in one-on-one communications or as part of the Class Notice. Under no circumstance shall Plaintiffs or Class Counsel disclose to any third party (i) any confidentially designated discovery obtained from Wells Fargo in the Action and/or (ii) any non-public information regarding the Settling Parties' negotiation of this Settlement and/or this Agreement, except as may be otherwise permitted in this Agreement. Specifically, this paragraph does not alter the scope of any confidentiality provisions or provisions regarding the use of non-public information set forth in this Agreement.

**Z. Further Disputes.**

If any disputes arise out of the finalization of the settlement documentation, said disputes are to be resolved by the Honorable Judge Andrew Guilford (Ret.) first by way of expedited telephonic mediation and, if mediation is unsuccessful, then by way of final, binding, non-appealable determination.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the Settling Parties hereto, through their fully authorized representatives, have entered into this Agreement as of the date first below written, and have executed this Settlement Agreement on the date indicated below each respective signature.

PLAINTIFF BRIAN ECHARD
By:

_____
Brian Echard

Date: September 8, 2022

PLAINTIFF HEATHER SHIMP
By:

_____
Heather Shimp

Date:_____, 2021

PLAINTIFF STEPHEN SHIMP
By:

_____
Stephen Shimp

Date:_____, 2021

DEFENDANT WELLS FARGO BANK, N.A.
By:

_____

Title:_____
Date:_____, 2021

42

IN WITNESS WHEREOF, the Settling Parties hereto, through their fully authorized representatives, have entered into this Agreement as of the date first below written, and have executed this Settlement Agreement on the date indicated below each respective signature.

PLAINTIFF BRIAN ECHARD
By:

_____

Brian Echard

Date:_____, 2021

PLAINTIFF HEATHER SHIMP
By:

_____

Heather Shimp

Date: _September 8_, 2022

PLAINTIFF STEPHEN SHIMP
By:

_____

Stephen Shimp

Date: _September 8_, 2022

DEFENDANT WELLS FARGO BANK, N.A.
By:

_____

Title: _____
Date:_____, 2021

IN WITNESS WHEREOF, the Settling Parties hereto, through their fully authorized representatives, have entered into this Agreement as of the date first below written, and have executed this Settlement Agreement on the date indicated below each respective signature.

PLAINTIFF BRIAN ECHARD
By:

_____
Brian Echard

Date:_____ , 2022


PLAINTIFF HEATHER SHIMP
By:

_____
Heather Shimp

Date:_____ , 2022


PLAINTIFF STEPHEN SHIMP
By:

_____
Stephen Shimp

Date:_____ , 2022


DEFENDANT WELLS FARGO BANK, N.A.
By:

_____

Title: CEO, Consumer Lending and Head of Diverse Segements, Representation and Inclusion
Date: September 8 , 2022

Agreed as to form and content:

/s/ Nathan A. Hunter
Nathan A. Hunter (0096389)
Trial Attorney
Hunter & Hunter LLC
1491 Polaris Pkwy #21416
Columbus, OH 43240
Tel: (234) 738-4648
Email: nathan@hunterfirm.org

Knoll  Lowney
Marc Zemel
Smith & Lowney, PLLC
2317 E. John Street
Seattle, WA 98112
Tel: (206) 860-2883
Email: knoll@smithandlowney.com

*Attorneys for Plaintiffs and the Proposed Class*

/s/ D. Jeffrey Ireland
D. Jeffrey Ireland (0010443)
Trial Attorney
Stephen A. Weigand (0083573)
FARUKI PLLC
110 North Main Street, Suite 1600
Dayton, OH 45402
Telephone: (937) 227-3710
Fax: (937) 227-3717
Email: djireland@ficlaw.com
sweigand@ficlaw.com

William C. Mayberry, Esq.
Amy Pritchard Williams, Esq.
Jason E. Manning, Esq.
Troutman Pepper Hamilton Sanders LLP
301 South College Street, Suite 3400
Charlotte, NC 28202

*Attorneys for Defendant Wells Fargo Bank N.A.*

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF OHIO

## EASTERN DIVISION (COLUMBUS)

| | |
|---|---|
| BRIAN ECHARD,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.<br><br>　　　　　Defendant. | CASE NO. 2:21-cv-05080-MHW-KAJ<br><br>(Judge Michael H. Watson)<br>(Magistrate Judge Kimberly A. Jolson)<br><br><br>**EXHIBIT A  TO SETTLEMENT AGREEMENT – CLAIM FORM** |

| CLAIM FORM |
|---|

***Echard, et al. v. Wells Fargo Bank, N.A.***
**Case No. 2:21-cv-05080-MHW-KAJ**
**United States District Court for the Southern District of Ohio**

**IMPORTANT:**
- **All class members will receive an automatic payment from the Settlement.**
- **RETURN THIS FORM BY __ TO CLAIM ADDITIONAL COMPENSATION IF YOU SUFFERED DAMAGES FROM BEING PLACED INTO FORBEARANCE.**
- **For more information, see below or [Website].**

**[INSERT INDIVIDUAL RECIPIENT/ADDRESSEE               [INSERT QR CODE] MAILING INFORMATION]**

## SECTION I:  INSTRUCTIONS

You have been identified as a member of the Settlement Class in the lawsuit identified above.

**Please read the instructions carefully.  Failure to follow them could lead to rejection of your claim.**

You must complete and submit this Claim Form by [DEADLINE].  If you send the Claim Form by mail, it must be postmarked on or before [DEADLINE].

You may return this Claim Form via mail or by submitting a Claim Form on the Settlement Website at: <<INSERT>>.  You may also scan the QR Code above to complete and submit the Claim Form on your smartphone or tablet.  Capitalized terms in this Claim Form are defined in the Settlement Agreement, which is available at the Settlement Website.

## SECTION II: ELIGIBILITY

According to Wells Fargo's account records, you had a mortgage serviced by Wells Fargo that was placed into a COVID mortgage forbearance without adequate informed consent between March 1, 2020, and December 31, 2021 ("At-Issue Forbearance").

As explained in the Notice, if you do not opt out of the Settlement, you will receive an Automatic Payment Settlement check from the Settlement whether or not you submit this Claim Form.

In addition to the Automatic Payment, you are eligible to claim Additional Compensation if the At-Issue Forbearance caused one of the following:

 1. You were denied credit;

 2. You paid an increased interest rate or other cost of credit; OR

3. You suffered other provable damages proximately caused by being placed into a forbearance.

If you believe you suffered such damages, fully complete below Sections III and IV of this Claims Form.

## SECTION III: CHECK ALL OF THE BOXES BELOW THAT APPLY TO YOU AND PROVIDE REQUESTED INFORMATION

| | |
|---|---|
| **1** | ☐ **I was denied credit as a result of the being placed in forbearance without adequate informed consent. (If you were later able to obtain the credit sought, proceed to Question 2.)** <br><br> **Was the denied credit:** <br><br> ☐**A refinance of a loan or other credit product?** <br><br> ☐**A new loan?** <br><br> **Approximate Date(s) that you applied for credit:**_____ <br><br> **Which bank or lender did you apply for credit with?** _____ <br><br> **Type of credit sought (e.g., home mortgage, home equity line of credit, auto):** <br><br> _____ <br><br> **Interest rate that you applied for:** _____ <br><br> **Loan amount requested:**_____ <br><br> **Term (# of years) of credit/loan that you applied for:**_____ <br><br> **Monthly principal & interest of requested loan:** _____ |

☐ **I received an increased interest rate or paid other cost of credit (e.g., points) as a result of being placed into forbearance without adequate informed consent.**

☐ **My loan approval was delayed as a result of being placed into forbearance without adequate informed consent.**

**Was the loan on which this occurred:**

　　　　☐ **A refinance of a loan or other credit product?**

　　　　☐ **A new loan?**

**Approximate date(s) that you applied for credit:**＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

**Approximate date(s) that you received credit:**＿＿＿＿＿＿＿＿＿＿＿＿＿＿

**The bank or lender on the loan?:**＿＿＿＿＿＿＿＿＿＿＿＿＿

**Type of credit (e.g., home mortgage, home equity line of credit, auto):**

＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

**Interest rate that you received:**＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

**Costs (e.g., points) that you paid:**＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

**Loan amount: ＿＿＿＿＿＿＿＿＿＿＿＿**

**Please provide any additional information that you have regarding the increased interest rate or other credit costs you paid as a result of the forbearance:**＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

2

| | |
|---|---|
| **3** | **Did you suffer other damages from being placed into forbearance without informed consent?  Yes ☐  No ☐  If you checked "Yes" then please explain each type of damage and state the dollar amount.**<br><br>_____<br><br>_____<br><br>_____<br><br>_____<br><br>_____ |
| **4** | ☐    **I authorize my credit report to be accessed in order to verify information provided on this claim form. I agree not to sue the credit agency for providing my credit report for this purpose and waive any claim that providing it for this purpose is improper. This authorization will not affect credit.** |
| **5** | **Please provide any supporting documentation that you have related to damages you suffered as a result of being placed into forbearance without informed consent. Submitting this documentation to the Claims Administrator will allow it to better assess your claim and ensure that you are appropriately compensated from the Claims Fund.**<br><br>**Please make sure that you keep copies of any records that you submit for your own records.  Any documents that you submit to the Claims Administrator will not be returned.**<br><br>**If you are unable to provide supporting documentation, please explain why below:**<br><br>_____<br><br>_____<br><br>_____ |

| | |
|---|---|
| **6** | **Please provide your contact information so the Claims Administrator can contact you if additional information is necessary to analyze your claim.**<br><br>**My phone number is:** _____<br><br>**My email address is:** _____<br><br>**If the address to which this form was mailed is incorrect, please provide your new or corrected address:**<br><br>_____<br><br>**Street        State        Zip** |

## SECTION IV:  DECLARATION

I declare and affirm, under penalty of perjury under the laws of the United States, that the information in this Claim Form is true and correct to the best of my knowledge, information and belief and that I am eligible to make this claim.  I understand that this Claim Form is subject to audit, verification, and/or review by the Court.

Dated:  ___ ___ / ___ ___ / ___ ___ ___ ___

_____
Claimant Signature

Print Name _____

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF OHIO

## EASTERN DIVISION (COLUMBUS)

BRIAN ECHARD,

       Plaintiff,

v.

WELLS FARGO BANK, N.A.

       Defendant.

CASE NO. 2:21-cv-05080-MHW-KAJ

(Judge Michael H. Watson)
(Magistrate Judge Kimberly A. Jolson)

**EXHIBIT B TO SETTLEMENT AGREEMENT – DISTRIBUTION PLAN**

# DISTRIBUTION PLAN

The following Distribution Plan is designed to distribute the Settlement Fund and Net Settlement Amount.  All defined terms used here shall have the same meaning given to them in the Settlement Agreement.

**A.     Distribution Plan for Settlement Fund:**

All Fee and Expense Awards, Service Awards, and Settlement Administrator's Costs and Expenses shall be paid from the Settlement Fund.  The remainder of the Settlement Fund shall constitute the Net Settlement Amount.

**B.     Distribution Plan for Net Settlement Amount:**

**1.     Step One Payments: Automatic Payments to Eligible Class Members.**  Within thirty (30) Days of the Effective Date, the Settlement Administrator shall distribute the first $35,000,000.00 of the Net Settlement Amount as Automatic Payments to Eligible Class Members, in accordance with the process described below.

(a) Wells Fargo shall identify the Class Members by relying on data and information reasonably available to Wells Fargo.

(b) Class Members who do not exclude themselves from the Settlement ("Eligible Class Members") will receive a *pro rata* fixed sum payment from the Automatic Payment Fund for each Mortgage that was placed into an At-Issue Forbearance. Eligible Class Members are not required to submit the Claim Form or take any other action to receive the Automatic Payment.

(c) The Settlement Administrator shall be responsible for calculating the Automatic Payment amount, which shall be determined, based upon data provided by Wells Fargo, by dividing the total amount of the Automatic Payment Fund ($35,000,000.00) by the number of Eligible Class Members' Mortgages placed into an At-Issue Forbearance.

(d) Automatic Payments shall be paid by check unless the Eligible Class Member requests electronic payment through the settlement website.

(e) Where an Eligible Class Member has a co-borrower, the Settlement Administrator shall issue the check in the names of both co-borrowers and shall mail the check to the primary borrower's address.  In the event a member of the Class is in a bankruptcy proceeding, then the Settlement Administrator may pay any compensation under this Settlement Agreement to the bankruptcy trustee or as otherwise required under any applicable bankruptcy law, rules, and/or court orders.

1

(f) Approximately sixty (60) Days after the issuance date of a check, a reminder notice will be sent by the Settlement Administrator to Eligible Class Members who have not deposited their checks.  The reminder notice shall inform the Class Member that a check was issued to them, the deadline for depositing the check, and options for seeking check reissuance.

(g) Settlement checks will expire in one hundred and twenty (120) Days, at which time the Settlement Administrator will place a stop-order on the check.  The Settlement Administrator will then take reasonable efforts to contact the Class Member and issue a new Settlement check. If a check is reissued, it will become void after ninety (90) Days.

**2. Step Two: Additional Compensation Payments to Eligible Class Members who suffered provable damages.**  In addition to the Automatic Payments, Eligible Class Members may also receive an additional payment from a Claims Fund (the "Additional Compensation"), pursuant to the process outlined below, if they were (i) denied credit; (ii) paid an increased interest rate or other cost of credit; or (iii) suffered other provable damages proximately caused by being placed into an At-Issue Forbearance.  The amount of the Net Settlement Fund remaining after issuing Automatic Payment checks, less anticipated Settlement Administrator's Costs and Expenses, shall constitute the Claims Fund.  The amount of any Automatic Payment checks that remain uncashed after all steps described in Section B(1) are completed shall be added to the Claims Fund.

