**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION (COLUMBUS)**

| | | |
|---|---|---|
| BRIAN ECHARD and STEPHEN and HEATHER SHIMP *on behalf of themselves and all others similarly situated*, | ) ) ) ) ) | No. 2:21-CV-05080-MHW-KAJ |
| Plaintiffs, | ) ) ) | Judge Michael H. Watson <br> Magistrate Judge Kimberly A. Jolson <br><br> SECOND AMENDED COMPLAINT – CLASS ACTION |
| v. | ) ) | |
| WELLS FARGO BANK, N.A., | ) ) | JURY DEMAND |
| Defendant. | ) ) ) | |

Plaintiffs Brian Echard and Stephen and Heather Shimp ("Plaintiffs"), individually and on behalf of all others similarly situated, hereby file this class action complaint against Defendant Wells Fargo Bank, N.A. ("Wells Fargo").  Plaintiffs makes the allegations herein upon personal knowledge as to themselves and their own acts, and upon information and belief and based upon investigation of counsel as to all other matters, as set forth herein.

## I.    INTRODUCTION

1.    This lawsuit involves a nationwide forbearance scam that Wells Fargo perpetrated on consumers throughout the nation. This scam was intended to create significant wrongful profit for Wells Fargo and did so. Perhaps most troubling is that this scam took advantage of a government program that was designed to help vulnerable homeowners during the pandemic, and instead preyed upon and victimized these same vulnerable customers.

2.    While the scam was perpetrated uniformly, it had a different legal impact on borrowers who were active duty servicemembers or veterans with a U.S. Department of Veterans Affairs ("VA") guaranteed loan (hereafter "military borrowers").

Smith & Lowney, p.l.l.c.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

3. Throughout our nation's history, members of our military services have been asked to make many sacrifices for our nation. These American heroes leave family, friends, and the comforts of civilian life to answer our country's call to duty. Many also leave behind employment, a career, and financial security. For some the sacrifices go much further and can cause lasting or permanent impacts on the servicemembers and their families.

4. In return for these sacrifices, our nation provides veterans certain ongoing benefits and protections. One important benefit is that servicemembers and veterans can obtain assistance in securing a mortgage to buy a home guaranteed by the VA.

5. The VA loan program goes beyond assistance in obtaining a loan. It also provides veterans with protections and assistance throughout the period of the loan. These protections are guaranteed by statutes, regulations, and detailed guidance provided by the VA.

6. In addition to the protections guaranteed by law, military borrowers have a reasonable expectation of even greater care from mortgage lenders and servicers like Wells Fargo. Wells Fargo, like other lenders, promises to go further in assisting military borrowers to overcome bumps in the road that could otherwise lead to foreclosure or other harms. The bank promises to provide military home borrowers with a "dedicated team" of financial professionals and "expanded mortgage benefits that go beyond what the SCRA requires,"[1] including "mortgage assistance to those who can't keep up with payments."[2]

7. In 2020, through no fault of their own, military borrowers throughout the nation were faced with financial hardship because of the COVID-19 pandemic. This was a time when

[1] https://www.wellsfargo.com/mortgage/manage-account/payment-help/military (last visited May 1, 2021).
[2] https://www.wellsfargo.com/mortgage/manage-account/payment-help/military (last visited May 1, 2021).

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW          2

Smith & Lowney, p.l.l.c.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

these American heroes needed Wells Fargo to provide the "dedicated team," "dedicated attention," and "support" it promised.

8.      Instead of living up to its obligation to military borrowers under the law and the bank's promises, Wells Fargo found a way to profit off these military borrowers by wrongfully enrolling them into a forbearance program without their informed and legal consent that would only increase their financial hardship.

9.      Wells Fargo's "forbearance scam" harmed military and non-military customers across the nation, but the fraud against military borrowers is distinct and particularly egregious because they are entitled to special protections under federal law, numerous state laws, and under Wells Fargo's explicit and implicit promises to support and protect these customers.

10.     As described herein, Wells Fargo twisted a national crisis and a government relief program into a way to make profit at the expense of its military and nonmilitary customers. As a result of the COVID-19 outbreak, Congress passed the Coronavirus Aid, Relief and Economic Security ("CARES") Act in March 2020, which among other things, provides relief to millions of Americans who are struggling to pay their mortgage payment as a result of the economic difficulties caused by the pandemic.

11.     In part, the CARES Act instructed mortgagees and servicers to create mortgage forbearance provisions for all federally-backed mortgages. The CARES Act makes clear that participating in a COVID-19 mortgage forbearance program is entirely voluntary; that is, a mortgagor must be informed of the various terms and conditions of the program and then affirmatively decide to enter the program.

12.     Congress intentionally included a volitional act on the part of the mortgagor to opt into forbearance. This is because mortgage forbearance has serious consequences for

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

1    homeowners, including an inability to obtain additional credit and/or to refinance any existing

2    loans.

3    13.    Per the Consumer Financial Protection Bureau ("CFPB"), before a bank servicing

4    a loan can grant forbearance, it must receive a request for such relief and an attestation of a

5    COVID-19-related financial hardship from the borrower.

6    REQUIREMENTS FOR SERVICERS.— (1) IN GENERAL.— ***Upon
     receiving a request for forbearance from a borrower under subsection
7    (b), the servicer shall with no additional documentation required other
     than the borrower's attestation to a financial hardship caused by the
8    COVID–19 emergency*** and with no fees, penalties, or interest (beyond the
     amounts scheduled or calculated as if the borrower made all contractual
9    payments on time and in full under the terms of the mortgage contract)
     charged to the borrower in connection with the forbearance, provide the
10   forbearance for up to 180 days, which may be extended for an additional
     period of up to 180 days at the request of the borrower, provided that, the
11   borrower's request for an extension is made during the covered period,
     and, at the borrower's request, either the initial or extended period of
12   forbearance may be shortened.[3]

13   14.    Wells Fargo has unilaterally, without informed and legal consent, and without

14   requesting or receiving any financial hardship attestation, opted unwitting borrowers into its

15   COVID-19 mortgage forbearance program.

16   15.    Additionally, when borrowers logged onto Wells Fargo's website to view their

17   accounts, the webpage included a link at which borrowers could obtain information regarding

18   Wells Fargo's COVID-19 relief program. Upon the click of a button which made no mention of

19   forbearance, unsuspecting borrowers' accounts were placed into forbearance without their

20   informed knowledge or consent.

21   16.    Many Wells Fargo mortgage customers who were placed into Wells Fargo's

22   COVID-19 mortgage forbearance program received no notice that Wells Fargo had placed their

23

24   [3] https://www.congress.gov/116/bills/hr748/BILLS-116hr748enr.pdf (last visited May 1, 2021) (emphasis added).

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW        4

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

mortgages into forbearance. Some borrowers only found out (if at all) when they attempted to apply for credit, including for refinancing of their mortgage, and were denied, then learning from the credit report that their mortgage loans were in forbearance. Others found out when they attempted, but were unable, to make regularly scheduled mortgage payments with Wells Fargo.

17.    When Wells Fargo did send their customers a template notice informing them that Wells Fargo had placed their loans into forbearance, the notice was both insufficient and inaccurate.

18.    Furthermore, after illegally placing customers' accounts into forbearance, Wells Fargo perpetuated the problems for these customers by failing to properly apply payments that had been made to the mortgage, failing to properly report payments actually made to credit agencies, and failing to provide accurate and legally sufficient periodic statements to these customers.

19.    For military borrowers, this scam is even more indefensible. Wells Fargo had promised to provide military borrowers with "support," including a "dedicated team" of financial advisers. Yet, rather than providing any of those services when they were needed, Wells Fargo ran the same scam on the military customers.

20.    In addition, these military borrowers had additional legal rights available to them to address financial difficulties. But Wells Fargo never disclosed any of those protections or rights to the military borrowers before enrolling them into the forbearance program.

21.    As a result of being placed into forbearance, these homeowners, including Plaintiffs and the putative class, suffered damages including but not limited to an inability to access credit to finance to lower interest rates, which is especially egregious during this time in which mortgage interest refinance rates were historically low. They also must deal with the difficult situation of removing their mortgages from a program they did not want.

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW        5

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

22. Interest rates were at all-time lows, and many homeowners sought to take advantage of these historically low rates by refinancing. If an account is placed into forbearance, those borrowers cannot typically refinance for many months, if not years, even after bringing the account current.