(a) The Settlement Administrator shall retain a Special Master to develop and administer the Claims Fund's procedures and proof requirements consistent with this Distribution Plan.

(b) The Settlement Administrator and Special Master shall develop claims procedures and proof requirements to award Additional Compensation payments from the Claims Fund to Eligible Class Members who submit a Claim Form and reasonable supporting evidence demonstrating that they were: (i) denied credit; (ii) paid an increased interest rate or other cost of credit; or (iii) suffered other provable damages proximately caused by being placed into an At-Issue Forbearance.  These procedures shall be designed with the goal of fully compensating Eligible Class Members for such damages and not placing unnecessary burdens on Class Members.

(c) A simple Claims Form will be sent with the Notice, allowing Eligible Class Members to claim Additional Compensation and authorize the Claims Administer to access their credit reports.  Such Claims Forms must be postmarked or received electronically by the Claim Form Deadline, one hundred twenty (120) Days after the Notice is mailed.  The Settlement Administrator shall send reminder postcards and emails approximately sixty (60) Days prior to this deadline.  After the Effective Date, the Settlement

Administrator and Special Master will send claimants a request for any additional information and evidence that is necessary to process the claim.

(d) If timely and valid claims exceed the moneys in the Claims Fund, Additional Compensation payments shall be reduced *pro rata*. To the extent adequate moneys remain available, the Settlement Administrator shall continue to process Claims Forms that were not timely submitted due to extenuating circumstances, including from Class Members who were serving on active military duty.

(e) Additional Compensation Payments will be paid pursuant to subparagraphs B(1)(d)-(g) above.

**3.** **Step Three: Disbursement of Unused Portions of the Settlement Fund.**

(a) The Settlement Fund is non-reversionary. In the event that there are any Remaining Amounts in the Settlement Fund after the Settlement Administrator makes the disbursements set forth above, then the Remaining Amounts should be distributed on a *pro rata* basis to Eligible Class Members who cashed the Automatic Payment checks provided that the to-be-distributed amount exceeds $10 per such Class Member. In the event that the to-be-distributed amount is less than $10 per such Class Member, then any unused portion of the Settlement Fund shall be paid to a *cy pres* recipient approved by the Court. Payments under this provision will be made pursuant to subparagraphs B(1)(d)-(g) above.

(b) The Settlement Administrator with the input of the Settling Parties can take other reasonable actions to maximize the disbursal of Automatic Payments and Additional Compensation Payments to Eligible Class Members, including but not limited to extending timelines, reissuing payments, modifying procedures, and conducting additional outreach.

(c) Before any *cy pres* contribution is made, the Settlement Administrator shall honor requests for check reissuance and untimely Claim Forms, processing them in the order received, to the extent that funds remain available.

(d) If any residual funds remain, they shall be distributed to a *cy pres* recipient approved by the Court. The *cy pres* recipient proposed to the Court shall be chosen by Class Counsel, subject to Defendant's approval, which shall not be unreasonably withheld.

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF OHIO

## EASTERN DIVISION (COLUMBUS)

| | |
|---|---|
| BRIAN ECHARD, | CASE NO. 2:21-cv-05080-MHW-KAJ |
|        Plaintiff, | |
| | (Judge Michael H. Watson) |
| v. | (Magistrate Judge Kimberly A. Jolson) |
| WELLS FARGO BANK, N.A. | |
|        Defendant. | **EXHIBIT C TO SETTLEMENT AGREEMENT – NOTICE OF SETTLEMENT** |

### NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION
*A Federal Court authorized this notice. This is not a solicitation from a lawyer.*

### *Echard, et al. v. Wells Fargo Bank, N.A.*
### Case No. 2:21-cv-05080-MHW-KAJ
### United States District Court for the Southern District of Ohio

### IF YOU ARE RECEIVING THIS NOTICE BY MAIL OR EMAIL, YOU HAVE BEEN IDENTIFIED AS A CLASS MEMBER IN A CLASS ACTION SETTLEMENT

This Notice describes this class action lawsuit and the proposed Settlement and what to do if you want to (i) receive payment; or (ii) object to the Settlement; or (iii) not participate in the Settlement and instead "opt out" of the class action.

The United States District Court for the Southern District of Ohio (the "District Court"), still has to decide whether to approve the settlement. Payments will be distributed to Class Members who do not exclude themselves from the settlement (as further described below) if the District Court approves the settlement or after appeals, if any, are resolved in favor of the settlement. Please be patient.

### YOUR LEGAL RIGHTS WILL BE AFFECTED WHETHER YOU ACT OR DO NOT ACT.
### PLEASE READ THIS ENTIRE NOTICE CAREFULLY.

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **DO NOTHING AND RECEIVE A SETTLEMENT CHECK** | If you do nothing, you will be included in the Settlement, and you will receive an Automatic Payment from the Settlement Fund and have an opportunity to submit a claim for Additional Compensation. |
| **SUBMIT A CLAIM FOR ADDITIONAL COMPENSATION BY [DATE]** | **You may request Additional Compensation if you feel that being placed into forbearance without informed consent caused your credit applications to be denied or delayed, or caused other harm. You must complete and return the Claim Form, postmarked on or before [DATE]. (See Section 7)** |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT BY [DATE]** | If you want to exclude yourself or "opt out" from the Settlement, you must submit a Request to Opt Out to the Claims Administrator, **postmarked on or before [DATE].** If so, you will not receive any money from the Settlement Fund and you will not release your claims in this lawsuit. (See Section 9) |
| | If the Settlement is granted final approval by the Court and you did not timely "opt out" of the Settlement, then you will release the claims described in Section 18 below. |

---

1
**QUESTIONS? Call 1-888-XXX-XXXX or visit <<insert website>>**

| **OBJECT TO THE SETTLEMENT BY [DATE]** | If you remain in the Settlement and want to object because you believe the Settlement is unfair or inadequate, you may **file** a written objection to the Settlement with the Court, **on or before [DATE]**. (See Section 15) |
|---|---|
| **GO TO A HEARING** | If you file an objection and also want to speak at the Final Approval Hearing, you must file a written Notice of Intention to Appear which must be **filed,** and **postmarked** on or before **[DATE].** |

**THESE OPTIONS AND THE DEADLINES TO EXERCISE THEM ARE FURTHER DETAILED IN THIS NOTICE.**

**CONTINUED ON NEXT PAGE**

## Notice Contents

**Basic Information**

Why am I receiving this notice?

What is this lawsuit about?

Why is this a class action?

What are the reasons for the Settlement?

**The Settlement**

Who is included in the Settlement Class?

What benefits does the Settlement provide?

Do I need to do anything to receive a payment?

How will this Settlement affect my rights?

**Excluding yourself from the Settlement**

How do I exclude myself from the Settlement?

If I do not request exclusion, can I sue Wells Fargo for the same claims later?

If I exclude myself, may I still receive compensation from the Settlement Fund?

**The Lawyers Representing You**

Do I have a lawyer in this case?

How will the lawyers be paid for their services?

Will Class Representatives receive service awards?

**Objecting to the Settlement**

How do I inform the Court if I object to the Settlement?

What is the difference between objecting to the Settlement and requesting exclusion?

**Release of Claims**

What claims are being released as part of the Settlement?

**Final Approval Hearing**

When and where will the Court decide whether to grant final approval of the Settlement?

Do I have to attend the hearing?

**Getting More Information**

How do I get more information?

**QUESTIONS? Call 1-888-XXX-XXXX or visit <<website>>**

BASIC INFORMATION

| 1. WHY AM I RECEIVING THIS NOTICE? |
|---|

A Court authorized this notice because you have a right to know about a proposed Settlement of this class action lawsuit and about your options before the Court decides whether to grant final approval of the Settlement.[1]  This notice explains the lawsuit, the Settlement, and your legal rights. Judge Michael H. Watson of the United States District Court for the Southern District of Ohio is overseeing this case and has exclusive jurisdiction over the Settlement.  This litigation is known as *Echard, et al. v. Wells Fargo Bank, N.A.*, Case No. 2:21-cv-05080-MHW-KAJ.

| 2. WHAT IS THIS LAWSUIT ABOUT? |
|---|

In the earliest days of the COVID-19 pandemic, when many customers were expressing concern about financial hardship and their ability to make their next mortgage payment, Wells Fargo made a decision to provide mortgage forbearances to certain customers who had made an inquiry or expressed hardship but had not explicitly requested a forbearance.  A forbearance temporarily suspends a customer's obligation to make payments on their mortgage.  However, some of the customers who received payment forbearances did not want them.

Plaintiffs allege that Wells Fargo placed customers into forbearance without informed consent. Plaintiffs contend that Wells Fargo's actions harmed certain customers if, for instance, the forbearance proximately caused (a) new credit application to be denied or (b) increased interest rate or other credit cost on a new credit application.  Wells Fargo denies any and all allegations of wrongdoing and does not admit or concede any actual or potential fault, wrongdoing, or liability in connection with any facts or claims that have been or could have been alleged in this lawsuit or in any similar action.

The Second Amended Complaint in this lawsuit, which provides greater details about Plaintiffs' claims, can be viewed on the Settlement Website at **<<insert website>>.**

| 3. WHY IS THIS A CLASS ACTION? |
|---|

A class action lawsuit allows a large number of people with a common claim to sue collectively while being represented by members of the group called the "Class Representatives."  In this case, the Class Representatives have brought this lawsuit on behalf of themselves and others with similar claims. Together, all of the individuals with similar claims (with the exception of those who request exclusion or "opt out" from the Class) are referred to as "Class Members."

| 4. WHAT ARE THE REASONS FOR THE SETTLEMENT? |
|---|

---

[1] All terms contained herein shall have the same meanings as set forth in the Settlement Agreement, which is available on the Settlement Website at **<<insert website>>.**

Plaintiffs and Class Counsel believe this Settlement provides a fair and reasonable resolution of the claims asserted in this lawsuit for the benefit of the Class.

The Court has not ruled in favor of either the Plaintiffs or Wells Fargo.  Instead, both sides agreed to a Settlement that they believe is a fair, reasonable, and adequate compromise of their respective positions.  The parties reached this Settlement after litigating this case for over a year, conducting formal and informal discovery, and with the assistance of an experienced neutral mediator and former U.S. District Court judge.

By agreeing to the Settlement, the parties avoid the costs, delay, and uncertainty of further litigation, and Class Members receive the benefits described in this Notice.

Wells Fargo denies any wrongdoing and the Settlement shall in no event be construed or deemed to be evidence or an admission or concession on the part of Wells Fargo with respect to any claim or of any fault, liability, wrongdoing, or damage.

### THE SETTLEMENT

| 5.  WHO IS INCLUDED IN THE SETTLEMENT CLASS? |
| --- |

According to Wells Fargo's records, you are a member of the Settlement Class and that is why you are receiving this Notice.

The "Settlement Class" or "Class" means all persons in the United States who: (a) had a mortgage serviced by Wells Fargo that was placed into a COVID mortgage forbearance without adequate informed consent between March 1, 2020, and December 31, 2021 ("At-Issue Forbearance"); (b) were not in a Chapter 13 bankruptcy case on the date that the person was placed into an At-Issue Forbearance; and (c) are not Wells Fargo's officers, directors, and employees, Counsel for Wells Fargo, or Class Counsel.

"Without adequate informed consent" is defined in the Settlement Agreement.

| 6. | WHAT BENEFITS DOES THE SETTLEMENT PROVIDE? |
|---|---|

Under the Settlement, Wells Fargo has agreed to establish a Settlement Fund totaling $94 million ($94,000,000.00) to provide the following benefits as consideration for the resolution and release of the Class Members' claims:

- The first $35 million ($35,000,000) will be distributed as Automatic Payments to Class Members who do not exclude themselves from the Settlement, *pro rata* based upon the number of mortgages placed into an At-Issue Forbearance;

- Eligible Class Members can receive Additional Compensation payments by submitting the Claim Form and demonstrating that the At-Issue Forbearance proximately caused: (a) a new credit application be denied; (b) an increased interest rate or other credit cost on a new credit application; or (c) other provable damages.  Additional Compensation payments will be made from the Claims Fund established by the Claims Administrator;

- If the Settlement Fund has Remaining Amounts, they will be distributed on a *pro rata* basis to Eligible Class Members who cashed a previous check; except if the amount would be under $10 each, the Remaining Amounts shall be paid to a non-profit organization (*cy pres* recipient) approved by the Court.

The Settlement Fund will also be used to pay Fee and Expense Awards to Class Counsel approved by the Court; Service Awards to the Class Representatives approved by the Court; and the Claims Administrator's costs and expenses to administer the Settlement.

In return for the benefits in this Settlement, if the Settlement is approved, <u>all</u> Settlement Class Members will release Wells Fargo from the claims discussed in the Agreement, and this Action will be dismissed with prejudice, among other terms.

| 7. | DO I NEED TO DO ANYTHING TO RECEIVE A PAYMENT? |
|---|---|

**You do not need to take any action to receive the Automatic Payment.**  If the Settlement is approved by the courts, the Claims Administrator will mail the Automatic Payment settlement checks to Eligible Class Members.  You can request electronic payment on the Settlement Website.