23. This forbearance scam profited Wells Fargo in a number of ways, including because the bank receives additional compensation for each loan placed in forbearance. In addition, Wells Fargo directly profits from its customers inability to refinance – the harm inflicted on the customers – because this allows Wells Fargo to retain these mortgages at above-market rates. These customers are damaged, and Wells Fargo profits, by the difference between the lifetime costs of their over-market mortgage and the mortgage that they would have been entitled to if they had not been wrongfully placed in forbearance.

24. Wells Fargo has not denied many of these core allegations, stating via its spokesperson Tom Goyda that "[i]n the spirit of providing assistance, we may have misinterpreted customers' intentions in a small number of cases."[4] Although Wells Fargo did not identify the complete number of borrowers who were unwillingly placed into its forbearance program, it reported having received 1,600 complaints of unwanted forbearances.[5]

## II.  JURISDICTION AND VENUE

25. Plaintiffs invoke the jurisdiction of this Court pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601; the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 22601; and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681.

---

[4] https://www.bankingdive.com/news/wells-fargo-forbearance-mortgage-payments/582284/ (last visited May 1, 2021).
[5] https://www.nbcnews.com/business/personal-finance/1-600-customers-say-wells-fargo-paused-their-mortgage-payments-n1241620 (last visited May 1, 2021).

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

26. In addition, this Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) and (6), because the aggregate claims of the proposed class members exceed $5,000,000, and at least one Class member resides in a different state than Defendant.

27. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' common law claims and state law claims because those claims are so related to the claims within the Court's original jurisdiction that they form a part of the same case or controversy under Article 3 of the U.S. Constitution.

28. This Court has personal jurisdiction over Defendant, as it purposefully availed itself of the privilege of conducting activities in Washington and established minimum contacts sufficient to confer jurisdiction. Defendant conducts business activities which are the subject of the present complaint in Washington.

29. Venue is proper in this Court, as Defendant conducts business within the district, and some business activities which are the subject of this complaint occurred therein.

### III. PARTIES

30. Plaintiff Brian Echard is a resident of Westerville, Ohio.

31. Plaintiff Brian Echard's mortgage is serviced by Wells Fargo.

32. Wells Fargo is also the lender/creditor for Plaintiff Brian Echard's mortgage.

33. Plaintiffs Stephen and Heather Shimp are married residents of Ohio, and are currently living in Okinawa, Japan due to Mr. Shimp's military service.

34. Plaintiff Heather Shimp's mortgages were serviced by Wells Fargo.

35. Wells Fargo Bank, N.A. ("Wells Fargo Bank") is a national banking association which conducts mortgage servicing operations through its Wells Fargo Home Mortgage division,

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

which is headquartered in Des Moines, Iowa. Wells Fargo Bank operates throughout Ohio and every state in the country.

## IV.  FACTUAL ALLEGATIONS

**A.**  **Wells Fargo provides special programs and promises to military borrowers.**

36.  Wells Fargo, like many banks and lenders, competes for the business of military borrowers by promising support, dedicated services, and protections beyond those required by law.

37.  Wells Fargo claims to be "Committed to our Military Veterans" and that it has been "Proudly supporting military veterans and their families for more than 160 years."[6] But it makes its strongest promises to military home borrowers:

> ***It's our honor to serve you – every step of the way***
> You've served our country - and Wells Fargo is committed to serving you. Our goal is to enable long-lasting, sustainable homeownership, provide home financing education and support you with career transition.[7]

38.  Wells Fargo maintains a website dedicated to wooing military borrowers into its mortgage programs, promising to provide "Dedicated attention. Specialized services." It claims, "We appreciate the dedication of our nation's military personnel and their families. We are committed to providing home financing options to meet the unique needs of the military and veteran community."[8] The bank promises:

> **A dedicated team – just for you.**  We have a team of financial professionals who've been specially trained to meet your specific needs.  Their understanding of military and veteran culture makes them uniquely qualified to help you achieve your homeownership goals.

---

[6] https://www.wellsfargo.com/military/veterans/ (last visited May 1, 2021).
[7] https://www.benefits-mortgage.com/loans/mil0307/index-affinity.page?_ga=2.28828095.286286478.1611800248-1619906565.1611800248 (last visited May 1, 2021).
[8] https://www.benefits-mortgage.com/loans/mil0307/loan-programs/military-loans.page (last visited May 1, 2021).

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

That dedicated webpage also promises:

**Help for military personnel**

Active-duty service members and their families facing payment challenges may qualify for <u>special military benefits</u>.

39.      In addition, Wells Fargo states that it promises to provide military borrowers with protections that goes beyond those required by law: "The Servicemembers Civil Relief Act (SCRA) may offer protection or relief to members of the military, their spouses, partners, and dependents. Wells Fargo appreciates the service of America's military personnel. That's why we offer expanded mortgage benefits that go beyond what the SCRA requires."[9] These include:

**Expanded benefits**

In addition to the benefits offered under SCRA, Wells Fargo helps service members by:

- Providing mortgage assistance to those who can't keep up with payments.
- Applying foreclosure protection if service members are deployed in a hazardous area or deployed internationally in readiness for military action.[10]

40.      Wells Fargo tells military borrowers that it has "home financing specialists" that are "here to support" military borrowers. It maintains a "Wells Fargo Military Bank Center."[11] Additionally, Wells Fargo's military website states, "Whether you're buying or refinancing a home, responding to PCS orders, or simply researching VA loan benefits, our home financing specialists are here to support you."[12] Defendant touted itself as a source of trusted information for servicemembers about SCRA benefits and VA backed loans.

**B.      Military borrowers are entitled to special legal protections.**

---

[9] https://www.wellsfargo.com/mortgage/manage-account/payment-help/military (last visited May 1, 2021).
[10] https://www.wellsfargo.com/mortgage/manage-account/payment-help/military (last visited May 1, 2021).
[11] https://www.wellsfargo.com/mortgage/manage-account/payment-help/military (last visited May 1, 2021).
[12] https://www.wellsfargo.com/military (last visited May 1, 2021).

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

41.     C.F.R. § 38.4300-93 and the VA Servicer Handbook,[13] which is a handbook provided to servicers by the VA itself, provide special legal protections to military borrowers with a VA-backed loan. Servicers owe these borrowers a higher duty of care and disclosure, which include but are not limited to specific methods of keeping borrowers informed, quality control procedures, avoiding foreclosure whenever possible, explaining all loss mitigation options, continuing loss mitigation throughout the foreclosure process, exhausting all loss mitigation efforts before foreclosure, not allowing the final payment to be more than twice the amount of the preceding installments, providing special options to borrowers in distress as the result of a disaster, the right to prepay, and allowing prepayments to be reapplied to prevent subsequent default.

42.     Moreover, the VA provides financial counseling to help military borrowers with a VA loan.  As the VA website explains:

**Can I get VA financial counseling to help avoid foreclosure?**

- **If you're a Veteran or the surviving spouse of a Veteran,** we'll provide financial counseling—even if your loan isn't a VA direct or VA-backed loan

- **If you have a VA direct or VA-backed loan,** you can contact us anytime to request that we assign a VA loan technician to your loan. Our technicians can offer you financial counseling and help you deal with your servicer (or work with you directly in the case of a VA direct loan).[14]

43.     The VA specifically advises military borrowers to carefully consider the pros and cons before requesting forbearance as result of the pandemic:

**"Should I request forbearance?**  Only you can make this decision, but here are some things to consider. If you can continue making payments despite the financial impact of COVID-19, you may not want to request forbearance. While not making monthly mortgage payments for six months may seem to have immediate benefits, the payments

---

[13] Available at https://www.benefits.va.gov/WARMS/M26_4.asp (last visited May 1, 2021).
[14] https://www.va.gov/housing-assistance/home-loans/trouble-making-payments/ (last visited May 1, 2021).

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

missed during the COVID-19 forbearance period will become due when the COVID-19 forbearance ends. Please see the questions and answers above to understand how this may affect you later.[15]

**C.     The CARES Act**

44.     In response the COVID-19 outbreak, on March 27, 2020, Congress passed the CARES Act. A component of the CARES act aid package was designed to assist American homeowners with federally backed mortgages who were in distress as a result of the COVID-19 pandemic.