**If you feel that you suffered additional harm, such as by having your credit applications denied or delayed, or increasing your borrowing costs, or causing other provable harm, you can ask for additional money by completing and returning the enclosed Claim Form by [DATE].**  The Claim Form may be submitted on the Settlement Website at <<**insert website**>>, or by mailing it to the Claims Administrator at the following address: _____.  You may also scan the QR Code on the Claim Form to complete and submit the Claim Form on your smartphone or tablet.  If you mail the Claim Form, it must be postmarked no later than [DATE] in order to be valid.

| 8. | HOW CAN I UPDATE MY ADDRESS OR REQUEST ELECTRONIC PAYMENT? |
|---|---|

To ensure you receive your payment(s) promptly, you may use the Settlement Website to update your address or sign up for electronic payment (Venmo, Paypal, etc.).

| 9. | HOW WILL THIS SETTLEMENT AFFECT MY RIGHTS? |
|---|---|

If this Settlement is granted final approval by the Court and you do not "opt-out" or request exclusion from the Settlement, then you will release certain claims against Wells Fargo as described in Section 18 below.

### EXCLUDING YOURSELF FROM THE SETTLEMENT

| 10. | HOW DO I EXCLUDE MYSELF FROM THE SETTLEMENT? |
|---|---|

If you do not want to be a part of the Settlement, then you must take steps to request exclusion from the Settlement.

To request exclusion or "opt out" from the Settlement, you must mail a written Request for Exclusion to the Claims Administrator at the following address: _____. The Request for Exclusion must be post-marked on or before [DATE].

Your Request for Exclusion must include the following information:

1. Your name, address, and telephone number;

2. A statement that "I do not want to be a member of the Class in *Echard, et al. v. Wells Fargo Bank, N.A.*, Case No., 2:21-cv-05080-MHW-KAJ pending in the United States District Court for the Southern District of Ohio.  I understand that I will not receive compensation under the Settlement and it will be my responsibility to pursue any claims I may have, if I so desire, on my own and at my expense"; and

3. Your signature and date.

Your Request for Exclusion must be specific to yourself.  Attempts to exclude multiple individuals as part of single Request for Exclusion are not allowed and shall be of no force or effect.

| 11. | IF I DO NOT REQUEST EXCLUSION, CAN I SUE DEFENDANTS FOR THE SAME CLAIMS LATER? |
|---|---|

No. Unless you request exclusion from the Settlement, you will give up the right to sue Wells Fargo, individually or as part of a class action, for the Class Released Claims that this Settlement resolves as described in Section 18 below.

The following pending lawsuits, which have not yet been certified as class actions, may concern Class Released Claims:

(1) *In re Wells Fargo Forbearance Litigation*, 3:20-cv-06009-JD (N.D. Cal.), which consists of the following actions that were consolidated on August 19, 2022 for all pretrial proceedings: *Delpapa v. Wells Fargo Bank, N.A., et al.*, 3:20-cv-06009-JD (N.D. Cal); *Green v. Wells Fargo & Co., et al.*, 3:20-cv-5296; *Urista v. Wells Fargo & Co., et al.*, 3:22-cv-00227 (N.D. Cal.); *Forsburg v. Wells Fargo & Co, et al.*, No. 3:22-cv-02890 (N.D. Cal); and *Healy v. Wells Fargo Bank, N.A. et al.*, 3:22-cv-00226 (N.D. Cal); (2) *Harlow v. Wells Fargo & Co., et al.*, A.P. No. 20-07028 (Bankr. W.D. Va) (Pet. No. 17-71487); and (3) *Stoff v. Wells Fargo Bank, N.A., et al.*, San Diego Superior Court Case No. 37-2020-00020808-CU-BTCTL.

| 12. | IF I EXCLUDE MYSELF, MAY I STILL RECEIVE COMPENSATION FROM THE SETTLEMENT FUND? |
|---|---|

No. If you exclude yourself from the Settlement, you will <u>not</u> be eligible to receive the Automatic Payment or submit a Claim for Additional Compensation from the Settlement Fund.

### THE LAWYERS REPRESENTING YOU

| 13. | DO I HAVE A LAWYER IN THIS CASE? |
|---|---|

Yes. The Court has appointed the following law firm to represent you and the other Class Members as "Class Counsel." You can contact Class Counsel at the address listed below. They are:

Smith & Lowney, PLLC
2317 E. John Street
Seattle, WA 98112

You will not be charged for contacting these lawyers. If you want to be represented by a different lawyer, you may hire one at your own expense.

| 14. | HOW WILL THE LAWYERS BE PAID FOR THEIR SERVICES? |
|---|---|

Class counsel will apply to the Court for an award of attorneys' fees and costs to compensate them for their legal services and expenses incurred in this matter. The application for an award of attorneys' fees and costs will be posted to the Settlement Website at <<**insert website**>>.  Pursuant to the terms of the Settlement, Class Counsel intends to request an award up to twenty five percent (25%) of the Settlement Fund in legal fees, as well as reimbursement of their reasonably incurred expenses.

Any fee and expense awards approved by the Court will be paid out from the Settlement Fund.

| 15. | WILL CLASS REPRESENTATIVES RECEIVE SERVICE AWARDS? |
|---|---|

Class Counsel will file an application for Service Awards to be paid to each of the Class Representatives in recognition of the time and effort they provided in this lawsuit on behalf of the Class.  The application for Service Awards will be posted to the Settlement Website at <<**insert website**>>.  Pursuant to the terms of the Settlement, Class Counsel intends to request a Service Award of up to $12,500 for each Class Representative (individual or married couple).

Any Service Awards approved by the Court will be paid out from the Settlement Fund.

### OBJECTING TO THE SETTLEMENT

| 16. | HOW DO I INFORM THE COURT IF I OBJECT TO THE SETTLEMENT? |
|---|---|

If you are a member of the Class, and do not Request Exclusion or "opt out" from the Settlement, you can object to any part of the Settlement.  You can give reasons why you think the Court should not approve the entire Settlement or parts of it.

To object, you must timely file a written objection with the Court and mail the same to the Claims Administrator, Class Counsel, and Counsel for Wells Fargo at the following addresses:

_____.

The objection must be filed on or before [DATE], and mailed to the Claims Administrator, Class Counsel, and Counsel for Wells Fargo with a post-mark date on or before [DATE].

Your objection must state all of the following:

1. Your name, address, and telephone number;

2. A statement saying that you object to the Settlement in *Echard, et al. v. Wells Fargo Bank, N.A.*, Case No. 2:21-cv-05080-MHW-KAJ and describing the nature of your objection;

3.    A statement describing whether your objection applies only to yourself, to a specific subset of the Class, or to the entire Class;

4.    The specific grounds for your objection;

5.    Any legal authority that supports your objection;

6.    A list of any persons who will be called to testify at the Final Approval Hearing in support of the objection; and

7.    Your signature.

If a lawyer is asserting an objection on your behalf, the lawyer must also:

1.    File a notice of appearance with the Court on or before **the Objection Deadline**;

2.    File a sworn declaration attesting that he or she represents you; and

3.    File a sworn declaration that specifies the number of times during the prior five-year period that he or she has objected to a class action settlement on his or her own behalf or on behalf of a class member.

Class Counsel and/or Counsel for Wells Fargo may file responses to any objections that are timely submitted.

If You wish to appear at the Final Approval Hearing, You (or your attorney) must file a Notice of Intention to Appear with the Court indicating that You (or your attorney) would like to speak at the hearing.  The Notice of Intention to Appear must be filed with the Court on or before **the Objection Deadline**.  If You (or your attorney) do not file a timely Notice of Intention to Appear, You (or your attorney) will be barred from speaking or otherwise presenting any views at the Final Approval Hearing.

You (or your attorney) must file your written objection and any additional documents required above with Judge Michael H. Watson, Joseph P. Kinneary U.S. Courthouse, Room 108, 85 Marconi Blvd., Columbus, OH 43215, with copies of any submissions provided to Class Counsel and Counsel for Wells Fargo at the addresses set forth above.

| 17. | WHAT IS THE DIFFERENCE BETWEEN OBJECTING TO THE SETTLEMENT AND REQUESTING EXCLUSION? |
|---|---|

You can only object to the Settlement if you are a Class Member.  Requesting exclusion from the Settlement is notifying the Court that you do not want to remain a Class Member.  If you exclude yourself, you have no basis to object because the Settlement no longer affects you.

**RELEASE OF CLAIMS**

| 18. | WHAT CLAIMS ARE BEING RELEASED AS PART OF THE SETTLEMENT? |
|---|---|

Upon Final Approval of the Settlement by the Court, each Class Member who does not request exclusion, individually or together, and each and every one of their former, present, or future agents, predecessors, successors, heirs, legatees, executors, administrators, insurers, assigns, trustees, spouses, and domestic partners ("Class Releasors") releases and fully discharges Wells Fargo Bank, N.A., and each of its former, present, or future agents, insurers, predecessors, successors, subsidiaries, parent company(ies), affiliates, officers, directors, and employees and attorneys ("Class Releasees") from any and all past and/or present claims, counterclaims, lawsuits, set-offs, costs, losses, rights, demands, charges, complaints, actions, causes of action, obligations, or liabilities of any and every kind, whether class, individual, or otherwise in nature, including, without limitation, those known or unknown or capable of being known; those which are unknown but might be discovered or discoverable based upon facts other than or different from those facts known or believed at this time; those which are foreseen or unforeseen, suspected or unsuspected, asserted or unasserted, and/or contingent or non-contingent; and those which are accrued, unaccrued, matured or not matured, under the laws of any jurisdiction, which they, whether directly, representatively, derivatively, or in any other capacity, ever had, now have, or hereafter can, shall, or may have, resulting from, arising from or relating in any way to the At-Issue Forbearances that the Class Releasees provided to the Class Releasors (the "Class Released Claims").

### THE FINAL APPROVAL HEARING

| 19. | WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO GRANT FINAL APPROVAL TO THE SETTLEMENT? |
|---|---|

The Court has scheduled a Final Approval Hearing for [INSERT DATE AND TIME AND LOCATION].  The hearing date and time is subject to change.  Updates to the date and time will be posted to the Settlement Website at <<insert website>.

At the Final Approval Hearing, the Court will consider granting final approval of the Settlement based on whether it is fair, reasonable, and adequate.  The Court will also consider requests by Class Counsel for attorneys' fees and expenses related to the litigation and the Class Representative Service Awards.  If there are timely and complete objections, the Court will consider those objections at the hearing as well.

At or after the hearing, a decision will be made whether to grant final approval of the Settlement. It is not known how long it will take for the Court to decide.  Class Members should visit the Settlement Website at <<insert website>> to stay updated about the current status of the case.

| 20. | DO I HAVE TO ATTEND THE HEARING? |
|---|---|

No.  Attending the hearing is not required, but you are welcome to attend at your own expense.

---

If you send an objection, you do not have to come to Court to talk about it.  As long as your objection is timely and complies with the requirements set forth in this Notice and the Settlement Agreement, the Court will consider it.  You may also pay your own lawyer to attend.

### GETTING MORE INFORMATION

| | |
|---|---|
| 21. | HOW DO I GET MORE INFORMATION? |

This Notice is a summary of the proposed Settlement.  More details regarding the terms of the Settlement can be found in the Settlement Agreement posted on the Settlement Website at <<**insert website**>>.  Updates, including any modifications to the schedule or the Settlement Agreement, will be posted on the Settlement Website.

You may also contact the Claims Administrator by calling the toll-free number, 1-800-XXX-XXXX, or by writing to [INSERT CLAIMS ADMINISTRATOR ADDRESS].

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF OHIO

## EASTERN DIVISION (COLUMBUS)

BRIAN ECHARD,

          Plaintiff,

v.

WELLS FARGO BANK, N.A.

          Defendant.

CASE NO. 2:21-cv-05080-MHW-KAJ

(Judge Michael H. Watson)
(Magistrate Judge Kimberly A. Jolson)

**EXHIBIT D TO SETTLEMENT AGREEMENT – [PROPOSED] SECOND AMENDED COMPLAINT**

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION (COLUMBUS)**

| | | |
|---|---|---|
| BRIAN ECHARD and STEPHEN and HEATHER SHIMP *on behalf of themselves and all others similarly situated*, | ) ) ) ) ) | No. 2:21-CV-05080-MHW-KAJ |
| | ) | Judge Michael H. Watson |
| | ) | Magistrate Judge Kimberly A. Jolson |
| Plaintiffs, | ) ) | |
| | ) | SECOND AMENDED COMPLAINT – |
| v. | ) | CLASS ACTION |
| | ) | |
| WELLS FARGO BANK, N.A., | ) | JURY DEMAND |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiffs Brian Echard and Stephen and Heather Shimp ("Plaintiffs"), individually and on behalf of all others similarly situated, hereby file this class action complaint against Defendant Wells Fargo Bank, N.A. ("Wells Fargo"). Plaintiffs makes the allegations herein upon personal knowledge as to themselves and their own acts, and upon information and belief and based upon investigation of counsel as to all other matters, as set forth herein.

## I. INTRODUCTION

1. This lawsuit involves a nationwide forbearance scam that Wells Fargo perpetrated on consumers throughout the nation. This scam was intended to create significant wrongful profit for Wells Fargo and did so. Perhaps most troubling is that this scam took advantage of a government program that was designed to help vulnerable homeowners during the pandemic, and instead preyed upon and victimized these same vulnerable customers.