45.     Amongst other things, the CARES Act provided homeowners with Government Sponsored Enterprises ("GSE") loans experiencing financial hardships because of COVID-19 with the option to request up to 180 days of forbearance on their mortgage. Specifically, Section 4022(b) provides in relevant part that:

> (1) IN GENERAL.—During the covered period [beginning February 15, 2020 and ending on June 30, 2020], a borrower with a Federally backed mortgage loan experiencing a financial hardship due, directly or indirectly, to the COVID-19 emergency *may request* forbearance on the Federally backed mortgage loan, regardless of delinquency status, by—
> > (A) submitting a request to the borrower's servicer and
> > (B) affirming that the borrower is experiencing a financial hardship during the COVID-19 emergency.
>
> (2) DURATION OF FORBEARANCE.— *Upon a request by a borrower for forbearance* under paragraph (1), such forbearance shall be granted for up to 180 days, and shall be extended for an additional period of up to 180 days *at the request of the borrower*, provided that, *at the borrower's request*, either the initial or extended period of forbearance may be shortened.

---

[15] https://benefits.va.gov/homeloans/cares-act-frequently-asked-questions.asp#FAQ4 (last visited May 1, 2021).

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW        11

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

1    *See* CORONAVIRUS AID, RELIEF, AND ECONOMIC SECURITY ACT, PL 116-136, March

2    27, 2020, 134 Stat. 281, § 4022(b) (emphasis added).

3        46.     Section 4022(c) of the CARES Act provides in relevant part that:

4            ***Upon receiving a request for forbearance from a borrower***
           under subsection (b), the servicer shall with no additional

5            documentation required other than the borrower's
           attestation to a financial hardship caused by the COVID-

6            19 emergency and with no fees, penalties, or interest
           (beyond the amounts scheduled or calculated as if the

7            borrower made all contractual payments on time and in full
           under the terms of the mortgage contract) charged to the

8            borrower in connection with the forbearance, provided the
           forbearance up to 180 days, which may be extended for an

9            additional period of up to 180 days at the request of the
           borrower, provided that, the borrower's request for an

10            extension is made during the covered period, and, at the
           borrower's request, either the initial or extended period of

11            forbearance may be shortened.

12    *Id*., § 4022(c) (emphasis added).

13        47.     The plain language of these provisions makes it abundantly clear that

14    participation in a mortgagee's or servicer's mortgage COVID-19 forbearance program is

15    voluntary and only to be initiated at the request of the mortgagor clients.

16        48.     For mortgagors to avail themselves of the COVID-19 mortgage forbearance

17    option, they were instructed to contact their loan servicer to obtain information and, if

18    appropriate, request forbearance.[16]

19        49.     The CARES Act also provides that lenders are not permitted to report forborne

20    payments to the credit bureaus, which means that borrowers who request forbearance are not

21    supposed to see any impact on their credit scores as a result of their participation in forbearance

22

23    _____

24    [16] https://www.consumerfinance.gov/coronavirus/mortgage-and-housing-assistance/request-forbearance-or-mortgage-relief/ (last visited May 1, 2021).

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

programs. *See* CORONAVIRUS AID, RELIEF, AND ECONOMIC SECURITY ACT, PL 116-136, March 27, 2020, 134 Stat. 281, § 4021.

50.     Wells Fargo stated publicly in July 2020 that it had deferred 2.5 million payments for consumer and small business customers since the start of the pandemic.[17]

**D.     Wells Fargo Unilaterally and/or Without Informed Consent Opted Homeowners into its Forbearance Program.**

51.     Since the passage of the CARES Act, Defendant unilaterally placed borrowers into its mortgage forbearance programs without informed or lawfully required consent.

52.     Thousands of homeowners have been put into mortgage forbearance programs they did not knowingly request, causing substantial problems for those homeowners, including preventing homeowners from taking out new home loans or refinancing their existing mortgages.

53.     Wells Fargo's practice of placing unwitting customers into forbearance has prompted hundreds of consumer complaints. For instance, complaints filed with the CFPB have risen dramatically since the beginning of the pandemic, and many of those have come from homeowners who complain that they were placed in forbearance without requesting it.[18]

54.     In particular, as one consumer told the CFPB, a Wells Fargo employee admitted "that the system is like a 'hair trigger'" automatically placing loans into forbearance "even though I did nothing to start a forbearance."[19]

---

[17] https://www.bankingdive.com/news/wells-fargo-forbearance-mortgage-payments/582284/ (last visited May 1, 2021).

[18] https://www.cnn.com/2020/05/20/success/mortgage-forbearance-homeowner-complaints-coronavirus/index.html (last visited May 1, 2021).

[19] https://www.consumerfinance.gov/data-research/consumer-complaints/search/detail/3658898 (last visited May 1, 2021).

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW          13

55.     Wells Fargo has not denied these allegations, stating via its spokesperson Tom Goyda that "[i]n the spirit of providing assistance, we may have misinterpreted customers' intentions in a small number of cases."[20]

56.     The actions taken by Defendant were in direct contravention of the CARES Act requirements that forbearances be provided in response to the request of the borrower, and with an attestation of hardship due to COVID-19. In many instances, the borrowers received no notice that they had been placed into forbearance at all, and in those instances where borrowers received some notice, it was woefully inadequate under the requirements of RESPA, 12 U.S.C. §§ 2601 *et seq.*

**E.     Wells Fargo Failed to Properly Manage Mortgages Once in Forbearance.**

57.     Wells Fargo's illegal actions went beyond enrolling unwitting customers into its forbearance program. Once customers were wrongfully enrolled into the program, Wells Fargo continued to act negligently and unlawfully by (1) failing to properly apply payments made by customers to the mortgage; (2) failing to properly report payments made by customers to credit agencies; and (3) failing to provide accurate and legally sufficient period statements to these customers.

**F.     Wells Fargo Benefits Financially from its Practice of Unilaterally Opting Homeowners into its Forbearance Program.**

58.     Wells Fargo is compensated financially by the various federal agencies on whose behalf it services borrowers' loans when it filed forbearance notices and when it completes loan retention workout options with borrowers whose loans have been placed into forbearance pursuant to the CARES Act.

---

[20] https://www.bankingdive.com/news/wells-fargo-forbearance-mortgage-payments/582284/ (last visited May 1, 2021).

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW          14

59.     For every Fannie Mae and Freddie Mac mortgage loan Wells Fargo places into forbearance, Wells Fargo stands to receive a minimum of $500 and up to $1,000 in incentive payments, depending on which workout option Wells Fargo's borrower accepts at the conclusion of the forbearance term.

60.     For Ginnie Mae Loans Wells Fargo places into forbearance, Wells Fargo is also entitled to receive incentive compensation for post-forbearance loan workouts, although the structure for calculating the amount of these incentive payments and the available workout options are different (in immaterial ways) for Ginnie Mae loans, depending on whether the loan was originated by the VA, the USDA, or the FHA.

61.     Wells Fargo's portfolio of Fannie Mae and Freddie Mac loans carries principal and interest payment advance obligations that are similar to its advance obligations for Ginnie Mae loans, with one important difference specifically applicable to loans in CARES Act forbearance: Wells Fargo's principal and interest advance obligations on Fannie Mae and Freddie Mac loans that received a CARES Act forbearance terminate after Wells Fargo makes four advances of borrowers' missed principal and interest payments.

62.     So long as Fannie Mae and Freddie Mac loans are placed into a CARES Act forbearance, Wells Fargo is not required to repurchase delinquent Fannie Mae and Freddie Mac loans in order to be allowed to cease making principal and interest advances. Instead, after Wells Fargo makes advances for four monthly principal and interest payments missed by the borrower on a loan that Wells Fargo has placed in a CARES Act forbearance, under applicable Fannie Mae and Freddie Mac servicing guidelines, Wells Fargo no longer has any further obligation to advance principal and interest payments on the loan.

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW     15

Smith & Lowney, p.l.l.c.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

63. Therefore, regardless of whether a loan is backed by Ginnie Mae, Fannie Mae, or Freddie Mac, Wells Fargo benefits from placing loans into CARES Act forbearances by limiting its exposure to principal and interest advance obligations in the event of future defaults.

**G. Unwanted Forbearance Injures Consumers**

64. Wells Fargo has engaged in a practice of unilaterally opting mortgagors into unwanted forbearance programs which has caused an injury to those homeowners.[21]

65. Even if Wells Fargo does not report forborne accounts as delinquent, there are nonetheless many practical and immediate impacts of participating in a mortgage forbearance program; mainly, participation in a forbearance program prohibits homeowners from taking out new loans or refinancing their existing mortgages.