2. While the scam was perpetrated uniformly, it had a different legal impact on borrowers who were active duty servicemembers or veterans with a U.S. Department of Veterans Affairs ("VA") guaranteed loan (hereafter "military borrowers").

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW        1

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

3.      Throughout our nation's history, members of our military services have been asked to make many sacrifices for our nation. These American heroes leave family, friends, and the comforts of civilian life to answer our country's call to duty. Many also leave behind employment, a career, and financial security. For some the sacrifices go much further and can cause lasting or permanent impacts on the servicemembers and their families.

4.      In return for these sacrifices, our nation provides veterans certain ongoing benefits and protections. One important benefit is that servicemembers and veterans can obtain assistance in securing a mortgage to buy a home guaranteed by the VA.

5.      The VA loan program goes beyond assistance in obtaining a loan. It also provides veterans with protections and assistance throughout the period of the loan. These protections are guaranteed by statutes, regulations, and detailed guidance provided by the VA.

6.      In addition to the protections guaranteed by law, military borrowers have a reasonable expectation of even greater care from mortgage lenders and servicers like Wells Fargo. Wells Fargo, like other lenders, promises to go further in assisting military borrowers to overcome bumps in the road that could otherwise lead to foreclosure or other harms. The bank promises to provide military home borrowers with a "dedicated team" of financial professionals and "expanded mortgage benefits that go beyond what the SCRA requires,"[1] including "mortgage assistance to those who can't keep up with payments."[2]

7.      In 2020, through no fault of their own, military borrowers throughout the nation were faced with financial hardship because of the COVID-19 pandemic. This was a time when

---

[1] https://www.wellsfargo.com/mortgage/manage-account/payment-help/military (last visited May 1, 2021).
[2] https://www.wellsfargo.com/mortgage/manage-account/payment-help/military (last visited May 1, 2021).

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW        2

**Smith & Lowney, p.l.l.c.**
**2317 EAST JOHN STREET**
**SEATTLE, WASHINGTON 98112**
**(206) 860-2883**

1    these American heroes needed Wells Fargo to provide the "dedicated team," "dedicated

2    attention," and "support" it promised.

3           8.     Instead of living up to its obligation to military borrowers under the law and the

4    bank's promises, Wells Fargo found a way to profit off these military borrowers by wrongfully

5    enrolling them into a forbearance program without their informed and legal consent that would

6    only increase their financial hardship.

7           9.     Wells Fargo's "forbearance scam" harmed military and non-military customers

8    across the nation, but the fraud against military borrowers is distinct and particularly egregious

9    because they are entitled to special protections under federal law, numerous state laws, and under

10   Wells Fargo's explicit and implicit promises to support and protect these customers.

11          10.    As described herein, Wells Fargo twisted a national crisis and a government relief

12   program into a way to make profit at the expense of its military and nonmilitary customers. As a

13   result of the COVID-19 outbreak, Congress passed the Coronavirus Aid, Relief and Economic

14   Security ("CARES") Act in March 2020, which among other things, provides relief to millions

15   of Americans who are struggling to pay their mortgage payment as a result of the economic

16   difficulties caused by the pandemic.

17          11.    In part, the CARES Act instructed mortgagees and servicers to create mortgage

18   forbearance provisions for all federally-backed mortgages. The CARES Act makes clear that

19   participating in a COVID-19 mortgage forbearance program is entirely voluntary; that is, a

20   mortgagor must be informed of the various terms and conditions of the program and then

21   affirmatively decide to enter the program.

22          12.    Congress intentionally included a volitional act on the part of the mortgagor to opt

23   into forbearance. This is because mortgage forbearance has serious consequences for

24

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW          3

homeowners, including an inability to obtain additional credit and/or to refinance any existing loans.

13. Per the Consumer Financial Protection Bureau ("CFPB"), before a bank servicing a loan can grant forbearance, it must receive a request for such relief and an attestation of a COVID-19-related financial hardship from the borrower.

> REQUIREMENTS FOR SERVICERS.— (1) IN GENERAL.— ***Upon receiving a request for forbearance from a borrower under subsection (b), the servicer shall with no additional documentation required other than the borrower's attestation to a financial hardship caused by the COVID–19 emergency*** and with no fees, penalties, or interest (beyond the amounts scheduled or calculated as if the borrower made all contractual payments on time and in full under the terms of the mortgage contract) charged to the borrower in connection with the forbearance, provide the forbearance for up to 180 days, which may be extended for an additional period of up to 180 days at the request of the borrower, provided that, the borrower's request for an extension is made during the covered period, and, at the borrower's request, either the initial or extended period of forbearance may be shortened.[3]

14. Wells Fargo has unilaterally, without informed and legal consent, and without requesting or receiving any financial hardship attestation, opted unwitting borrowers into its COVID-19 mortgage forbearance program.

15. Additionally, when borrowers logged onto Wells Fargo's website to view their accounts, the webpage included a link at which borrowers could obtain information regarding Wells Fargo's COVID-19 relief program. Upon the click of a button which made no mention of forbearance, unsuspecting borrowers' accounts were placed into forbearance without their informed knowledge or consent.

16. Many Wells Fargo mortgage customers who were placed into Wells Fargo's COVID-19 mortgage forbearance program received no notice that Wells Fargo had placed their

---

[3] https://www.congress.gov/116/bills/hr748/BILLS-116hr748enr.pdf (last visited May 1, 2021) (emphasis added).

Smith & Lowney, p.l.l.c.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

1  mortgages into forbearance. Some borrowers only found out (if at all) when they attempted to

2  apply for credit, including for refinancing of their mortgage, and were denied, then learning from

3  the credit report that their mortgage loans were in forbearance. Others found out when they

4  attempted, but were unable, to make regularly scheduled mortgage payments with Wells Fargo.

5       17.    When Wells Fargo did send their customers a template notice informing them that

6  Wells Fargo had placed their loans into forbearance, the notice was both insufficient and

7  inaccurate.

8       18.    Furthermore, after illegally placing customers' accounts into forbearance, Wells

9  Fargo perpetuated the problems for these customers by failing to properly apply payments that

10  had been made to the mortgage, failing to properly report payments actually made to credit

11  agencies, and failing to provide accurate and legally sufficient periodic statements to these

12  customers.

13       19.    For military borrowers, this scam is even more indefensible. Wells Fargo had

14  promised to provide military borrowers with "support," including a "dedicated team" of financial

15  advisers. Yet, rather than providing any of those services when they were needed, Wells Fargo

16  ran the same scam on the military customers.

17       20.    In addition, these military borrowers had additional legal rights available to them

18  to address financial difficulties. But Wells Fargo never disclosed any of those protections or

19  rights to the military borrowers before enrolling them into the forbearance program.

20       21.    As a result of being placed into forbearance, these homeowners, including

21  Plaintiffs and the putative class, suffered damages including but not limited to an inability to

22  access credit to finance to lower interest rates, which is especially egregious during this time in

23  which mortgage interest refinance rates were historically low. They also must deal with the

24  difficult situation of removing their mortgages from a program they did not want.

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW    5

Smith & Lowney, p.l.l.c.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

22.     Interest rates were at all-time lows, and many homeowners sought to take advantage of these historically low rates by refinancing. If an account is placed into forbearance, those borrowers cannot typically refinance for many months, if not years, even after bringing the account current.

23.     This forbearance scam profited Wells Fargo in a number of ways, including because the bank receives additional compensation for each loan placed in forbearance. In addition, Wells Fargo directly profits from its customers inability to refinance – the harm inflicted on the customers – because this allows Wells Fargo to retain these mortgages at above-market rates. These customers are damaged, and Wells Fargo profits, by the difference between the lifetime costs of their over-market mortgage and the mortgage that they would have been entitled to if they had not been wrongfully placed in forbearance.

24.     Wells Fargo has not denied many of these core allegations, stating via its spokesperson Tom Goyda that "[i]n the spirit of providing assistance, we may have misinterpreted customers' intentions in a small number of cases."[4] Although Wells Fargo did not identify the complete number of borrowers who were unwillingly placed into its forbearance program, it reported having received 1,600 complaints of unwanted forbearances.[5]

## II.     JURISDICTION AND VENUE

25.     Plaintiffs invoke the jurisdiction of this Court pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601; the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 22601; and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681.

---

[4] https://www.bankingdive.com/news/wells-fargo-forbearance-mortgage-payments/582284/ (last visited May 1, 2021).
[5] https://www.nbcnews.com/business/personal-finance/1-600-customers-say-wells-fargo-paused-their-mortgage-payments-n1241620 (last visited May 1, 2021).

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW          6

Smith & Lowney, p.l.l.c.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

26. In addition, this Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) and (6), because the aggregate claims of the proposed class members exceed $5,000,000, and at least one Class member resides in a different state than Defendant.

27. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' common law claims and state law claims because those claims are so related to the claims within the Court's original jurisdiction that they form a part of the same case or controversy under Article 3 of the U.S. Constitution.

28. This Court has personal jurisdiction over Defendant, as it purposefully availed itself of the privilege of conducting activities in Washington and established minimum contacts sufficient to confer jurisdiction. Defendant conducts business activities which are the subject of the present complaint in Washington.

29. Venue is proper in this Court, as Defendant conducts business within the district, and some business activities which are the subject of this complaint occurred therein.

### III. PARTIES

30. Plaintiff Brian Echard is a resident of Westerville, Ohio.

31. Plaintiff Brian Echard's mortgage is serviced by Wells Fargo.

32. Wells Fargo is also the lender/creditor for Plaintiff Brian Echard's mortgage.

33. Plaintiffs Stephen and Heather Shimp are married residents of Ohio, and are currently living in Okinawa, Japan due to Mr. Shimp's military service.

34. Plaintiff Heather Shimp's mortgages were serviced by Wells Fargo.

35. Wells Fargo Bank, N.A. ("Wells Fargo Bank") is a national banking association which conducts mortgage servicing operations through its Wells Fargo Home Mortgage division,

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW          7

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

which is headquartered in Des Moines, Iowa. Wells Fargo Bank operates throughout Ohio and every state in the country.

## IV.    FACTUAL ALLEGATIONS

**A.    Wells Fargo provides special programs and promises to military borrowers.**

36.    Wells Fargo, like many banks and lenders, competes for the business of military borrowers by promising support, dedicated services, and protections beyond those required by law.

37.    Wells Fargo claims to be "Committed to our Military Veterans" and that it has been "Proudly supporting military veterans and their families for more than 160 years."[6] But it makes its strongest promises to military home borrowers:

> ***It's our honor to serve you – every step of the way***
> You've served our country - and Wells Fargo is committed to serving you. Our goal is to enable long-lasting, sustainable homeownership, provide home financing education and support you with career transition.[7]

38.    Wells Fargo maintains a website dedicated to wooing military borrowers into its mortgage programs, promising to provide "Dedicated attention. Specialized services." It claims, "We appreciate the dedication of our nation's military personnel and their families. We are committed to providing home financing options to meet the unique needs of the military and veteran community."[8] The bank promises:

> **A dedicated team – just for you.**  We have a team of financial professionals who've been specially trained to meet your specific needs.  Their understanding of military and veteran culture makes them uniquely qualified to help you achieve your homeownership goals.

---

[6] https://www.wellsfargo.com/military/veterans/ (last visited May 1, 2021).
[7] https://www.benefits-mortgage.com/loans/mil0307/index-affinity.page?_ga=2.28828095.286286478.1611800248-1619906565.1611800248 (last visited May 1, 2021).
[8] https://www.benefits-mortgage.com/loans/mil0307/loan-programs/military-loans.page (last visited May 1, 2021).

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW        8

That dedicated webpage also promises:

**Help for military personnel**

Active-duty service members and their families facing payment challenges may qualify for <u>special military benefits</u>.

39.     In addition, Wells Fargo states that it promises to provide military borrowers with protections that goes beyond those required by law: "The Servicemembers Civil Relief Act (SCRA) may offer protection or relief to members of the military, their spouses, partners, and dependents. Wells Fargo appreciates the service of America's military personnel. That's why we offer expanded mortgage benefits that go beyond what the SCRA requires."[9] These include:

**Expanded benefits**

In addition to the benefits offered under SCRA, Wells Fargo helps service members by:

- Providing mortgage assistance to those who can't keep up with payments.
- Applying foreclosure protection if service members are deployed in a hazardous area or deployed internationally in readiness for military action.[10]

40.     Wells Fargo tells military borrowers that it has "home financing specialists" that are "here to support" military borrowers. It maintains a "Wells Fargo Military Bank Center."[11] Additionally, Wells Fargo's military website states, "Whether you're buying or refinancing a home, responding to PCS orders, or simply researching VA loan benefits, our home financing specialists are here to support you."[12] Defendant touted itself as a source of trusted information for servicemembers about SCRA benefits and VA backed loans.

**B.     Military borrowers are entitled to special legal protections.**

---

[9] https://www.wellsfargo.com/mortgage/manage-account/payment-help/military (last visited May 1, 2021).
[10] https://www.wellsfargo.com/mortgage/manage-account/payment-help/military (last visited May 1, 2021).
[11] https://www.wellsfargo.com/mortgage/manage-account/payment-help/military (last visited May 1, 2021).
[12] https://www.wellsfargo.com/military (last visited May 1, 2021).