66. Wells Fargo has made notes on the reports they send to credit reporting agencies that the homeowners who they have placed into forbearance – including those who never requested it – have suspended their mortgage payments.[22]

67. Fannie Mae and Freddie Mac, which, along with the Federal Housing Administration and the VA, who fund or insure the vast majority of mortgages from lenders, do not allow borrowers with a loan in forbearance to either refinance or to obtain a new loan until one year after the loan payments are up to date again.

68. Wells Fargo has also failed to report payments made by borrowers to the credit reporting agencies after those borrowers discover they have been placed into forbearance and commence making payments again.

---

[21] https://www.cnn.com/2020/05/20/success/mortgage-forbearance-homeowner-complaints-coronavirus/index.html (last visited May 1, 2021).
[22] https://www.cnbc.com/2020/05/12/coronavirus-some-homeowners-getting-mortgage-bailouts-by-mistake.html (last visited May 1, 2021).

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

69. Some individuals, including Plaintiff Brian Echard, after learning that their mortgages had been placed into forbearance noticed that their credit scores had declined as a result of Wells Fargo's illegal actions.

**H.  Plaintiff Brian Echard**

70. Plaintiff Brian Echard has a mortgage for which Wells Fargo is the lender and servicer. Wells Fargo collects payments and performs services for Mr. Echard's mortgage secured to his primary residence located in Westerville, Ohio.

71. The contracts applicable to Mr. Echard's mortgage include: the "Security Instrument" which is "the Mortgage" document itself between Plaintiff and Wells Fargo dated September 20, 2016 and "the Note," which is the promissory note signed by Borrower and dated September 20, 2016.

72. Mr. Echard is a military veteran. He began his military career as an Army ROTC cadet. After graduating from college in 1996, he was commissioned as second lieutenant in the Army Reserves. In 2001, he was considering ending his military career at the end of his eight-year contractual obligation to the U.S. Army. However, as a result of the terrorist attack on September 11, 2001, he chose to remain in the military and commit to accepting a company commander role. Mr. Echard and his unit were mobilized in 2003 and deployed to Iraq in 2004, where they spent 385 days. His unit was the last unit in Operation Iraqi Freedom II to leave the theater of war. Mr. Echard transitioned back to civilian life in 2005 after returning from deployment.

73. Mr. Echard's mortgage is a VA backed mortgage.

74. Prior to March 2020, Mr. Echard had setup automatic payment withdrawal for his mortgage with Wells Fargo.

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

75.     Around March 31, 2020, Mr. Echard submitted an inquiry to Wells Fargo to ask about payment deferment options, as he was concerned about his future financial security in light of the pandemic.

76.     On March 31, 2020, Wells Fargo responded via email encouraging Mr. Echard to "view the self-service options available for your account on wellsfargo.com or through the Wells Fargo Mobile app . . . ." Despite the assurance that Wells Fargo gives to military borrowers, it offered him no "support." It did not explain to him the rights of military borrowers. It did not connect him to the supposed "dedicated team" that was supposed to help military borrowers attain sustainable homeownership.

77.     Sometime between April 2 and April 8, 2020, Mr. Echard logged into his Wells Fargo account on the Wells Fargo website. During that website visit, Mr. Echard did not knowingly agree to a forbearance. As a former bank employee, he understands the significance of a forbearance and would not have knowingly signed up for forbearance on his mortgage. Additionally, because Mr. Echard had a VA backed loan, he knew there were other types of relief and assistance available to him besides placing the account into forbearance. Yet, that website visit caused Wells Fargo to place him into forbearance.

78.     On April 8, 2020, Mr. Echard received a letter from Wells Fargo which confirmed that Wells Fargo had placed Mr. Echard's loan into forbearance.  This letter, which was issued after the loan was wrongfully placed in forbearance, was designed to be misleading.  It repeatedly uses the term "short-term payment relief," rather than forbearance. Only once, in an attachment, is the term forbearance used. It also states, "Thank you for letting us know about a financial hardship you're facing," when Mr. Echard never informed Wells Fargo of a financial hardship or gave Wells Fargo any financial information. Similarly, the attachment to this letter states, "New Monthly Payment Amount: $0.00. This payment suspends the current monthly

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

mortgage payment and it's based on your ability to pay." Mr. Echard never gave Wells Fargo information about his ability to pay.

79.     Wells Fargo unilaterally suspended Mr. Echard's automatic monthly payments without his request to revoke his authorization for monthly payments. On July 21, 2020, Mr. Echard learned he was in forbearance when he attempted to refinance his mortgage through NewDay USA and was denied.

80.     On August 14, 2020, Mr. Echard received a letter from Wells Fargo. The cover sheet to this letter stated, "Due to the COVID-19 crisis, we've provided you with short-term payment suspension (forbearance). We are legally required to send you the enclosed letter. This letter is for your information only." (emphasis in original). This letter was specifically "For customers with VA loans." It also states, "We would also like to notify you of the availability of homeownership counseling, and any rights you or your dependents have under the Servicemembers Civil Relief Act." Thus, it is clear that Wells Fargo understood that Mr. Echard was a military borrower.

81.     The August 14, 2020 letter Mr. Echard received from Wells Fargo was also designed to be misleading. It states, "You do not need to contact us as there is nothing for you to do right now. You are not required to make any payments during the forbearance. We will contact you near the end of the forbearance to review your financial situation and discuss options." Then this same letter also states that Mr. Echard's account is "due for 4 payment(s) for the months of May 1, 2020 through August 14, 2020 . . . . The loan is currently due for May 1, 2020 and due for each subsequent monthly payment since that date." On its face, this letter is conflicting and confusing, as it says both that he does not need to do anything and is not required to make payment and also that his account is currently due.

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

1    82.    On September 9, 2020, Mr. Echard received a letter from Wells Fargo in response

2  to a complaint, stating, "We apologize for any confusion this process may have caused you." The

3  letter contains inconsistencies. On the one hand it states, an 'account in forbearance' code on his

4  credit report "does not affect your FICO credit score." But it acknowledged that "the fact that

5  your account is in forbearance may affect your ability to qualify for new credit or refinance."

6  Furthermore, this letter states, "We can confirm that once you agreed to the short term assistance

7  being placed on the account, we sent you a letter dated April 08, 2020." Mr. Echard never agreed

8  to short term assistance.

9    83.    After Mr. Echard learned that his account had been wrongfully placed in

10 forbearance, he resumed payments on his mortgage. However, Wells Fargo failed to properly (1)

11 apply those payments to the mortgage; (2) report those payments to credit agencies; or (3)

12 calculate information on subsequent periodic payments.

13   84.    Mr. Echard's August 28, 2020 statement from Wells Fargo states his mortgage

14 payment made August 28, 2020 is "unapplied."

15   85.    Mr. Echard's October 18, 2020 statement from Wells Fargo states his mortgage

16 payment made October 17, 2020 is "unapplied."

17   86.    Mr. Echard's December 7, 2020 statement from Wells Fargo states his November

18 27, 2020 payment is "unapplied."

19   87.    Mr. Echard's January 14, 2021 Wells Fargo states both his January 3, 2021 and

20 his November 27, 2020 payments are "unapplied."

21   88.    On December 1, 2020, Mr. Echard's FICO Score 8 dropped by at least 74 points

22 from 747 to 673.

23   89.    Because of the reduction in Mr. Echard's FICO Score, he was unable to qualify

24 for the best refinancing rates. Based on information and belief, the letter Mr. Echard received

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW          20

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

from Wells Fargo dated April 8, 2020 is a form letter which Wells Fargo also sent to all Nationwide Class members, all Nationwide Military Class members, and all Ohio Class members.

90. Based on information and belief, the letter Mr. Echard received from Wells Fargo dated August 14, 2020 is a form letter which Wells Fargo also sent to all Nationwide Military Class members.

**I. Plaintiffs Stephen and Heather Shimp**

91. Plaintiffs Stephen and Heather Shimp had several mortgages for which Wells Fargo was the servicer. Wells Fargo collected payments and performed services for the Shimp's mortgages secured to properties located in Indianapolis, Indiana and Ogden, Utah.

92. Due to Lieutenant Stephen Shimp's military service, the Shimps move often and are currently residing in Okinawa, Japan. Lieutenant Shimp became a commissioned officer in the Navy in 2017 through the Health Professions Scholarship Program for dental school. He went to officer school and received his first active duty assignment in 2020.