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

41. C.F.R. § 38.4300-93 and the VA Servicer Handbook,[13] which is a handbook provided to servicers by the VA itself, provide special legal protections to military borrowers with a VA-backed loan. Servicers owe these borrowers a higher duty of care and disclosure, which include but are not limited to specific methods of keeping borrowers informed, quality control procedures, avoiding foreclosure whenever possible, explaining all loss mitigation options, continuing loss mitigation throughout the foreclosure process, exhausting all loss mitigation efforts before foreclosure, not allowing the final payment to be more than twice the amount of the preceding installments, providing special options to borrowers in distress as the result of a disaster, the right to prepay, and allowing prepayments to be reapplied to prevent subsequent default.

42. Moreover, the VA provides financial counseling to help military borrowers with a VA loan. As the VA website explains:

**Can I get VA financial counseling to help avoid foreclosure?**

- **If you're a Veteran or the surviving spouse of a Veteran,** we'll provide financial counseling—even if your loan isn't a VA direct or VA-backed loan

- **If you have a VA direct or VA-backed loan,** you can contact us anytime to request that we assign a VA loan technician to your loan. Our technicians can offer you financial counseling and help you deal with your servicer (or work with you directly in the case of a VA direct loan).[14]

43. The VA specifically advises military borrowers to carefully consider the pros and cons before requesting forbearance as result of the pandemic:

**"Should I request forbearance?** Only you can make this decision, but here are some things to consider. If you can continue making payments despite the financial impact of COVID-19, you may not want to request forbearance. While not making monthly mortgage payments for six months may seem to have immediate benefits, the payments

---

[13] Available at https://www.benefits.va.gov/WARMS/M26_4.asp (last visited May 1, 2021).
[14] https://www.va.gov/housing-assistance/home-loans/trouble-making-payments/ (last visited May 1, 2021).

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

missed during the COVID-19 forbearance period will become due when the COVID-19 forbearance ends. Please see the questions and answers above to understand how this may affect you later.[15]

## C.     The CARES Act

44.     In response the COVID-19 outbreak, on March 27, 2020, Congress passed the CARES Act. A component of the CARES act aid package was designed to assist American homeowners with federally backed mortgages who were in distress as a result of the COVID-19 pandemic.

45.     Amongst other things, the CARES Act provided homeowners with Government Sponsored Enterprises ("GSE") loans experiencing financial hardships because of COVID-19 with the option to request up to 180 days of forbearance on their mortgage. Specifically, Section 4022(b) provides in relevant part that:

> (1) IN GENERAL.—During the covered period [beginning February 15, 2020 and ending on June 30, 2020], a borrower with a Federally backed mortgage loan experiencing a financial hardship due, directly or indirectly, to the COVID-19 emergency *may request* forbearance on the Federally backed mortgage loan, regardless of delinquency status, by—
> > (A) submitting a request to the borrower's servicer and
> > (B) affirming that the borrower is experiencing a financial hardship during the COVID-19 emergency.
>
> (2) DURATION OF FORBEARANCE.— *Upon a request by a borrower for forbearance* under paragraph (1), such forbearance shall be granted for up to 180 days, and shall be extended for an additional period of up to 180 days *at the request of the borrower*, provided that, *at the borrower's request*, either the initial or extended period of forbearance may be shortened.

---

[15] https://benefits.va.gov/homeloans/cares-act-frequently-asked-questions.asp#FAQ4 (last visited May 1, 2021).

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW          11

1  *See* CORONAVIRUS AID, RELIEF, AND ECONOMIC SECURITY ACT, PL 116-136, March

2  27, 2020, 134 Stat. 281, § 4022(b) (emphasis added).

3      46.     Section 4022(c) of the CARES Act provides in relevant part that:

4          ***Upon receiving a request for forbearance from a borrower***
           under subsection (b), the servicer shall with no additional
5          documentation required other than the borrower's
           attestation to a financial hardship caused by the COVID-
6          19 emergency and with no fees, penalties, or interest
           (beyond the amounts scheduled or calculated as if the
7          borrower made all contractual payments on time and in full
           under the terms of the mortgage contract) charged to the
8          borrower in connection with the forbearance, provided the
           forbearance up to 180 days, which may be extended for an
9          additional period of up to 180 days at the request of the
           borrower, provided that, the borrower's request for an
10         extension is made during the covered period, and, at the
           borrower's request, either the initial or extended period of
11         forbearance may be shortened.

12  *Id*., § 4022(c) (emphasis added).

13      47.     The plain language of these provisions makes it abundantly clear that

14  participation in a mortgagee's or servicer's mortgage COVID-19 forbearance program is

15  voluntary and only to be initiated at the request of the mortgagor clients.

16      48.     For mortgagors to avail themselves of the COVID-19 mortgage forbearance

17  option, they were instructed to contact their loan servicer to obtain information and, if

18  appropriate, request forbearance.[16]

19      49.     The CARES Act also provides that lenders are not permitted to report forborne

20  payments to the credit bureaus, which means that borrowers who request forbearance are not

21  supposed to see any impact on their credit scores as a result of their participation in forbearance

22

23  _____

24  [16] https://www.consumerfinance.gov/coronavirus/mortgage-and-housing-assistance/request-forbearance-or-mortgage-relief/ (last visited May 1, 2021).

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW      12

programs. *See* CORONAVIRUS AID, RELIEF, AND ECONOMIC SECURITY ACT, PL 116-136, March 27, 2020, 134 Stat. 281, § 4021.

50.     Wells Fargo stated publicly in July 2020 that it had deferred 2.5 million payments for consumer and small business customers since the start of the pandemic.[17]

**D.     Wells Fargo Unilaterally and/or Without Informed Consent Opted Homeowners into its Forbearance Program.**

51.     Since the passage of the CARES Act, Defendant unilaterally placed borrowers into its mortgage forbearance programs without informed or lawfully required consent.

52.     Thousands of homeowners have been put into mortgage forbearance programs they did not knowingly request, causing substantial problems for those homeowners, including preventing homeowners from taking out new home loans or refinancing their existing mortgages.

53.     Wells Fargo's practice of placing unwitting customers into forbearance has prompted hundreds of consumer complaints. For instance, complaints filed with the CFPB have risen dramatically since the beginning of the pandemic, and many of those have come from homeowners who complain that they were placed in forbearance without requesting it.[18]

54.     In particular, as one consumer told the CFPB, a Wells Fargo employee admitted "that the system is like a 'hair trigger'" automatically placing loans into forbearance "even though I did nothing to start a forbearance."[19]

---

[17] https://www.bankingdive.com/news/wells-fargo-forbearance-mortgage-payments/582284/ (last visited May 1, 2021).

[18] https://www.cnn.com/2020/05/20/success/mortgage-forbearance-homeowner-complaints-coronavirus/index.html (last visited May 1, 2021).

[19] https://www.consumerfinance.gov/data-research/consumer-complaints/search/detail/3658898 (last visited May 1, 2021).

Smith & Lowney, p.l.l.c.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

55. Wells Fargo has not denied these allegations, stating via its spokesperson Tom Goyda that "[i]n the spirit of providing assistance, we may have misinterpreted customers' intentions in a small number of cases."[20]

56. The actions taken by Defendant were in direct contravention of the CARES Act requirements that forbearances be provided in response to the request of the borrower, and with an attestation of hardship due to COVID-19. In many instances, the borrowers received no notice that they had been placed into forbearance at all, and in those instances where borrowers received some notice, it was woefully inadequate under the requirements of RESPA, 12 U.S.C. §§ 2601 *et seq.*

**E.      Wells Fargo Failed to Properly Manage Mortgages Once in Forbearance.**

57. Wells Fargo's illegal actions went beyond enrolling unwitting customers into its forbearance program. Once customers were wrongfully enrolled into the program, Wells Fargo continued to act negligently and unlawfully by (1) failing to properly apply payments made by customers to the mortgage; (2) failing to properly report payments made by customers to credit agencies; and (3) failing to provide accurate and legally sufficient period statements to these customers.

**F.      Wells Fargo Benefits Financially from its Practice of Unilaterally Opting Homeowners into its Forbearance Program.**

58. Wells Fargo is compensated financially by the various federal agencies on whose behalf it services borrowers' loans when it filed forbearance notices and when it completes loan retention workout options with borrowers whose loans have been placed into forbearance pursuant to the CARES Act.

---

[20] https://www.bankingdive.com/news/wells-fargo-forbearance-mortgage-payments/582284/ (last visited May 1, 2021).

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW        14

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

59. For every Fannie Mae and Freddie Mac mortgage loan Wells Fargo places into forbearance, Wells Fargo stands to receive a minimum of $500 and up to $1,000 in incentive payments, depending on which workout option Wells Fargo's borrower accepts at the conclusion of the forbearance term.

60. For Ginnie Mae Loans Wells Fargo places into forbearance, Wells Fargo is also entitled to receive incentive compensation for post-forbearance loan workouts, although the structure for calculating the amount of these incentive payments and the available workout options are different (in immaterial ways) for Ginnie Mae loans, depending on whether the loan was originated by the VA, the USDA, or the FHA.

61. Wells Fargo's portfolio of Fannie Mae and Freddie Mac loans carries principal and interest payment advance obligations that are similar to its advance obligations for Ginnie Mae loans, with one important difference specifically applicable to loans in CARES Act forbearance: Wells Fargo's principal and interest advance obligations on Fannie Mae and Freddie Mac loans that received a CARES Act forbearance terminate after Wells Fargo makes four advances of borrowers' missed principal and interest payments.

62. So long as Fannie Mae and Freddie Mac loans are placed into a CARES Act forbearance, Wells Fargo is not required to repurchase delinquent Fannie Mae and Freddie Mac loans in order to be allowed to cease making principal and interest advances. Instead, after Wells Fargo makes advances for four monthly principal and interest payments missed by the borrower on a loan that Wells Fargo has placed in a CARES Act forbearance, under applicable Fannie Mae and Freddie Mac servicing guidelines, Wells Fargo no longer has any further obligation to advance principal and interest payments on the loan.

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW          15

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

63.     Therefore, regardless of whether a loan is backed by Ginnie Mae, Fannie Mae, or Freddie Mac, Wells Fargo benefits from placing loans into CARES Act forbearances by limiting its exposure to principal and interest advance obligations in the event of future defaults.

**G.     Unwanted Forbearance Injures Consumers**

64.     Wells Fargo has engaged in a practice of unilaterally opting mortgagors into unwanted forbearance programs which has caused an injury to those homeowners.[21]

65.     Even if Wells Fargo does not report forborne accounts as delinquent, there are nonetheless many practical and immediate impacts of participating in a mortgage forbearance program; mainly, participation in a forbearance program prohibits homeowners from taking out new loans or refinancing their existing mortgages.

66.     Wells Fargo has made notes on the reports they send to credit reporting agencies that the homeowners who they have placed into forbearance – including those who never requested it – have suspended their mortgage payments.[22]

67.     Fannie Mae and Freddie Mac, which, along with the Federal Housing Administration and the VA, who fund or insure the vast majority of mortgages from lenders, do not allow borrowers with a loan in forbearance to either refinance or to obtain a new loan until one year after the loan payments are up to date again.

68.     Wells Fargo has also failed to report payments made by borrowers to the credit reporting agencies after those borrowers discover they have been placed into forbearance and commence making payments again.

---

[21] https://www.cnn.com/2020/05/20/success/mortgage-forbearance-homeowner-complaints-coronavirus/index.html (last visited May 1, 2021).
[22] https://www.cnbc.com/2020/05/12/coronavirus-some-homeowners-getting-mortgage-bailouts-by-mistake.html (last visited May 1, 2021).

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW          16

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

69.     Some individuals, including Plaintiff Brian Echard, after learning that their mortgages had been placed into forbearance noticed that their credit scores had declined as a result of Wells Fargo's illegal actions.

**H.     Plaintiff Brian Echard**

70.     Plaintiff Brian Echard has a mortgage for which Wells Fargo is the lender and servicer. Wells Fargo collects payments and performs services for Mr. Echard's mortgage secured to his primary residence located in Westerville, Ohio.

71.     The contracts applicable to Mr. Echard's mortgage include: the "Security Instrument" which is "the Mortgage" document itself between Plaintiff and Wells Fargo dated September 20, 2016 and "the Note," which is the promissory note signed by Borrower and dated September 20, 2016.

72.     Mr. Echard is a military veteran. He began his military career as an Army ROTC cadet. After graduating from college in 1996, he was commissioned as second lieutenant in the Army Reserves. In 2001, he was considering ending his military career at the end of his eight-year contractual obligation to the U.S. Army. However, as a result of the terrorist attack on September 11, 2001, he chose to remain in the military and commit to accepting a company commander role. Mr. Echard and his unit were mobilized in 2003 and deployed to Iraq in 2004, where they spent 385 days. His unit was the last unit in Operation Iraqi Freedom II to leave the theater of war. Mr. Echard transitioned back to civilian life in 2005 after returning from deployment.

73.     Mr. Echard's mortgage is a VA backed mortgage.

74.     Prior to March 2020, Mr. Echard had setup automatic payment withdrawal for his mortgage with Wells Fargo.

Smith & Lowney, p.l.l.c.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

75.     Around March 31, 2020, Mr. Echard submitted an inquiry to Wells Fargo to ask about payment deferment options, as he was concerned about his future financial security in light of the pandemic.

76.     On March 31, 2020, Wells Fargo responded via email encouraging Mr. Echard to "view the self-service options available for your account on wellsfargo.com or through the Wells Fargo Mobile app . . . ." Despite the assurance that Wells Fargo gives to military borrowers, it offered him no "support." It did not explain to him the rights of military borrowers. It did not connect him to the supposed "dedicated team" that was supposed to help military borrowers attain sustainable homeownership.