93. Lieutenant Shimp is currently on active duty and was on active duty at the time Wells Fargo placed the Shimp's mortgages into the CARES Act forbearance program.

94. The contracts applicable to the Shimp's mortgages include: the "Security Instrument" which is "the Mortgage" document itself between Heather Shimp and the lender, NBH Bank, dated June 26, 2018 for the first property located in Indianapolis, Indiana; "the Note," which is the promissory note signed by Heather Shimp and dated June 26, 2018 for the first property located in Indianapolis, Indiana; the "Security Instrument" which is "the Mortgage" document itself between Heather Shimp and the lender, NBH Bank, dated June 22, 2018 for the second property located in Indianapolis, Indiana; "the Note," which is the promissory note signed by Heather Shimp and dated June 22, 2018 for the second property

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW        21

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

1  located in Indianapolis, Indiana; the "Security Instrument" which is the "Deed of Trust"

2  document itself between Heather Shimp and the lender Security National Mortgage Company,

3  dated March 31, 2016 for the property located in Ogden, Utah; and "the Note," which is the

4  promissory note signed by Heather Shimp and dated March 31, 2016 for the property located in

5  Ogden, Utah.

6        95.    Prior to March 2020, the Shimps had set up automatic payment withdrawal for

7  their mortgages with Wells Fargo.

8        96.    Around April 6, 2020, Ms. Shimp logged into her Wells Fargo account on the

9  Wells Fargo website. Based upon that interaction, Wells Fargo placed three of her four

10  mortgages into forbearance. Ms. Shimp did not request a forbearance on her fourth mortgage

11  serviced by Wells Fargo.

12        97.    Around April 21, 2020, Ms. Shimp called Wells Fargo to inquire about her

13  options regarding suspending payments on one of her mortgage accounts due to the COVID-19

14  pandemic.

15        98.    Around April 8, 2020, Wells Fargo placed all of the Shimp's mortgage accounts

16  into the COVID-19 forbearance program without Ms. Shimp's informed consent.

17        99.    Wells Fargo unilaterally suspended Ms. Shimp's automatic monthly payments

18  without her request to revoke her authorization for monthly payments.

19        100.    The Shimps did not receive any written communication from Wells Fargo

20  regarding the placement of their accounts into forbearance or the cancellation of their automatic

21  payments.

22        101.    In June of 2020, the Shimps learned they were in forbearance and that their

23  automatic payments had been cancelled when they attempted to purchase a new home and were

24  denied, due to their mortgage accounts with Wells Fargo being in forbearance. Due to this denial,

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

1  the Shimps were forced to rent an AirBnB to live in while this issue was resolved. To make

2  matters worse, Ms. Shimp was at the end stages of her pregnancy at this time. Ultimately, the

3  closing date on their new home was delayed by approximately one month.

4      102.    After Ms. Shimp learned that her accounts had been wrongfully placed in

5  forbearance, she resumed payments and paid all the missed payments. However, Wells Fargo

6  failed to properly (1) apply those payments to the mortgage; (2) report those payments to credit

7  agencies; or (3) calculate information on subsequent periodic payments.

8  **J.    Class Action Allegations**

9      103.    Plaintiffs brings this action pursuant to Federal Rule of Civil Procedure 23(b)(3)

10  on behalf of themselves and all others similarly situated. They, along with other class members

11  who may be named as class representatives at the time a motion is filed to certify a proposed

12  class, will represent the following classes:

13      **Nationwide Military Class**:

14      All military borrowers with a mortgage loan serviced by Wells Fargo whose mortgage
    was placed into Wells Fargo's COVID-19 Mortgage Forbearance Program without their

15  informed and lawful consent.

16      **Nationwide Class:**

17      All customers with a mortgage loan serviced by Wells Fargo whose mortgage was placed
    into Wells Fargo's COVID-19 Mortgage Forbearance Program without their informed and

18  lawful consent.

19      **Ohio Class:**

20      All Ohio customers with a mortgage loan serviced by Wells Fargo whose mortgage was
    placed into Wells Fargo's COVID-19 Mortgage Forbearance Program without their informed

21  and lawful consent.

22      104.    <u>Numerosity</u>- Members of each of the three proposed classes are so numerous that

23  joinder of all members is impracticable. The disposition of their claims in a class action will

24  provide substantial benefits to both parties and the Court. Upon information and belief,

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW        23

Defendant, either directly or through affiliated entities, is in possession of the names and addresses of all class members. While the exact number of Class Members remains unknown at this time, upon information and belief, there are thousands of putative Class Members throughout the United States who are generally ascertainable through discovery. The information currently known to Plaintiffs that Wells Fargo has received at least 1,600 complaints is already sufficient to support the numerosity requirement for a class action.[23]

105.    Class treatment is particularly appropriate here because the national presence of Defendant means that it conducts business in every jurisdiction in the United States. Further, this matter involves multiple federal statutes which were extensively and harmfully misapplied by Defendant.

106.    <u>Commonality</u>- This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members. These common legal and factual questions include, but are not limited to, the following:

a.    Whether Defendant owed and breached duties owed to the Nationwide Military Class, including statutory, contractual, or fiduciary duties;

b.    Whether Wells Fargo negligently or intentionally enrolled customers in forbearance programs without their informed consent;

c.    Whether Wells Fargo's actions or inactions violated the consumer protection statutes invoked herein;

d.    Whether the Plaintiffs and putative class were damaged by Wells Fargo's conduct and, if so, the appropriate amount of damages;

---

[23] https://www.bankingdive.com/news/wells-fargo-forbearance-mortgage-payments/582284/ (last visited May 1, 2021).

Smith & Lowney, p.l.l.c.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

e.  Whether, because of Wells Fargo's misconduct, Plaintiffs and the putative Class Members are entitled to equitable and declaratory relief, and if so, the nature of such relief;

107.  <u>Typicality</u>- The representative Plaintiffs' claims are typical of the claims of members of the Classes. Plaintiffs and all the members of the Classes have been injured by the same wrongful practices of Wells Fargo. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of members of the Classes and are based on the same legal theories.

108.  <u>Adequacy</u>- Plaintiffs will fully and adequately assert and protect the interests of the Classes, and have retained class counsel who are experienced and qualified in prosecuting class actions, and in particular, class actions brought on behalf of military customers. Neither the Plaintiffs nor their attorneys have any interests contrary to or in conflict with the Classes.

109.  <u>Predominance and Superiority</u>- A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class Members is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class Members are likely in the millions of dollars, the individual damages incurred by each Class Member are too small to warrant the expense of individual suits. The likelihood of individual Class Members prosecuting their own separate claims is remote, and even if every member of the Classes could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Moreover, active duty servicemembers who are part of the Nationwide Military Class and who are deployed do not have the time or resources to undertake individual litigation from their deployment.

110.  The nature of this action and the nature of laws available to Plaintiffs and the Classes make the use of the class action device a particularly efficient and appropriate procedure

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW          25

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

to afford relief to Plaintiffs and the Class Members for the wrongs alleged because Wells Fargo would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class and will establish the right of each member of the Class to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

## V.      CAUSES OF ACTION

## <u>FIRST CAUSE OF ACTION</u>

**Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing**

111.    Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

112.    Plaintiffs bring this claim on behalf of themselves and all three classes.

113.    Wells Fargo's forbearance scam was furthered by its breach of the notice provision of the mortgage contract, which requires that all notices "in connection" with the mortgage be "in writing," sent "by first class mail to Lender's address stated herein," and "shall not be deemed to have been given to Lender until actually received by Lender." Mortgage Sec. 15. This provision exists to ensure that communications between a borrower and lender are clear and traceable. Wells Fargo breached this provision by treating a vague internet communication as a formal notice in connection with the mortgage. Wells Fargo designed its electronic statements and website to solicit vague and informal communications from vulnerable customers, and then improperly treated those vague and informal communications as formal notices under their mortgages.

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

114.    Had Wells Fargo adhered to contractual notice requirements, customers across the nation would not have been placed into forbearance without consent. This contractual breach evaded the procedural protections that should have allowed customers to make and communicate their decision about whether or not to enter forbearance. This breach removed all clarity and traceability from this critical decision and communication. Because customers were left without volition in the matter and never made a "decision," it did not matter that the VA advised military borrowers to carefully consider the pros and cons before requesting forbearance.