77.     Sometime between April 2 and April 8, 2020, Mr. Echard logged into his Wells Fargo account on the Wells Fargo website. During that website visit, Mr. Echard did not knowingly agree to a forbearance. As a former bank employee, he understands the significance of a forbearance and would not have knowingly signed up for forbearance on his mortgage. Additionally, because Mr. Echard had a VA backed loan, he knew there were other types of relief and assistance available to him besides placing the account into forbearance. Yet, that website visit caused Wells Fargo to place him into forbearance.

78.     On April 8, 2020, Mr. Echard received a letter from Wells Fargo which confirmed that Wells Fargo had placed Mr. Echard's loan into forbearance.  This letter, which was issued after the loan was wrongfully placed in forbearance, was designed to be misleading.  It repeatedly uses the term "short-term payment relief," rather than forbearance. Only once, in an attachment, is the term forbearance used. It also states, "Thank you for letting us know about a financial hardship you're facing," when Mr. Echard never informed Wells Fargo of a financial hardship or gave Wells Fargo any financial information. Similarly, the attachment to this letter states, "New Monthly Payment Amount: $0.00. This payment suspends the current monthly

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW       18

Smith & Lowney, p.l.l.c.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

1  mortgage payment and it's based on your ability to pay." Mr. Echard never gave Wells Fargo

2  information about his ability to pay.

3       79.    Wells Fargo unilaterally suspended Mr. Echard's automatic monthly payments

4  without his request to revoke his authorization for monthly payments. On July 21, 2020, Mr.

5  Echard learned he was in forbearance when he attempted to refinance his mortgage through

6  NewDay USA and was denied.

7       80.    On August 14, 2020, Mr. Echard received a letter from Wells Fargo. The cover

8  sheet to this letter stated, "Due to the COVID-19 crisis, we've provided you with short-term

9  payment suspension (forbearance). We are legally required to send you the enclosed letter. This

10  letter is for your <u>information only</u>." (emphasis in original). This letter was specifically "For

11  customers with VA loans." It also states, "We would also like to notify you of the availability of

12  homeownership counseling, and any rights you or your dependents have under the

13  Servicemembers Civil Relief Act." Thus, it is clear that Wells Fargo understood that Mr. Echard

14  was a military borrower.

15       81.    The August 14, 2020 letter Mr. Echard received from Wells Fargo was also

16  designed to be misleading. It states, "You do not need to contact us as there is nothing for you to

17  do right now. You are not required to make any payments during the forbearance. We will

18  contact you near the end of the forbearance to review your financial situation and discuss

19  options." Then this same letter also states that Mr. Echard's account is "due for 4 payment(s) for

20  the months of May 1, 2020 through August 14, 2020 . . . . The loan is currently due for May 1,

21  2020 and due for each subsequent monthly payment since that date." On its face, this letter is

22  conflicting and confusing, as it says both that he does not need to do anything and is not required

23  to make payment and also that his account is currently due.

24

Smith & Lowney, p.l.l.c.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

82.     On September 9, 2020, Mr. Echard received a letter from Wells Fargo in response to a complaint, stating, "We apologize for any confusion this process may have caused you." The letter contains inconsistencies. On the one hand it states, an 'account in forbearance' code on his credit report "does not affect your FICO credit score." But it acknowledged that "the fact that your account is in forbearance may affect your ability to qualify for new credit or refinance." Furthermore, this letter states, "We can confirm that once you agreed to the short term assistance being placed on the account, we sent you a letter dated April 08, 2020." Mr. Echard never agreed to short term assistance.

83.     After Mr. Echard learned that his account had been wrongfully placed in forbearance, he resumed payments on his mortgage. However, Wells Fargo failed to properly (1) apply those payments to the mortgage; (2) report those payments to credit agencies; or (3) calculate information on subsequent periodic payments.

84.     Mr. Echard's August 28, 2020 statement from Wells Fargo states his mortgage payment made August 28, 2020 is "unapplied."

85.     Mr. Echard's October 18, 2020 statement from Wells Fargo states his mortgage payment made October 17, 2020 is "unapplied."

86.     Mr. Echard's December 7, 2020 statement from Wells Fargo states his November 27, 2020 payment is "unapplied."

87.     Mr. Echard's January 14, 2021 Wells Fargo states both his January 3, 2021 and his November 27, 2020 payments are "unapplied."

88.     On December 1, 2020, Mr. Echard's FICO Score 8 dropped by at least 74 points from 747 to 673.

89.     Because of the reduction in Mr. Echard's FICO Score, he was unable to qualify for the best refinancing rates. Based on information and belief, the letter Mr. Echard received

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW        20

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

1   from Wells Fargo dated April 8, 2020 is a form letter which Wells Fargo also sent to all

2   Nationwide Class members, all Nationwide Military Class members, and all Ohio Class

3   members.

4         90.     Based on information and belief, the letter Mr. Echard received from Wells Fargo

5   dated August 14, 2020 is a form letter which Wells Fargo also sent to all Nationwide Military

6   Class members.

7   **I.**     **Plaintiffs Stephen and Heather Shimp**

8         91.     Plaintiffs Stephen and Heather Shimp had several mortgages for which Wells

9   Fargo was the servicer. Wells Fargo collected payments and performed services for the Shimp's

10   mortgages secured to properties located in Indianapolis, Indiana and Ogden, Utah.

11         92.     Due to Lieutenant Stephen Shimp's military service, the Shimps move often and

12   are currently residing in Okinawa, Japan. Lieutenant Shimp became a commissioned officer in

13   the Navy in 2017 through the Health Professions Scholarship Program for dental school. He

14   went to officer school and received his first active duty assignment in 2020.

15         93.     Lieutenant Shimp is currently on active duty and was on active duty at the time

16   Wells Fargo placed the Shimp's mortgages into the CARES Act forbearance program.

17         94.     The contracts applicable to the Shimp's mortgages include: the "Security

18   Instrument" which is "the Mortgage" document itself between Heather Shimp and the lender,

19   NBH Bank, dated June 26, 2018 for the first property located in Indianapolis, Indiana; "the

20   Note," which is the promissory note signed by Heather Shimp and dated June 26, 2018 for the

21   first property located in Indianapolis, Indiana; the "Security Instrument" which is "the

22   Mortgage" document itself between Heather Shimp and the lender, NBH Bank, dated June 22,

23   2018 for the second property located in Indianapolis, Indiana; "the Note," which is the

24   promissory note signed by Heather Shimp and dated June 22, 2018 for the second property

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW    21

SMITH & LOWNEY, P.L.L.C.
**2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883**

located in Indianapolis, Indiana; the "Security Instrument" which is the "Deed of Trust" document itself between Heather Shimp and the lender Security National Mortgage Company, dated March 31, 2016 for the property located in Ogden, Utah; and "the Note," which is the promissory note signed by Heather Shimp and dated March 31, 2016 for the property located in Ogden, Utah.

95.     Prior to March 2020, the Shimps had set up automatic payment withdrawal for their mortgages with Wells Fargo.

96.     Around April 6, 2020, Ms. Shimp logged into her Wells Fargo account on the Wells Fargo website. Based upon that interaction, Wells Fargo placed three of her four mortgages into forbearance.  Ms. Shimp did not request a forbearance on her fourth mortgage serviced by Wells Fargo.

97.     Around April 21, 2020, Ms. Shimp called Wells Fargo to inquire about her options regarding suspending payments on one of her mortgage accounts due to the COVID-19 pandemic.

98.     Around April 8, 2020, Wells Fargo placed all of the Shimp's mortgage accounts into the COVID-19 forbearance program without Ms. Shimp's informed consent.

99.     Wells Fargo unilaterally suspended Ms. Shimp's automatic monthly payments without her request to revoke her authorization for monthly payments.

100.     The Shimps did not receive any written communication from Wells Fargo regarding the placement of their accounts into forbearance or the cancellation of their automatic payments.

101.     In June of 2020, the Shimps learned they were in forbearance and that their automatic payments had been cancelled when they attempted to purchase a new home and were denied, due to their mortgage accounts with Wells Fargo being in forbearance. Due to this denial,

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW     22

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

1  the Shimps were forced to rent an AirBnB to live in while this issue was resolved. To make

2  matters worse, Ms. Shimp was at the end stages of her pregnancy at this time. Ultimately, the

3  closing date on their new home was delayed by approximately one month.

4      102.    After Ms. Shimp learned that her accounts had been wrongfully placed in

5  forbearance, she resumed payments and paid all the missed payments. However, Wells Fargo

6  failed to properly (1) apply those payments to the mortgage; (2) report those payments to credit

7  agencies; or (3) calculate information on subsequent periodic payments.

8  **J.    Class Action Allegations**

9      103.    Plaintiffs brings this action pursuant to Federal Rule of Civil Procedure 23(b)(3)

10  on behalf of themselves and all others similarly situated. They, along with other class members

11  who may be named as class representatives at the time a motion is filed to certify a proposed

12  class, will represent the following classes:

13      **Nationwide Military Class**:

14      All military borrowers with a mortgage loan serviced by Wells Fargo whose mortgage
    was placed into Wells Fargo's COVID-19 Mortgage Forbearance Program without their
15  informed and lawful consent.

16      **Nationwide Class**:

17      All customers with a mortgage loan serviced by Wells Fargo whose mortgage was placed
    into Wells Fargo's COVID-19 Mortgage Forbearance Program without their informed and
18  lawful consent.

19      **Ohio Class:**

20      All Ohio customers with a mortgage loan serviced by Wells Fargo whose mortgage was
    placed into Wells Fargo's COVID-19 Mortgage Forbearance Program without their informed
21  and lawful consent.

22      104.    <u>Numerosity</u>- Members of each of the three proposed classes are so numerous that

23  joinder of all members is impracticable. The disposition of their claims in a class action will

24  provide substantial benefits to both parties and the Court. Upon information and belief,

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW    23

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

1   Defendant, either directly or through affiliated entities, is in possession of the names and

2   addresses of all class members. While the exact number of Class Members remains unknown at

3   this time, upon information and belief, there are thousands of putative Class Members

4   throughout the United States who are generally ascertainable through discovery. The information

5   currently known to Plaintiffs that Wells Fargo has received at least 1,600 complaints is already

6   sufficient to support the numerosity requirement for a class action.[23]

7       105.    Class treatment is particularly appropriate here because the national presence of

8   Defendant means that it conducts business in every jurisdiction in the United States. Further, this

9   matter involves multiple federal statutes which were extensively and harmfully misapplied by

10  Defendant.

11      106.    <u>Commonality</u>- This action involves common questions of law and fact, which

12  predominate over any questions affecting individual Class Members. These common legal and

13  factual questions include, but are not limited to, the following:

14          a.  Whether Defendant owed and breached duties owed to the Nationwide Military

15              Class, including statutory, contractual, or fiduciary duties;

16          b.  Whether Wells Fargo negligently or intentionally enrolled customers in

17              forbearance programs without their informed consent;

18          c.  Whether Wells Fargo's actions or inactions violated the consumer protection

19              statutes invoked herein;

20          d.  Whether the Plaintiffs and putative class were damaged by Wells Fargo's conduct

21              and, if so, the appropriate amount of damages;

22

23  ───────────────────

24  [23] https://www.bankingdive.com/news/wells-fargo-forbearance-mortgage-payments/582284/ (last visited May 1, 2021).

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW        24

Smith & Lowney, p.l.l.c.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

e. Whether, because of Wells Fargo's misconduct, Plaintiffs and the putative Class Members are entitled to equitable and declaratory relief, and if so, the nature of such relief;

107. <u>Typicality</u>- The representative Plaintiffs' claims are typical of the claims of members of the Classes. Plaintiffs and all the members of the Classes have been injured by the same wrongful practices of Wells Fargo. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of members of the Classes and are based on the same legal theories.

108. <u>Adequacy</u>- Plaintiffs will fully and adequately assert and protect the interests of the Classes, and have retained class counsel who are experienced and qualified in prosecuting class actions, and in particular, class actions brought on behalf of military customers. Neither the Plaintiffs nor their attorneys have any interests contrary to or in conflict with the Classes.

109. <u>Predominance and Superiority</u>- A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class Members is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class Members are likely in the millions of dollars, the individual damages incurred by each Class Member are too small to warrant the expense of individual suits. The likelihood of individual Class Members prosecuting their own separate claims is remote, and even if every member of the Classes could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Moreover, active duty servicemembers who are part of the Nationwide Military Class and who are deployed do not have the time or resources to undertake individual litigation from their deployment.

110. The nature of this action and the nature of laws available to Plaintiffs and the Classes make the use of the class action device a particularly efficient and appropriate procedure

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

to afford relief to Plaintiffs and the Class Members for the wrongs alleged because Wells Fargo would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class and will establish the right of each member of the Class to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

## V.     CAUSES OF ACTION

## <u>FIRST CAUSE OF ACTION</u>

**Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing**

111.     Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

112.     Plaintiffs bring this claim on behalf of themselves and all three classes.

113.     Wells Fargo's forbearance scam was furthered by its breach of the notice provision of the mortgage contract, which requires that all notices "in connection" with the mortgage be "in writing," sent "by first class mail to Lender's address stated herein," and "shall not be deemed to have been given to Lender until actually received by Lender." Mortgage Sec. 15. This provision exists to ensure that communications between a borrower and lender are clear and traceable. Wells Fargo breached this provision by treating a vague internet communication as a formal notice in connection with the mortgage. Wells Fargo designed its electronic statements and website to solicit vague and informal communications from vulnerable customers, and then improperly treated those vague and informal communications as formal notices under their mortgages.