115.    By unilaterally placing Plaintiffs and Class Member mortgage loans in forbearance without their consent, Wells Fargo interfered with Plaintiff's ability to act upon the contracts including Term 1, "Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges" of the Mortgage and Term 3, "Payments" of the Note.

116.    Once Wells Fargo placed a customer into forbearance, it failed to properly apply payments made by customers to their mortgage. This constituted a breach of the mortgage, including Section 2, "Application of Payments or Proceeds."

117.    In addition, Wells Fargo's actions violated federal regulations that were incorporated into the contracts. Section 16 of the mortgage states that "All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law."  Thus, rights and obligations in the mortgage document concerning application of payments, notices, and forbearance are subject to "requirements and limitations of Applicable Law." In addition, the Note explicitly states the regulations under 38 C.F.R. Part 36 and 38 U.S.C. Chapter 37 "shall govern the rights, duties, and liabilities of the parties." By violating requirements and limitations of Applicable Law relating to application of payments, notices, and forbearance, Wells Fargo breached the mortgage contracts.

Smith & Lowney, p.l.l.c.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

118.     Wells Fargo breached the contracts by failing to adhere to the VA Regulations that are incorporated into the contracts.  For example, 38 C.F.R. § 36.4350(b) requires loan holders to have a system to promptly respond to inquiries, which Wells Fargo breached by failing to have such system in place and by failing to actually promptly respond to plaintiffs' multiple inquiries about being wrongfully placed into forbearance. Wells Fargo also failed to comply with 38 C.F.R. §. 36.4350(f) requiring the bank to have in place a system to comply with consumer protections in the Real Estate Settlement Procedures Act and to otherwise protect customers who are deemed to be in delinquency.

119.     Plaintiffs, the Class Members, and Wells Fargo were parties or beneficiaries to contracts that contain an implied covenant of good faith and fair dealing. The implied covenant obligates the parties to cooperate so that each party may obtain the full benefit of performance of the contracts. The duty of good faith and fair dealing means that parties may not interfere with or fail to cooperate in the other party's performance. Neither party may engage in conduct that impairs or prevents the other party from enjoying the benefits of the contracts or engage in conduct that prevents the other party from performing under the contracts.

120.     Wells Fargo owed the Nationwide Military Class members an additional duty of good faith, as these borrowers are entitled to special protections for VA backed loans, under the SCRA, and additional rights and care under Wells Fargo's own promises made to military borrowers.

121.     Wells Fargo knows which of its customers are military borrowers and knows that such military borrowers are entitled to additional rights and care.

122.     Military borrowers have a reasonable expectation that Wells Fargo will take additional care to inform them of their rights and options before placing them into a program that will negatively impact their financial status and their ability to avoid foreclosure. Military

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW          28

Smith & Lowney, p.l.l.c.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

borrowers received such promises of care from Wells Fargo and are parties to a contract that requires Wells Fargo to take additional care.

123.    By failing to meet its obligations of candor and care, terminating monthly payments without request, and placing Plaintiffs and Class Members in forbearance without their informed and legal consent, Wells Fargo frustrated and interfered with their ability to perform under the contract including their ability to make contractual periodic payments, and failed to cooperate with the Class Members' performance of their contracts.

124.    No reasonable party would expect that Wells Fargo would end automatic payments or put their mortgage into forbearance without informed, legal consent. Military borrowers have additional reasons to believe this would not occur.

125.    Wells Fargo engaged in conduct that was contrary to the spirit of the contracts and the Class Members' rights thereunder. Wells Fargo lacked diligence in performing its duties, acted recklessly in its servicing of the Class Members' mortgages, and abused its power by placing loans in forbearance without informed and legal consent for its own interest.

126.    By its actions, Wells Fargo engaged in conduct that was contrary to the spirit of the contracts, lacked diligence, and constituted an abuse of its power.

127.    Wells Fargo knew, reasonably should have known, or recklessly disregarded their duty to treat Plaintiffs and Class Members fairly and deal with them in good faith.

128.    Wells Fargo's negligence, breach of duties, and breach of contract were the proximate cause of damages sustained by the Plaintiffs and the Classes. Plaintiffs and Class Members' damages include, but are not limited to, damage to their credit including increased borrowing costs, increased interest accrued as a result of the forbearance, and an inability to refinance while in forbearance.

## SECOND CAUSE OF ACTION

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

**Breach of Fiduciary Duty**

129.    Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

130.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Military Class.

131.    Defendant did not have a typical arms-length lender/borrower relationship with Plaintiffs and the Nationwide Military Class Members. In the unique facts of this case, Defendant took on a role of fiduciary to the Plaintiffs and the Nationwide Military Class.

132.    The facts giving rise to the fiduciary duty include by are not limited to the following:

- Plaintiffs and members of the Nationwide Military Class are afforded special protections for their VA backed loans.

- Defendant specifically marketed to servicemembers, and particularly to those servicemembers who were deployed overseas[24];

- Defendant volunteered advice to servicemembers and their families with the intent that Defendant would become their trusted advisor on financial and non-financial matters. The website for Defendant's proprietary program, wellsfargo.com/military, states, for example: "Whether you're buying or refinancing a home, responding to PCS orders, or simply researching VA loan benefits, our home financing specialists are here to support you." Defendant touted itself as a source of trusted information for servicemembers about SCRA benefits and VA backed loans.

---

[24] https://www.wellsfargo.com/military (last visited May 1, 2021).

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW        30

133.    Defendant breached the fiduciary duties owed to Plaintiffs and the Nationwide Military Class, causing loss of access to credit, reputational damage, frustration, outrage, and various other pecuniary and general damages, and entitling Plaintiffs and the Nationwide Military Class to restitution and other equitable remedies.

## THIRD CAUSE OF ACTION

### Fraud

134.    Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

135.    Plaintiffs bring this action on behalf of themselves and all three classes.

136.    Wells Fargo made material omissions of fact in failing to disclose to Plaintiffs and Class Members that it had placed their loans into forbearance without their informed and legal consent.

137.    Wells Fargo also made material omissions of fact in failing to disclose that a customer's account would be placed into forbearance by clicking a button on the Wells Fargo website that made no mention of forbearance.

138.    Wells Fargo made further misleading and deceptive representations in form letters sent to Plaintiffs and Class Members after placing their accounts into forbearance without their informed and legal consent. These misrepresentations and false statements, which were designed by Wells Fargo to be confusing and misleading, include but are not limited to using the term "short-term payment relief," rather than forbearance; stating that the customer had informed Wells Fargo about financial hardships when the customer never gave Wells Fargo such information; stating that the new payment amount was based on the customer's ability to pay

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW        31

Smith & Lowney, p.l.l.c.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

1    when the customer never gave Wells Fargo information about his ability to pay; stating both that

2    the customer is not required to make payments and also that his or her account is currently due.

3         139.    Plaintiffs and Class Members detrimentally relied upon Wells Fargo's material

4    omissions of fact and the misrepresentations and purposefully misleading statements contained

5    in form letters when Wells Fargo did not inform Plaintiffs and Class Members promptly that

6    their accounts had been placed in forbearance and Plaintiffs and Class Members did not

7    challenge the forbearance. Where Wells Fargo did inform Plaintiffs and Class Members after the

8    fact that accounts had been placed into forbearance, that notice was insufficient to actually place

9    these customers on notice. Moreover, when Plaintiffs and Class Members continued to make

10   monthly mortgage payments after learning of the forbearance status, they did so with the

11   understanding and expectation that doing so would result in these loans being serviced in the

12   ordinary course of business.

13        140.    Plaintiffs' and Class Members' reliance on Wells Fargo's material omissions of

14   fact and the misleading and false statements made in form letters sent to Plaintiffs and Class

15   Members were justified and reasonable, as Plaintiffs and Class Members had no basis to assume

16   and were not on notice that Wells Fargo would defraud them by placing their loans into

17   forbearance status without authorization or informed consent. Further, no common law, statute,

18   or other agreement among Plaintiffs and Class Members and their mortgage lender and/or Wells

19   Fargo authorized Wells Fargo to place these borrowers' loans into forbearance without their

20   informed consent.

21        141.    Plaintiffs and Class Members were injured by Wells Fargo's material omissions

22   of fact, misleading and false statements, and fraudulent placement of their loans into forbearance

23   status, experiencing credit damage, and inability to refinance at historically low rates, loss of

24   access to new credit and existing credit cards and home equity lines of credit, reputational

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW        32

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

damage, frustration, and various out-of-pocket costs and other pecuniary damages and general damages.