Smith & Lowney, p.l.l.c.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

114.    Had Wells Fargo adhered to contractual notice requirements, customers across the nation would not have been placed into forbearance without consent. This contractual breach evaded the procedural protections that should have allowed customers to make and communicate their decision about whether or not to enter forbearance. This breach removed all clarity and traceability from this critical decision and communication. Because customers were left without volition in the matter and never made a "decision," it did not matter that the VA advised military borrowers to carefully consider the pros and cons before requesting forbearance.

115.    By unilaterally placing Plaintiffs and Class Member mortgage loans in forbearance without their consent, Wells Fargo interfered with Plaintiff's ability to act upon the contracts including Term 1, "Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges" of the Mortgage and Term 3, "Payments" of the Note.

116.    Once Wells Fargo placed a customer into forbearance, it failed to properly apply payments made by customers to their mortgage. This constituted a breach of the mortgage, including Section 2, "Application of Payments or Proceeds."

117.    In addition, Wells Fargo's actions violated federal regulations that were incorporated into the contracts. Section 16 of the mortgage states that "All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law." Thus, rights and obligations in the mortgage document concerning application of payments, notices, and forbearance are subject to "requirements and limitations of Applicable Law." In addition, the Note explicitly states the regulations under 38 C.F.R. Part 36 and 38 U.S.C. Chapter 37 "shall govern the rights, duties, and liabilities of the parties." By violating requirements and limitations of Applicable Law relating to application of payments, notices, and forbearance, Wells Fargo breached the mortgage contracts.

Smith & Lowney, p.l.l.c.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

118.    Wells Fargo breached the contracts by failing to adhere to the VA Regulations that are incorporated into the contracts.  For example, 38 C.F.R. § 36.4350(b) requires loan holders to have a system to promptly respond to inquiries, which Wells Fargo breached by failing to have such system in place and by failing to actually promptly respond to plaintiffs' multiple inquiries about being wrongfully placed into forbearance. Wells Fargo also failed to comply with 38 C.F.R. §. 36.4350(f) requiring the bank to have in place a system to comply with consumer protections in the Real Estate Settlement Procedures Act and to otherwise protect customers who are deemed to be in delinquency.

119.    Plaintiffs, the Class Members, and Wells Fargo were parties or beneficiaries to contracts that contain an implied covenant of good faith and fair dealing. The implied covenant obligates the parties to cooperate so that each party may obtain the full benefit of performance of the contracts. The duty of good faith and fair dealing means that parties may not interfere with or fail to cooperate in the other party's performance. Neither party may engage in conduct that impairs or prevents the other party from enjoying the benefits of the contracts or engage in conduct that prevents the other party from performing under the contracts.

120.    Wells Fargo owed the Nationwide Military Class members an additional duty of good faith, as these borrowers are entitled to special protections for VA backed loans, under the SCRA, and additional rights and care under Wells Fargo's own promises made to military borrowers.

121.    Wells Fargo knows which of its customers are military borrowers and knows that such military borrowers are entitled to additional rights and care.

122.    Military borrowers have a reasonable expectation that Wells Fargo will take additional care to inform them of their rights and options before placing them into a program that will negatively impact their financial status and their ability to avoid foreclosure. Military

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW        28

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

1    borrowers received such promises of care from Wells Fargo and are parties to a contract that

2    requires Wells Fargo to take additional care.

3        123.    By failing to meet its obligations of candor and care, terminating monthly

4    payments without request, and placing Plaintiffs and Class Members in forbearance without their

5    informed and legal consent, Wells Fargo frustrated and interfered with their ability to perform

6    under the contract including their ability to make contractual periodic payments, and failed to

7    cooperate with the Class Members' performance of their contracts.

8        124.    No reasonable party would expect that Wells Fargo would end automatic

9    payments or put their mortgage into forbearance without informed, legal consent. Military

10   borrowers have additional reasons to believe this would not occur.

11       125.    Wells Fargo engaged in conduct that was contrary to the spirit of the contracts and

12   the Class Members' rights thereunder. Wells Fargo lacked diligence in performing its duties,

13   acted recklessly in its servicing of the Class Members' mortgages, and abused its power by

14   placing loans in forbearance without informed and legal consent for its own interest.

15       126.    By its actions, Wells Fargo engaged in conduct that was contrary to the spirit of

16   the contracts, lacked diligence, and constituted an abuse of its power.

17       127.    Wells Fargo knew, reasonably should have known, or recklessly disregarded their

18   duty to treat Plaintiffs and Class Members fairly and deal with them in good faith.

19       128.    Wells Fargo's negligence, breach of duties, and breach of contract were the

20   proximate cause of damages sustained by the Plaintiffs and the Classes. Plaintiffs and Class

21   Members' damages include, but are not limited to, damage to their credit including increased

22   borrowing costs, increased interest accrued as a result of the forbearance, and an inability to

23   refinance while in forbearance.

24                        **SECOND CAUSE OF ACTION**

Smith & Lowney, p.l.l.c.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

**Breach of Fiduciary Duty**

129.    Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

130.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Military Class.

131.    Defendant did not have a typical arms-length lender/borrower relationship with Plaintiffs and the Nationwide Military Class Members. In the unique facts of this case, Defendant took on a role of fiduciary to the Plaintiffs and the Nationwide Military Class.

132.    The facts giving rise to the fiduciary duty include by are not limited to the following:

- Plaintiffs and members of the Nationwide Military Class are afforded special protections for their VA backed loans.

- Defendant specifically marketed to servicemembers, and particularly to those servicemembers who were deployed overseas[24];

- Defendant volunteered advice to servicemembers and their families with the intent that Defendant would become their trusted advisor on financial and non-financial matters. The website for Defendant's proprietary program, wellsfargo.com/military, states, for example: "Whether you're buying or refinancing a home, responding to PCS orders, or simply researching VA loan benefits, our home financing specialists are here to support you." Defendant touted itself as a source of trusted information for servicemembers about SCRA benefits and VA backed loans.

---

[24] https://www.wellsfargo.com/military (last visited May 1, 2021).

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW        30

133.     Defendant breached the fiduciary duties owed to Plaintiffs and the Nationwide Military Class, causing loss of access to credit, reputational damage, frustration, outrage, and various other pecuniary and general damages, and entitling Plaintiffs and the Nationwide Military Class to restitution and other equitable remedies.

### THIRD CAUSE OF ACTION

**Fraud**

134.     Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

135.     Plaintiffs bring this action on behalf of themselves and all three classes.

136.     Wells Fargo made material omissions of fact in failing to disclose to Plaintiffs and Class Members that it had placed their loans into forbearance without their informed and legal consent.

137.     Wells Fargo also made material omissions of fact in failing to disclose that a customer's account would be placed into forbearance by clicking a button on the Wells Fargo website that made no mention of forbearance.

138.     Wells Fargo made further misleading and deceptive representations in form letters sent to Plaintiffs and Class Members after placing their accounts into forbearance without their informed and legal consent. These misrepresentations and false statements, which were designed by Wells Fargo to be confusing and misleading, include but are not limited to using the term "short-term payment relief," rather than forbearance; stating that the customer had informed Wells Fargo about financial hardships when the customer never gave Wells Fargo such information; stating that the new payment amount was based on the customer's ability to pay

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW     31

Smith & Lowney, p.l.l.c.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

1  when the customer never gave Wells Fargo information about his ability to pay; stating both that

2  the customer is not required to make payments and also that his or her account is currently due.

3      139.    Plaintiffs and Class Members detrimentally relied upon Wells Fargo's material

4  omissions of fact and the misrepresentations and purposefully misleading statements contained

5  in form letters when Wells Fargo did not inform Plaintiffs and Class Members promptly that

6  their accounts had been placed in forbearance and Plaintiffs and Class Members did not

7  challenge the forbearance. Where Wells Fargo did inform Plaintiffs and Class Members after the

8  fact that accounts had been placed into forbearance, that notice was insufficient to actually place

9  these customers on notice. Moreover, when Plaintiffs and Class Members continued to make

10  monthly mortgage payments after learning of the forbearance status, they did so with the

11  understanding and expectation that doing so would result in these loans being serviced in the

12  ordinary course of business.

13      140.    Plaintiffs' and Class Members' reliance on Wells Fargo's material omissions of

14  fact and the misleading and false statements made in form letters sent to Plaintiffs and Class

15  Members were justified and reasonable, as Plaintiffs and Class Members had no basis to assume

16  and were not on notice that Wells Fargo would defraud them by placing their loans into

17  forbearance status without authorization or informed consent. Further, no common law, statute,

18  or other agreement among Plaintiffs and Class Members and their mortgage lender and/or Wells

19  Fargo authorized Wells Fargo to place these borrowers' loans into forbearance without their

20  informed consent.

21      141.    Plaintiffs and Class Members were injured by Wells Fargo's material omissions

22  of fact, misleading and false statements, and fraudulent placement of their loans into forbearance

23  status, experiencing credit damage, and inability to refinance at historically low rates, loss of

24  access to new credit and existing credit cards and home equity lines of credit, reputational

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW        32

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

1  damage, frustration, and various out-of-pocket costs and other pecuniary damages and general

2  damages.

### FOURTH CAUSE OF ACTION

**Violations of Truth in Lending Act, 15 U.S.C. § 1601 *et seq*. (TILA)**

5  142.    Plaintiffs incorporate each and every allegation contained in the preceding

6  paragraphs as if set forth again herein.

7  143.    Plaintiffs bring this claim on behalf of themselves and all three classes.

8  144.    12 C.F.R. § 226.36(c)(1)(i) prohibits a servicer of a consumer credit transaction

9  secured by a consumer's principal dwelling from failing to "credit a payment to the consumer's

10  loan account as of the date of receipt, except when a delay in crediting does not result in any

11  charge to the consumer or in the reporting of negative information to a consumer reporting

12  agency . . . ."

13  145.    12 C.F.R. § 1026.36(c)(1) prohibits servicers of a closed-end consumer credit

14  transaction, secured by a consumer's principal dwelling, from failing to credit a periodic

15  payment to the consumer's loan account as of the date of receipt, with some exceptions not

16  applicable here.

17  146.    15 U.S.C. § 1639f(a) prohibits a servicer from failing to credit payments that are

18  part of "a consumer credit transaction secured by a consumer's principal dwelling" on the day

19  the servicer received the payment.

20  147.    Wells Fargo has failed to properly credit periodic payments to Plaintiffs and other

21  Class Members' loan accounts. In Mr. Echard's experience, Wells Fargo failed to properly apply

22  his mortgage payments to his account after he resumed payments on his mortgage in August

23  2020.

24

Smith & Lowney, p.l.l.c.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

148. Pursuant to 12 C.F.R. § 1026.41, a servicer of a closed-end consumer credit transaction secured by a dwelling (a "mortgage loan") shall provide the consumer, for each billing cycle, a periodic statement meeting specifically enumerated requirements, including but not limited certain details related to the amount due, an explanation of the amount due, and a past payment breakdown.

149. Defendant violated 12 C.F.R. § 1026.41 by providing periodic statements on mortgage loans to Plaintiffs and other Class Members which do not conform to the structure required, and which inaccurately reflect and/or omit information required by the regulation, including information related to forbearance and its effects. The statements Mr. Echard received between August 2020 and December 2020 did not explain that the change in payment amount was due to forbearance.

150. TILA, 15 U.S.C. § 1640, provides a private right of action against creditors for violations of these provisions, which includes suits against entities that violate TILA and previously owned the loan obligation. *See* 15 U.S.C. § 1641(f). As the lender, Wells Fargo is a "creditor" under 15 U.S.C. § 1602(g), which defines the term as follows:

> The term "creditor" refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

151. Wells Fargo has demonstrated a pattern and practice of failing to comply with 12 C.F.R. § 226 because Wells Fargo has engaged in a practice of placing borrowers in unwanted and unauthorized forbearance agreements on a nation-wide basis, failing to property credit payments, and failing to provide accurate and legal periodic statements.

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW      34

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

1    152.    As a proximate result of Wells Fargo's unlawful actions, Plaintiffs and Class

2  Members have been injured.  Plaintiffs and Class Members have suffered credit damage, loss of

3  access to credit, reputational damage, frustration, outrage, and various other pecuniary and

4  general damages.

5                               **FIFTH CAUSE OF ACTION**

6              **Violations of the Real Estate Settlement Procedures Act (RESPA)**

7    153.    Plaintiffs incorporate each and every allegation contained in the preceding

8  paragraphs as if set forth again herein.

9    154.    Plaintiffs brings this claim on behalf of themselves and all three classes.