## FOURTH CAUSE OF ACTION

### Violations of Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* (TILA)

142. Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

143. Plaintiffs bring this claim on behalf of themselves and all three classes.

144. 12 C.F.R. § 226.36(c)(1)(i) prohibits a servicer of a consumer credit transaction secured by a consumer's principal dwelling from failing to "credit a payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting of negative information to a consumer reporting agency . . . ."

145. 12 C.F.R. § 1026.36(c)(1) prohibits servicers of a closed-end consumer credit transaction, secured by a consumer's principal dwelling, from failing to credit a periodic payment to the consumer's loan account as of the date of receipt, with some exceptions not applicable here.

146. 15 U.S.C. § 1639f(a) prohibits a servicer from failing to credit payments that are part of "a consumer credit transaction secured by a consumer's principal dwelling" on the day the servicer received the payment.

147. Wells Fargo has failed to properly credit periodic payments to Plaintiffs and other Class Members' loan accounts. In Mr. Echard's experience, Wells Fargo failed to properly apply his mortgage payments to his account after he resumed payments on his mortgage in August 2020.

Smith & Lowney, p.l.l.c.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

148.    Pursuant to 12 C.F.R. § 1026.41, a servicer of a closed-end consumer credit transaction secured by a dwelling (a "mortgage loan") shall provide the consumer, for each billing cycle, a periodic statement meeting specifically enumerated requirements, including but not limited certain details related to the amount due, an explanation of the amount due, and a past payment breakdown.

149.    Defendant violated 12 C.F.R. § 1026.41 by providing periodic statements on mortgage loans to Plaintiffs and other Class Members which do not conform to the structure required, and which inaccurately reflect and/or omit information required by the regulation, including information related to forbearance and its effects. The statements Mr. Echard received between August 2020 and December 2020 did not explain that the change in payment amount was due to forbearance.

150.    TILA, 15 U.S.C. § 1640, provides a private right of action against creditors for violations of these provisions, which includes suits against entities that violate TILA and previously owned the loan obligation. *See* 15 U.S.C. § 1641(f). As the lender, Wells Fargo is a "creditor" under 15 U.S.C. § 1602(g), which defines the term as follows:

> The term "creditor" refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

151.    Wells Fargo has demonstrated a pattern and practice of failing to comply with 12 C.F.R. § 226 because Wells Fargo has engaged in a practice of placing borrowers in unwanted and unauthorized forbearance agreements on a nation-wide basis, failing to property credit payments, and failing to provide accurate and legal periodic statements.

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

152.    As a proximate result of Wells Fargo's unlawful actions, Plaintiffs and Class Members have been injured.  Plaintiffs and Class Members have suffered credit damage, loss of access to credit, reputational damage, frustration, outrage, and various other pecuniary and general damages.

## FIFTH CAUSE OF ACTION

### Violations of the Real Estate Settlement Procedures Act (RESPA)

153.    Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

154.    Plaintiffs brings this claim on behalf of themselves and all three classes.

155.    12 C.F.R. § 1024 imposes certain requirements on Defendant, including procedures for loss mitigation and requirements related to applications for loan modifications, violations of which are enforceable under Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(f), and 15 U.S.C. § 1640.  *See also*, 12 C.F.R. § 1024.41(a).

156.    Wells Fargo has violated 12 C.F.R § 1024 by inappropriately treating borrowers' inquiries about possible forbearance as loss mitigation applications, while failing to handle those "applications" in compliance with Regulation X. Alternatively, to the extent the facts pled in this complaint constitute the submission of one or more loss mitigation applications, Wells Fargo violated 12 C.F.R. § 1024 by failing to comply with RESPA's statutory and regulatory requirements for handling those applications. These RESPA violations include but are not limited to the following violations:

- Wells Fargo has failed to provide Plaintiffs and Class Members notices as required by 12 C.F.R. § 1024.41;

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW        35

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

- Wells Fargo has misrepresented the status of the review of loss mitigation applications and requests submitted by Plaintiffs and Class Members, in violation of 12 C.F.R. § 1024.41;

- Wells Fargo has acknowledged yet failed to properly and timely evaluate and respond to Plaintiffs' and Class Members' completed loss mitigation applications, in violation of 12 C.F.R. § 1024.41;

- Wells Fargo has failed to properly advise, inform and assist Plaintiffs and Class Members of curative actions including the right to appeal any denials, in violation of 12 C.F.R. § 1024.41;

- Wells Fargo has deceptively placed Plaintiffs and Class Members into their "COVID-19 Forbearance Plan" without informed prior consent or approval, in violation of 12 C.F.R. § 1024.41;

- Wells Fargo has failed to maintain continuity of contact for Plaintiffs and Class Members, in violation of 12 C.F.R. § 1024.40;

- Wells Fargo failed to maintain a system to "advise borrowers how to cure delinquencies [and] protect their … credit rating," in violation of 38 C.F.R. § 36.4278.

157. Wells Fargo has placed Plaintiffs' and other Class Members' mortgage loan accounts into forbearance and/or extended existing forbearance periods without Plaintiffs' and Class Members' knowledge, informed consent, or approval in violation of the Real Estate Settlement Procedures Act.

158. Wells Fargo has failed to apply Plaintiffs' and Class Members' monthly mortgage payments as of the date they came due and failed to report publicly that payments made by Plaintiffs and Class Members were received and applied.

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW        36

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

159.    Wells Fargo has demonstrated a pattern and practice of failing to comply with Regulation X, and failing to comply with related loss mitigation rules, because Wells Fargo has engaged in a practice of placing borrowers in unwanted and unauthorized forbearance agreements on a nation-wide basis.

160.    As a proximate result of Wells Fargo's unlawful actions, Plaintiffs and Class Members have been injured. Plaintiffs and Class Members have suffered credit damage, loss of access to credit, reputational damage, frustration, outrage, and various other pecuniary and general damages.

## SIXTH CAUSE OF ACTION

### Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. (FCRA)

161.    Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

162.    Plaintiffs bring this claim on behalf of themselves and all three classes.

163.    Plaintiffs are "consumers" as that term is defined by 15 U.S.C. § 1681a(c). Wells Fargo is a "furnisher" of consumer information as defined by 12 C.F.R. § 1022.41(c) and as described throughout the Fair Credit Reporting Act ("FCRA").

164.    Wells Fargo regularly reports consumer account information to the credit reporting agencies for inclusion in credit reports.

165.    Wells Fargo willfully violated 15 U.S.C. § 1681s-2 by informing credit agencies that Plaintiffs' and Class Members' mortgage accounts were in forbearance when those consumers did not make affirmative, legal, or informed requests to be placed into forbearance.

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

166.    Wells Fargo also willfully violated 15 U.S.C. § 1681s-2 by failing to adequately investigate and correct inaccurate credit reporting information with the credit reporting agencies after Plaintiffs made appropriate complaints.

167.    Wells Fargo knew, or should have known, that Plaintiffs and the Class Members did not request or affirmatively and legally consent to the mortgage loan forbearances that Wells Fargo reported to the credit reporting agencies.

168.    Wells Fargo knew, or should have known, that Plaintiffs and the Class Members had made mortgage payments after being placed into forbearance, and that these mortgage payments should be reported to credit agencies.

169.    The forbearance notation on the Class Members' credit reports clearly indicates to potential creditors or other third parties that the class members experienced some sort of financial hardship. These forbearance notations adversely affect class members' ability to obtain credit.

170.    Failing to report payments made on Plaintiffs' and Class Members' mortgage accounts to credit agencies negatively affected these consumers credit scores.

171.    Wells Fargo has breached its duties as set forth in 15 U.S.C. § 1681s-2 by failing to adequately investigate and fully correct inaccurate credit reporting information with the credit reporting agencies following Plaintiffs' dispute of the credit reporting errors or Plaintiffs' informing Wells Fargo of the fraudulent placement of the account in forbearance.

172.    Wells Fargo knew that the presence of the forbearance notations in the Class Members' credit reports would damage the Class Members' ability to obtain new credit, which may be essential to a consumer's daily life.

173.    Wells Fargo's failure to report its receipt of payments made by Plaintiffs and the Class Members during the period in which Wells Fargo improperly furnished information to the

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW          38

Smith & Lowney, p.l.l.c.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

Credit Reporting Agencies indicating that their loans were in forbearance status also adversely affects Plaintiffs' and the Class Members' ability to obtain credit, including but not limited to preventing and/or significantly impeding borrowers' ability to refinance their home mortgage loans and/or to borrow against the equity in their homes.