10    155.    12 C.F.R. § 1024 imposes certain requirements on Defendant, including

11  procedures for loss mitigation and requirements related to applications for loan modifications,

12  violations of which are enforceable under Real Estate Settlement Procedures Act ("RESPA"), 12

13  U.S.C. § 2605(f), and 15 U.S.C. § 1640.  *See also*, 12 C.F.R. § 1024.41(a).

14    156.    Wells Fargo has violated 12 C.F.R § 1024 by inappropriately treating borrowers'

15  inquiries about possible forbearance as loss mitigation applications, while failing to handle those

16  "applications" in compliance with Regulation X. Alternatively, to the extent the facts pled in this

17  complaint constitute the submission of one or more loss mitigation applications, Wells Fargo

18  violated 12 C.F.R. § 1024 by failing to comply with RESPA's statutory and regulatory

19  requirements for handling those applications. These RESPA violations include but are not

20  limited to the following violations:

21        •    Wells Fargo has failed to provide Plaintiffs and Class Members notices as

22             required by 12 C.F.R. § 1024.41;

23

24

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW      35

- Wells Fargo has misrepresented the status of the review of loss mitigation applications and requests submitted by Plaintiffs and Class Members, in violation of 12 C.F.R. § 1024.41;

- Wells Fargo has acknowledged yet failed to properly and timely evaluate and respond to Plaintiffs' and Class Members' completed loss mitigation applications, in violation of 12 C.F.R. § 1024.41;

- Wells Fargo has failed to properly advise, inform and assist Plaintiffs and Class Members of curative actions including the right to appeal any denials, in violation of 12 C.F.R. § 1024.41;

- Wells Fargo has deceptively placed Plaintiffs and Class Members into their "COVID-19 Forbearance Plan" without informed prior consent or approval, in violation of 12 C.F.R. § 1024.41;

- Wells Fargo has failed to maintain continuity of contact for Plaintiffs and Class Members, in violation of 12 C.F.R. § 1024.40;

- Wells Fargo failed to maintain a system to "advise borrowers how to cure delinquencies [and] protect their … credit rating," in violation of 38 C.F.R. § 36.4278.

157.    Wells Fargo has placed Plaintiffs' and other Class Members' mortgage loan accounts into forbearance and/or extended existing forbearance periods without Plaintiffs' and Class Members' knowledge, informed consent, or approval in violation of the Real Estate Settlement Procedures Act.

158.    Wells Fargo has failed to apply Plaintiffs' and Class Members' monthly mortgage payments as of the date they came due and failed to report publicly that payments made by Plaintiffs and Class Members were received and applied.

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW        36

Smith & Lowney, p.l.l.c.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

159.    Wells Fargo has demonstrated a pattern and practice of failing to comply with Regulation X, and failing to comply with related loss mitigation rules, because Wells Fargo has engaged in a practice of placing borrowers in unwanted and unauthorized forbearance agreements on a nation-wide basis.

160.    As a proximate result of Wells Fargo's unlawful actions, Plaintiffs and Class Members have been injured. Plaintiffs and Class Members have suffered credit damage, loss of access to credit, reputational damage, frustration, outrage, and various other pecuniary and general damages.

## SIXTH CAUSE OF ACTION

**Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. (FCRA)**

161.    Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

162.    Plaintiffs bring this claim on behalf of themselves and all three classes.

163.    Plaintiffs are "consumers" as that term is defined by 15 U.S.C. § 1681a(c). Wells Fargo is a "furnisher" of consumer information as defined by 12 C.F.R. § 1022.41(c) and as described throughout the Fair Credit Reporting Act ("FCRA").

164.    Wells Fargo regularly reports consumer account information to the credit reporting agencies for inclusion in credit reports.

165.    Wells Fargo willfully violated 15 U.S.C. § 1681s-2 by informing credit agencies that Plaintiffs' and Class Members' mortgage accounts were in forbearance when those consumers did not make affirmative, legal, or informed requests to be placed into forbearance.

Smith & Lowney, p.l.l.c.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

166.   Wells Fargo also willfully violated 15 U.S.C. § 1681s-2 by failing to adequately investigate and correct inaccurate credit reporting information with the credit reporting agencies after Plaintiffs made appropriate complaints.

167.   Wells Fargo knew, or should have known, that Plaintiffs and the Class Members did not request or affirmatively and legally consent to the mortgage loan forbearances that Wells Fargo reported to the credit reporting agencies.

168.   Wells Fargo knew, or should have known, that Plaintiffs and the Class Members had made mortgage payments after being placed into forbearance, and that these mortgage payments should be reported to credit agencies.

169.   The forbearance notation on the Class Members' credit reports clearly indicates to potential creditors or other third parties that the class members experienced some sort of financial hardship. These forbearance notations adversely affect class members' ability to obtain credit.

170.   Failing to report payments made on Plaintiffs' and Class Members' mortgage accounts to credit agencies negatively affected these consumers credit scores.

171.   Wells Fargo has breached its duties as set forth in 15 U.S.C. § 1681s-2 by failing to adequately investigate and fully correct inaccurate credit reporting information with the credit reporting agencies following Plaintiffs' dispute of the credit reporting errors or Plaintiffs' informing Wells Fargo of the fraudulent placement of the account in forbearance.

172.   Wells Fargo knew that the presence of the forbearance notations in the Class Members' credit reports would damage the Class Members' ability to obtain new credit, which may be essential to a consumer's daily life.

173.   Wells Fargo's failure to report its receipt of payments made by Plaintiffs and the Class Members during the period in which Wells Fargo improperly furnished information to the

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW       38

Smith & Lowney, p.l.l.c.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

1    Credit Reporting Agencies indicating that their loans were in forbearance status also adversely

2    affects Plaintiffs' and the Class Members' ability to obtain credit, including but not limited to

3    preventing and/or significantly impeding borrowers' ability to refinance their home mortgage

4    loans and/or to borrow against the equity in their homes.

5          174.    Wells Fargo failed to promptly delete, modify, or block reporting of inaccurate,

6    incomplete, or unverifiable information in response to each complaint raised by Plaintiffs and the

7    Class Members.

8          175.    Wells Fargo failed to fully correct the information it supplied to the Credit

9    Reporting Agencies regarding Plaintiffs' and the Class Member's accounts.

10         176.    Plaintiffs and the Class Members have incurred actual damages and have suffered

11   physically, mentally, and emotionally as a result of Wells Fargo's willful violations of the

12   FCRA.

13         177.    Based on Wells Fargo's violations of 15 U.S.C. § 1681s-2, Plaintiffs and the

14   Class Members are entitled to actual damages, costs, and attorneys' fees pursuant to 15 U.S.C. §

15   1681o.

16         178.    Moreover, as a result of each and every negligent violation of the FCRA,

17   Plaintiffs and the Class Members are entitled to statutory damages and reasonable attorneys' fees

18   pursuant to 15 U.S.C. § 1681o.

19         179.    Plaintiffs and the Class Members are also entitled to statutory damages, punitive

20   damages, and reasonable attorneys' fees for each of Wells Fargo's willful violation of the FCRA

21   pursuant to 15 U.S.C. § 1681n(a).

22                          **SEVENTH CAUSE OF ACTION**

23                               **Unjust Enrichment**

24

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

180. Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

181. Plaintiffs bring this claim on behalf of themselves and all three classes.

182. Plaintiffs and the Class Members have conferred a benefit upon Wells Fargo which received benefits by placing Plaintiffs and Class Member's loans into forbearance without their informed and legal consent. By placing Plaintiffs' and Class member's mortgages in forbearance, Wells Fargo continued to hold and service those mortgage loans, preventing Plaintiffs and Class members refinancing with another institution, and thus increasing the value of the mortgage servicing rights.

183. As a result, the Plaintiffs and Class members are entitled to restitution, disgorgement, or both, of the benefits Wells Fargo has unjustly retained, in an amount to be proven at trial.

## **EIGHTH CAUSE OF ACTION**

### **Negligence and Negligent Misrepresentation**

184. Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

185. Plaintiffs bring this claim on behalf of themselves and all three classes.

186. Defendant, as a lender, owes their borrowers a duty to exercise reasonable care to avoid a foreseeable risk of injury to the borrower.

187. Defendant, as a lender and/or servicer providing professional services, owes its customers a duty not to supply false information for guidance of others in their business transactions and to exercise reasonable care or competence in obtaining or communicating information.

Smith & Lowney, p.l.l.c.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

188.    Defendant owed Plaintiffs and the Nationwide Military Class an additional duty of care as these customers are military customers and veterans who are entitled to special protections for VA backed loans.

189.    Defendant breached its duty of care to Plaintiffs and the Class Members by enrolling Plaintiffs and the Class Members in the forbearance program without their informed and legal consent.

190.    Defendant further breached its duty of care to Plaintiffs and the Class Members by violating TILA, RESPA, and FCRA.

191.    Defendant further breached its duty of care to Plaintiffs and the Class Members by making misrepresentations and/or omissions on their website regarding the consequences of clicking a button on the borrower's homepage to "defer" payments.

192.    Defendant further breached its duty of care to Plaintiffs and the Class Members by supplying false information for guidance in their business transactions, on which Plaintiff and the Classes reasonably and justifiably relied.

193.    Defendant further breached its duty of care to Plaintiffs and the Class Members by failing to exercise reasonable care or competence in obtaining and/or communicating information on which Plaintiffs and the Classes would reasonably and justifiably rely for guidance in their business transaction.

194.    Defendant further breached its duty of care to Plaintiffs and the Class Members by making false or purposely misleading statements in form letters sent to Plaintiffs and Class Members in form letters sent after placing Plaintiffs' and Class Members' accounts into forbearance.

195.    And finally, Defendant breached its duty of care after illegally enrolling customers in the forbearance program by (1) failing to properly apply payments to the mortgage;

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW        41

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

1 | (2) failing to properly report payments actually made to credit agencies; and (3) failing to

2 | provide accurate and legally sufficient periodic statements.

3 | 196.     Defendant knew, reasonably should have known, or recklessly disregarded its

4 | duty to treat Plaintiffs and the Class Members fairly and deal with them in good faith.

5 | 197.     Defendant's negligence and breach of their duties was the proximate cause of

6 | damages sustained by the Plaintiffs and the Class Members.

7 |

8 | **NINTH CAUSE OF ACTION**

9 | **Violation of the Ohio Deceptive Trade Practices Act**

10 | 198.     Plaintiffs incorporate each and every allegation contained in the preceding

11 | paragraphs as if set forth again herein.

12 | 199.     Plaintiffs bring this claim on behalf of themselves and the Ohio Class.

13 | 200.     Ohio's Deceptive Trade Practices Act ("DTPA"), Ohio Revised Code §§ 4165 *et*

14 | *seq.* prohibits deceptive trade practices.

15 | 201.     Wells Fargo is a "person" as defined by Ohio Revised Code § 4165.01(D)

16 | 202.     The DTPA provides in part that a "person engages in a deceptive trade practice

17 | when, in the course of the person's business, vocation, or occupation, the person . . .

18 | represents that goods or services have . . . characteristics . . . , uses, [or] benefits . . . that they do

19 | not have." ORC § 4165.02(A)(7).

20 | 203.     Wells Fargo violated the statute when it falsely represented services available for

21 | mortgage debt assistance which it did not provide.

22 | 204.     For example, Wells Fargo deceptively represented on its website that it had

23 | services for assistance for mortgage relief, when in fact it was deceptively and without

24 | authorization, putting accounts of those inquiring about relief services into forbearance.

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

205.    Wells Fargo deceived Plaintiffs and members of the Ohio class when it claimed to have relief programs it did not have.

206.    Plaintiffs and members of the Ohio class justifiably relied upon Wells Fargo's deceptive representations regarding mortgage relief services on Wells Fargo's website, when in fact Wells Fargo was placing their accounts into forbearance without their knowledge.

207.    As a direct and proximate result of Wells Fargo's deceptive practices, Plaintiffs and the Ohio class members have suffered and will continue to suffer actual damages.

## **PRAYER FOR RELIEF**

On behalf of themselves and all other persons similarly situated, Plaintiffs respectfully pray for the following relief:

a.    An Order certifying the Classes, appointing the named Plaintiffs as class representative and Plaintiffs' attorneys as class counsel;

b.    An award of declaratory relief, including but not limited to a declaration that Wells Fargo's actions and business practices are unlawful and that Wells Fargo must comply with state and federal lending laws;

c.    An award of injunctive relief, including public injunctive relief permanently enjoining Wells Fargo from performing further unfair and unlawful acts as alleged;

d.    An Order requiring disgorgement of Defendant's ill-gotten gains to pay restitution to Plaintiffs and all members of the Classes;

e.    An award of statutory, compensatory, consequential, and punitive damages;

f.    An award of treble damages insofar as they are allowed by applicable laws;

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW        43

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

g.    All costs of prosecuting this action, including attorneys' fees and expert fees as may be allowable under applicable law;

h.    An award of pre-and post-judgment interest;

i.    The imposition of a constructive trust containing all assets, funds, and property derived from Defendant's wrongful acts, with Defendant serving as constructive trustees for the benefit of Plaintiffs and ClassMembers;

j.    An accounting of all assets, funds, revenues, and profits received and retained by Defendant as a result of their improper actions;

k.    Award appropriate individual relief as requested above; and

l.    Grant such other relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable.


RESPECTFULLY SUBMITTED this 3rd day of May, 2021.


                                        **Smith & Lowney, PLLC**

                                        By: *s/Knoll Lowney*
                                        Knoll Lowney, WSBA # 23457
                                        *s/Alyssa Englebrecht*
                                         Alyssa Englebrecht, WSBA #46773
                                        *s/Meredith Crafton*
                                        Meredith Crafton, WSBA # 46558
                                        *s/Marc Zemel*
                                        March Zemel, WSBA #44325
                                        *s/Savannah Rose*
                                        Savannah Rose, WSBA #57062
                                        Smith & Lowney, PLLC
                                        2317 E. John Street, Seattle, WA 98112
                                        Tel: (206) 860-2883; Fax: (206) 860-4187
                                        Email: knoll@smithandlowney.com
                                        alyssa@smithandlowney.com

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW        44

1
2

meredith@smithandlowney.com
marc@smithandlowney.com
savannah@smithandlowney.com

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Smith & Lowney, p.l.l.c.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883