174. Wells Fargo failed to promptly delete, modify, or block reporting of inaccurate, incomplete, or unverifiable information in response to each complaint raised by Plaintiffs and the Class Members.

175. Wells Fargo failed to fully correct the information it supplied to the Credit Reporting Agencies regarding Plaintiffs' and the Class Member's accounts.

176. Plaintiffs and the Class Members have incurred actual damages and have suffered physically, mentally, and emotionally as a result of Wells Fargo's willful violations of the FCRA.

177. Based on Wells Fargo's violations of 15 U.S.C. § 1681s-2, Plaintiffs and the Class Members are entitled to actual damages, costs, and attorneys' fees pursuant to 15 U.S.C. § 1681o.

178. Moreover, as a result of each and every negligent violation of the FCRA, Plaintiffs and the Class Members are entitled to statutory damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o.

179. Plaintiffs and the Class Members are also entitled to statutory damages, punitive damages, and reasonable attorneys' fees for each of Wells Fargo's willful violation of the FCRA pursuant to 15 U.S.C. § 1681n(a).

## SEVENTH CAUSE OF ACTION

### Unjust Enrichment

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

180. Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

181. Plaintiffs bring this claim on behalf of themselves and all three classes.

182. Plaintiffs and the Class Members have conferred a benefit upon Wells Fargo which received benefits by placing Plaintiffs and Class Member's loans into forbearance without their informed and legal consent. By placing Plaintiffs' and Class member's mortgages in forbearance, Wells Fargo continued to hold and service those mortgage loans, preventing Plaintiffs and Class members refinancing with another institution, and thus increasing the value of the mortgage servicing rights.

183. As a result, the Plaintiffs and Class members are entitled to restitution, disgorgement, or both, of the benefits Wells Fargo has unjustly retained, in an amount to be proven at trial.

## **EIGHTH CAUSE OF ACTION**

### **Negligence and Negligent Misrepresentation**

184. Plaintiffs incorporate each and every allegation contained in the preceding paragraphs as if set forth again herein.

185. Plaintiffs bring this claim on behalf of themselves and all three classes.

186. Defendant, as a lender, owes their borrowers a duty to exercise reasonable care to avoid a foreseeable risk of injury to the borrower.

187. Defendant, as a lender and/or servicer providing professional services, owes its customers a duty not to supply false information for guidance of others in their business transactions and to exercise reasonable care or competence in obtaining or communicating information.

Smith & Lowney, p.l.l.c.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

188.     Defendant owed Plaintiffs and the Nationwide Military Class an additional duty of care as these customers are military customers and veterans who are entitled to special protections for VA backed loans.

189.     Defendant breached its duty of care to Plaintiffs and the Class Members by enrolling Plaintiffs and the Class Members in the forbearance program without their informed and legal consent.

190.     Defendant further breached its duty of care to Plaintiffs and the Class Members by violating TILA, RESPA, and FCRA.

191.     Defendant further breached its duty of care to Plaintiffs and the Class Members by making misrepresentations and/or omissions on their website regarding the consequences of clicking a button on the borrower's homepage to "defer" payments.

192.     Defendant further breached its duty of care to Plaintiffs and the Class Members by supplying false information for guidance in their business transactions, on which Plaintiff and the Classes reasonably and justifiably relied.

193.     Defendant further breached its duty of care to Plaintiffs and the Class Members by failing to exercise reasonable care or competence in obtaining and/or communicating information on which Plaintiffs and the Classes would reasonably and justifiably rely for guidance in their business transaction.

194.     Defendant further breached its duty of care to Plaintiffs and the Class Members by making false or purposely misleading statements in form letters sent to Plaintiffs and Class Members in form letters sent after placing Plaintiffs' and Class Members' accounts into forbearance.

195.     And finally, Defendant breached its duty of care after illegally enrolling customers in the forbearance program by (1) failing to properly apply payments to the mortgage;

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

1    (2) failing to properly report payments actually made to credit agencies; and (3) failing to

2    provide accurate and legally sufficient periodic statements.

3          196.    Defendant knew, reasonably should have known, or recklessly disregarded its

4    duty to treat Plaintiffs and the Class Members fairly and deal with them in good faith.

5          197.    Defendant's negligence and breach of their duties was the proximate cause of

6    damages sustained by the Plaintiffs and the Class Members.

7

8                      **NINTH CAUSE OF ACTION**

9            **Violation of the Ohio Deceptive Trade Practices Act**

10          198.    Plaintiffs incorporate each and every allegation contained in the preceding

11    paragraphs as if set forth again herein.

12          199.    Plaintiffs bring this claim on behalf of themselves and the Ohio Class.

13          200.    Ohio's Deceptive Trade Practices Act ("DTPA"), Ohio Revised Code §§ 4165 *et*

14    *seq.* prohibits deceptive trade practices.

15          201.    Wells Fargo is a "person" as defined by Ohio Revised Code § 4165.01(D)

16          202.    The DTPA provides in part that a "person engages in a deceptive trade practice

17    when, in the course of the person's business, vocation, or occupation, the person . . .

18    represents that goods or services have . . . characteristics . . . , uses, [or] benefits . . . that they do

19    not have." ORC § 4165.02(A)(7).

20          203.    Wells Fargo violated the statute when it falsely represented services available for

21    mortgage debt assistance which it did not provide.

22          204.    For example, Wells Fargo deceptively represented on its website that it had

23    services for assistance for mortgage relief, when in fact it was deceptively and without

24    authorization, putting accounts of those inquiring about relief services into forbearance.

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

205. Wells Fargo deceived Plaintiffs and members of the Ohio class when it claimed to have relief programs it did not have.

206. Plaintiffs and members of the Ohio class justifiably relied upon Wells Fargo's deceptive representations regarding mortgage relief services on Wells Fargo's website, when in fact Wells Fargo was placing their accounts into forbearance without their knowledge.

207. As a direct and proximate result of Wells Fargo's deceptive practices, Plaintiffs and the Ohio class members have suffered and will continue to suffer actual damages.

## PRAYER FOR RELIEF

On behalf of themselves and all other persons similarly situated, Plaintiffs respectfully pray for the following relief:

a. An Order certifying the Classes, appointing the named Plaintiffs as class representative and Plaintiffs' attorneys as class counsel;

b. An award of declaratory relief, including but not limited to a declaration that Wells Fargo's actions and business practices are unlawful and that Wells Fargo must comply with state and federal lending laws;

c. An award of injunctive relief, including public injunctive relief permanently enjoining Wells Fargo from performing further unfair and unlawful acts as alleged;

d. An Order requiring disgorgement of Defendant's ill-gotten gains to pay restitution to Plaintiffs and all members of the Classes;

e. An award of statutory, compensatory, consequential, and punitive damages;

f. An award of treble damages insofar as they are allowed by applicable laws;

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

g.    All costs of prosecuting this action, including attorneys' fees and expert fees as may be allowable under applicable law;

h.    An award of pre-and post-judgment interest;

i.    The imposition of a constructive trust containing all assets, funds, and property derived from Defendant's wrongful acts, with Defendant serving as constructive trustees for the benefit of Plaintiffs and ClassMembers;

j.    An accounting of all assets, funds, revenues, and profits received and retained by Defendant as a result of their improper actions;

k.    Award appropriate individual relief as requested above; and

l.    Grant such other relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this 12th day of September, 2022.

Smith & Lowney, PLLC

By: *s/Knoll Lowney*
Knoll Lowney, WSBA # 23457
*s/Alyssa Englebrecht*
 Alyssa Englebrecht, WSBA #46773
*s/Meredith Crafton*
Meredith Crafton, WSBA # 46558
*s/Marc Zemel*
March Zemel, WSBA #44325
*s/Savannah Rose*
Savannah Rose, WSBA #57062
Smith & Lowney, PLLC
2317 E. John Street, Seattle, WA 98112
Tel: (206) 860-2883; Fax: (206) 860-4187
Email: knoll@smithandlowney.com
alyssa@smithandlowney.com

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW        44

meredith@smithandlowney.com
marc@smithandlowney.com
savannah@smithandlowney.com

SECOND AMENDED COMPLAINT
2:21-CV-05080-MHW        45

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883