IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN ECHARD, | § | Case No. 2:21-cv-05080-SDM-KAJ |
| Plaintiff, | §<br>§ | |
| | § | **RENEWED MOTION TO** |
| v. | § | **INTERVENE** |
| WELLS FARGO BANK, N.A., | §<br>§ | Judge Michael H. Watson |
| Defendant. | §<br>§ | Magistrate Judge Kimberly A. Jolson |

## I.     INTRODUCTION

Luis and Marisol Castro, Pamela Delpapa, Jenna Doctor, Gerald Forsburg, Samara Green, Patrick Healy, Brett Jacob, Charles Johnson, Barbara Prado, and Renrick and Vivian Robinson ("Intervenors"), the named plaintiffs in *In re Wells Fargo Forbearance Litigation*, No. 3:20-cv-06009-JD (N.D. Cal.) (the Consolidated Action), move to intervene in the above-captioned class action case under Fed. R. Civ. P. 24. Many, if not all, of the Intervenors appear to meet the class definition in the *Echard* proposed settlement. However, as explained below, it appears that two of the three proposed *Echard* class representatives are not themselves class members, and the third only became a named plaintiff after the settlement had been reached.

Now is the appropriate time for Intervenors to be heard. This Court, in denying the prior motion to intervene, stated that Intervenors could seek to file briefs "in response to future settlement agreement proposals." Dkt. 106 at *10, citing *Swinton v. SquareTrade, Inc.*, No. 4:18-cv-0144-SMR-SBJ, 2018 WL 8458862, at *8 (S.D. Iowa Sept. 21, 2018), aff'd, 960 F.3d 1001 (8th Cir. 2020). *Swinton* demonstrates why this is the proper time for Intervenors to voice their concerns. If the proposed settlement is preliminarily approved and Intervenors opt out, they would be barred from objecting. *See* Dkt. 108-1 at *29. *Swinton*, at *8 ("Because [Intervenor] may opt out, this will likely be his only opportunity to formally lodge objections to the settlement."). Thus, intervenors would be left with a Hobson's choice: either acquiesce to a settlement that they believe is unfair and be bound by all determinations made

regarding the proposed settlement (*see* Dkt. 108-2 at *8); or be silent as to its unfairness. This concern is heightened by the unusual circumstances of this case.

Beginning in July of 2020, Intervenors began filing lawsuits against Wells Fargo alleging the bank improperly placed borrowers into forbearance. Intervenors subsequently coordinated to consolidate those cases in the Northern District of California to preserve litigant and judicial resources. Then, at the direction of the Judge who is presiding over *In re Wells Fargo Forbearance Litigation*, Intervenors engaged in vigorous mediation efforts with Wells Fargo. Wells Fargo, however, did not agree to Intervenors' demands, and the mediation was not successful.

Plaintiff Echard then presented an opportunity for Wells Fargo to settle the proposed class's claims on terms more favorable to the Bank. Counsel for Plaintiff Echard had filed a copy-cat complaint months after the initial complaints in the Consolidated Action. He originally sought—and won—transfer of his case to the Northern District of California so that it could be consolidated with Intervenors' earlier-filed, related cases. He then demanded of Intervenors' counsel a major role in the already underway proceedings.

When the mediation in the Consolidated Acton ended without a settlement, Plaintiff Echard then agreed with Wells Fargo to transfer his case away from the coordinated proceedings to this Court for the specific purpose of attempting to settle the national class. *See* Declaration of Matthew Preusch in Support of Motion to Intervene ¶ 11, ("Preusch Decl."), Ex. E.

The parties in *Echard* have now purportedly done so, effectuating Wells Fargo's plan to resolve its liability to the class at a lower cost by settling a single, splintered-off case. That is a classic "reverse auction," where "a defendant selects among attorneys for competing classes and negotiates an agreement with the attorneys who are willing to accept the lowest class recovery (typically in exchange for generous attorney fees)[.]" Manual Complex Lit. § 21.61 (4th ed.).

**RENEWED MOTION TO INTERVENE**
**PAGE 2**

This process has produced a proposed settlement that is deeply flawed and a disservice to the proposed class. The Court recently issued an order indicating that it has "concerns" about the proposed settlement, setting a status conference for October 18, 2022 to discuss those concerns prior to ruling on the motion for preliminary approval. Dkt. 122. Intervenors move to intervene to protect their legal interests, to appear at the upcoming October 18th status conference, Dkt. 122, and to file an opposition to the pending Motion for Preliminary Approval of Settlement, Dkt. 108. The Court should grant this motion so it can hear the views of the plaintiffs and counsel who initiated this litigation and continue to pursue the putative class's claims in the Consolidated Action in California.

## II.     PROCEDURAL BACKGROUND

Nearly a half a year after the last of the Intervenors' cases were initiated, the *Echard* case was filed. Wells Fargo found the *Echard* complaint so weak that it sought an early judgment on the pleadings directed at a fundamental defect in the adequacy of the then-sole named plaintiff. Dkt. 20. Initially, Echard's counsel sought to join Intervenors in mediation attempts in the Northern District of California. However, after Intervenors' mediation reached impasse, and in a dramatic departure from Echard's counsel's previous representations, Echard and Wells Fargo stipulated to transfer this case away from its brethren and withdraw Wells Fargo's ripe motion for judgment on the pleadings. Dkts. 19, 53, 54.

Since then, Intervenors have continued to attempt to work collaboratively with Echard's counsel to further the interests of the putative class. Intervenors have invited Echard and his counsel to participate in the consolidated proceedings in the Northern District of California, but have been unwilling to agree to Echard's counsel's demand for a fixed percentage of any future attorneys' fees as a condition for his participation. Declaration of Theodore Bartholow in Support of Motion to Intervene ¶¶ 9, 12-13 ("Bartholow Decl."); *see also* Preusch Decl. Ex. D (stating that "we would welcome you and your client bringing you client's case and any servicemember-specific claims your client may have as part of a consolidated proceeding in the Northern District of California, but we do not think the conditions you've

requested for that are appropriate"). Though Echard is not part of the Consolidated Action, Intervenors have invited counsel for Echard to attend two depositions of Defendants that were taken by Intervenors, and continue to believe that the interests of the putative class are best served by a unified plaintiffs group. *See* Bartholow Decl. ¶ 21.

In that spirit, Intervenors successfully effectuated transfer to consolidate five related, putative class actions in the Northern District of California, largely over Wells Fargo's opposition, and have filed a Third Amended Consolidated Class Action Complaint on September 28, 2022. *In re Wells Fargo Forbearance Litigation*, ECF No. 162; Preusch Decl. Ex. F. Also, at the Judge's invitation in the Consolidated Action, Intervenors filed a Motion for Appointment of Interim Class Counsel in the Northern District of California. *Id.*, ECF No. 163.

Intervenors have also been engaged in substantial discovery. Intervenors have: i) obtained more than 88,723 documents (over 138,000 pages) from Wells Fargo and seek additional written discovery; ii) taken two Rule 30(b)(6) depositions of Wells Fargo's representatives (on July 20, 2022 and August 11, 2022, at which counsel for Echard were non-participating attendees), and intend to take additional depositions; and iii) sought formal resolution from Judge Donato on two discovery disputes, which were argued before Judge Donato. *Id.*, ECF No. 151.

On August 18, 2022, Intervenors were successful in obtaining an order in the Consolidated Action that Wells Fargo must produce discovery relating to early pool buyouts (EPBO), which is the subject of ongoing meet and confer efforts. *Id*. Under Ginnie Mae's EPBO program, when a borrower is delinquent for three consecutive months, the loan servicer can repurchase the associated security from the securitization pool at less than market value. After the loan is brought current, it can be resecuritized for a substantial profit. *Id,* ECF No. 162 at *34-40. Based on the limited publicly available information that Intervenors and their mortgage industry experts have analyzed, it appears that Wells Fargo has profited by potentially billions of dollars from exercising the EPBO option for loans placed into CARES

Act forbearances. *Id.* Just three weeks after the EPBO production was ordered, and prior to any EPBO production, the *Echard* Parties moved for preliminary approval of a proposed class action settlement agreement. Dkt. 108, Bartholow Decl. ¶ 22.

Because Intervenors have procedural and substantive concerns regarding that proposed settlement, they promptly and timely bring this motion to intervene.

## III. ARGUMENT

### A. Intervention

The Intervenors should be allowed to intervene for the limited purpose of i) appearing at the October 18 status conference, and ii) filing an opposition to the Preliminary Approval Motion.

#### 1. Legal Standards for Intervention

Federal Rule of Civil Procedure 24 allows for two types of intervention: intervention of right and permissive intervention. Both standards are met here. Subsection (a)(2) grants intervention as of right if a party: "(1) in a timely motion, shows that (2) they have a substantial legal interest in the case, (3) their absence from the case would impair that interest, and (4) their interest is inadequately represented by the parties." *Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 315 (6th Cir. 2005).

Subsection (b)(1)(B) of the Rule provides that a non-party may intervene permissively "[o]n timely motion," if the movant "has a claim or defense that shares with the main action a common question of law or fact," provided that the intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1)(B), (b)(3). This provision "should be 'broadly construed in favor of potential intervenors.'" *Coal. to Def. Affirmative Action v. Granholm*, 501 F.3d 775, 779 (6th Cir. 2007) (*quoting Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir.1991)).

##### i. The Request to Intervene is Timely.

In determining whether a motion to intervene is timely, courts consider: the point to which the suit has progressed; the purpose for which intervention is sought; the length of time preceding the

application during which the proposed intervenor knew or should have known of her interest in the case; the prejudice to the original parties due to the proposed intervenor's failure to promptly intervene after she knew or reasonably should have known of her interest in the case; and the existence of unusual circumstances militating against or in favor of intervention. *Id.* at 473.

Here, as was true for the earlier-filed motion to intervene (*see* Dkt. No. 106, pp. 5-6), the request is timely, coming shortly after Plaintiff Echard announced the proposed class action settlement. *See* Dkt. 108. Now is the appropriate time for Intervenors to be heard. This Court, in denying the prior motion to intervene, stated that Intervenors could seek to file briefs "in response to future settlement agreement proposals." Dkt. 106 at *10. This motion is brought less than two weeks after the Court set the October 18 status conference. *See* Dkt. 122.

### ii.  Intervenors Have a Substantial Legal Interest in this Case.

The Sixth Circuit "has opted for a rather expansive notion of the interest sufficient to invoke intervention of right." *Midland Funding, LLC v. Brent, No*., 2011 WL 1882507, at *4 (N.D. Ohio May 17, 2011). In *Midland Funding LLC*, a putative intervenor was found to satisfy that standard as she was a member of the putative class. *Id.* Unlike many of the proposed class representatives, Intervenors would likely be putative class members, and have a substantial legal interest in this case. The proposed settlement would dispose of nationwide class claims that Intervenors have asserted prima facie viable claims for in the Consolidated Action and that, as discussed below, the proposed class representatives lack standing to assert.

### iii.  Intervenors' Absence from the Case Will Impair their Legal Interest.

A proposed intervenor need not establish "that impairment will inevitably ensue from an unfavorable disposition," only that such impairment may ensue. *Purnell v. City of Akron*, 925 F.2d 941, 948 (6th Cir.1991). "This burden is minimal." *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1247 (6th Cir. 1997). Allowing Intervenors to participate now is critical, as the terms of the proposed

settlement would require Intervenors to either opt-out or object, but not both. *See* Dkt. 108-1 at *29 ("Class Members who opt-out of the Settlement shall not have the right to object to the Settlement and shall not have standing to do so."); *accord Swinton*, 2018 WL 8458862, at *8. Thus, Rule 23's procedural protections are not an adequate substitute for intervention. *See Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 696 (11th Cir. 2017) (overruling denial of motion for intervention of right brought by plaintiffs in first-filed class action prior to preliminary approval of alleged reverse-action, finding that Rule 23's procedural protections do not mean the movants fail to satisfy Rule 24(a)(2)'s third prong.)

### iv. Intervenors Lack Adequate Representation.

Intervenors' burden as to the fourth prong, "inadequate representation," "is minimal because it is sufficient that the movant prove that representation may be inadequate." *Miller*, 103 F.3d at 1247 (internal quotation marks and formatting omitted). "For example, it may be enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments." *Id.* Intervenors have concerns regarding the adequacy of proposed class counsel. Further, Intervenors, who are not "named plaintiffs in this case and played no part in settlement discussions, would have a different perspective as to the fairness of that settlement from the named plaintiffs," and thus meet this prong. *Midland Funding, LLC*, 2011 WL 1882507 at *4.

### v. Intervenors' Claims Share Many Issues of Fact and Law with *Echard.*

The Court previously found this requirement was met. Dkt. 107, p. 7, Section B. The similarities run deep, as central portions of *Echard*'s initial operative complaint appear to have been copied directly from the *Delpapa* and *Forsburg* complaints, with overlapping putative nationwide classes alleging the same theories against the same defendant. *See* Bartholow Decl. ¶ 3, Ex. 1; Preusch Decl. ¶¶ 4-8, Ex. A-C. The very terms of the Proposed Settlement suggest that the cases are related. *See* Dkt. 108-1, *8. In

fact, on September 12, 2022, Wells Fargo filed a notice in the Consolidated Action concerning the proposed settlement. *In re Wells Fargo Forbearance Litigation*, ECF No. 159.

### vi.  Intervention Will Not Unduly Prejudice or Delay the Original Parties.

Intervenors' requests to oppose the motion for preliminary approval and to appear at the scheduled October 18th status conference will not unduly prejudice or delay the *Echard* litigation. Intervenors seek leave to do so at this juncture, consistent with the Court's deadlines for preliminary approval, to air their concerns before notice issues, creating potential confusion among class members about a settlement that should not merit final approval. *See In re Checking Acct. Overdraft Litig.*, 859 F. Supp. 2d 1313, 1322 (S.D. Fla. 2012). Such intervention would not prejudice the *Echard* parties or the proposed class and would allow Intervenors to apprise the court of their concerns regarding the proposed settlement. *See Swinton*, 2018 WL 8458862, at *8 (S.D. Iowa Sept. 21, 2018).

### 2.  Participation at the Conference and Leave to File Is Appropriate.

As previously noted by the Court, Intervenors should have an opportunity to participate in the settlement approval in *Echard*. *See* Dkt. 106, p. 10. Intervenors wish to be heard at the scheduled status conference on October 18th to elaborate on their concerns in addition to hearing (and responding to) concerns that Court has indicated it would like to discuss. *See* Dkt. 122. Now is the appropriate time for Intervenors to be heard, as the proposed settlement would not allow them to both opt-out and object. *See Swinton v. SquareTrade, Inc.*, at *8 (S.D. Iowa Sept. 21, 2018). Below are some of the grounds for denial that Intervenors believe should inform the Court's decision on preliminary approval. Should the Court grant Intervenors leave to oppose the motion for preliminary approval, these bases will be more fulsomely detailed.

### B.  Grounds for Denial of Preliminary Approval Motion

The Court should deny preliminary approval because the settlement—the result of a reverse auction—is both procedurally and substantively flawed. Rule 23(e) provides that, at preliminary

**RENEWED MOTION TO INTERVENE**
**PAGE 8**

approval, a court must determine whether it will "likely be able to approve the proposal" and certify the proposed class. FRCP 23(e)(1)(B). In making this preliminary assessment, the court should not act as a "rubber stamp", *City of Plantation Police Officers' Employees' Ret. Sys. v. Jeffries*, No. 2:14-CV-1380, 2014 WL 12780342, at *3 (S.D. Ohio Sept. 26, 2014), but should consider whether the movant has shown that the proposed settlement is sufficient to warrant the issuance of notice, *see Milburn v. PetSmart, Inc.*, No. 1:18-CV-535, 2019 WL 1746056, at *8 (E.D. Cal. Apr. 18, 2019). A court "adopt[s] the role of a skeptical client and critically examine[s] the class certification element, the proposed settlement terms, and procedures for implementation." *Garner Properties & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 620–21 (E.D. Mich. 2020). In particular in a pre-certification settlement class, a court must look for "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Courts considering a settlement class have a duty "to protect the members of a class ... from lawyers for the class who may, in derogation of their professional and fiduciary obligations, place their pecuniary self-interest ahead of that of the class." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002).

Assessing procedural fairness requires determining whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)-(B). These factors look to the conduct of the litigation and of the negotiations leading up to the proposed settlement, including the potential for collusion in the negotiations. Fed. R. Civ. P. 23(e)(2)(A)-(B) advisory committee's note to 2018 amendment. Factors to be considered in performing a "substantive" review involve the adequacy of the relief provided to the class (Fed. R. Civ. P. 23(e)(2)(C) and whether the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D). The burden of providing information to make these showings is on the party moving for approval of the settlement. Fed R. Civ. P. 23(e)(2)(A).

**RENEWED MOTION TO INTERVENE**
**PAGE 9**

Here, Echard has not made that showing. Echard and Wells Fargo instead ask this Court to preliminarily approve a pre-certification nationwide settlement class without providing the Court, putative class members, or Intervenors adequate information to gauge whether preliminary approval should be granted. This paucity of information is heightened by the irregularity of *Echard*'s splintering from the earlier-filed related cases, indicia of a reverse auction, and serious concerns regarding the adequacy of the proposed class counsel and class representatives.

In particular, the Court should find that Intervenor's interests are inadequately represented by the parties, and that preliminary motion should be denied, because: (a) it appears that two of the putative class representatives are not class members; (b) the proposed class representatives lack standing for some claims; (c) the proposed class definition and inadequacy of counsel and class representatives render this settlement class unlikely to be certified; (d) there is indicia of collusion; (e) Echard fails to show that the proposed class is relief adequate; and (f) some class members are treated unequally under the proposed settlement.

### a.      Mr. Echard and Mr. Shimp Do Not Meet the Class Definition.

A class representative must be a member of the class. *See Gevedon v. Purdue Pharma*, 212 F.R.D. 333, 337 (E.D. Ky. 2002). Yet neither Mr. Echard nor Mr. Shimp fit the proposed class definition.

"Class Members" are defined to include only persons who "had a Mortgage serviced by Wells Fargo that was placed into a Forbearance Without Adequate Informed Consent between March 1, 2020 and December 31, 2021". Dkt. 108-1 ¶ 11.

"Without Adequate Informed Consent" means:

the Mortgage entered Forbearance via Wells Fargo's online banking or interactive voice response ("IVR") portal before May 11, 2020, unless the customer (i) made no payments from the date that the Forbearance was requested and continuing during the entire Forbearance period; (ii) made more than one request for Forbearance; or (iii) requested an extension of the Forbearance; or

the Mortgage entered Forbearance as a result of a Proactive Wells Fargo Business Decision, unless the customer (i) requested forbearance online or through the IVR portal, or (ii) requested an extension of the Forbearance; or

Wells Fargo has previously determined that the Forbearance was erroneous.

Dkt. 108-1 ¶64.

Based on the allegations in the pleadings, Mr. Echard's experience does not appear to meet any of the descriptions for "Without Adequate Informed Consent." He was placed into a forbearance as a result of utilizing the online system in place on April 1, 2020, not as a Proactive Wells Fargo Business Decision,[1] thus meeting the initial threshold for the first clause, but excluding him from the second. Dkt. 18, *17. That forbearance spanned three months, covering April, May, and June, and during that period Mr. Echard made no payments. *Id.,* *20. While Mr. Echard alleges that *later* payments were misapplied, he "made no payments during his entire Forbearance period," and thus, is not a member of the class he seeks to represent, rendering him inadequate to protect the interests of the proposed class members.[2]

Mr. Shimp is not alleged to be a borrower liable on any of Ms. Shimp's mortgages that Wells Fargo placed in forbearance. *See* Dkt. 107-1, ¶ 94. "Class Members" are defined to include only persons who "had a Mortgage serviced by Wells Fargo that was placed into a Forbearance…" Dkt. 108-1 ¶ 11. While Ms. Shimp *is* alleged to be the signatory and obligor under the mortgages, this does not grant Mr. Shimp standing to pursue some claims based on that mortgage, *see Keen v. Helson*, 930 F.3d 799 (6th Cir. 2019), nor does it grant him class member status under the terms of the Proposed Settlement.

---

[1] If it is newly alleged that Mr. Echard was placed into a forbearance through a Business Decision, then his utilization of the IVR system in April would preclude him from meeting the second method of establishing "Without Adequate Informed Consent."

[2] It would be remarkable for the parties to assert that Wells Fargo "previously determined that the Forbearance was erroneous," given the vociferousness with which they argued that he had in fact requested a forbearance. *See* Dkt. 18 *14, 19-20; Dkt. 19 * 20.

### b. The Proposed Plaintiffs Appear to Lack Standing for Some Claims.

Standing, including prudential standing, is a prerequisite for all actions, including class actions. *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998). A court may not approve a proposed class settlement if it lacks jurisdiction over the dispute, and federal courts lack jurisdiction if no named plaintiff has standing. *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 40, n. 20, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). "It is black-letter law that standing is a claim-by-claim issue." *Rosen v. Tennessee Com'r of Fin. & Admin.*, 288 F.3d 918, 928 (6th Cir. 2002). Thus, the proper question is not whether the named plaintiffs have standing in some blanket sense, nor is it whether they have standing to bring some claims –it is "whether the named plaintiffs have standing to pursue each and every claim of their complaint." *Withrow v. FCA US LLC*, No. 19-13214, 2021 WL 2529847, at *7 (E.D. Mich. June 21, 2021). For, "[i]n a class action suit with multiple claims, at least one named class representative must have standing with respect to each claim." William B. Rubenstein, Newberg on Class Actions § 2:5 (5th ed. 2012).

The putative class representatives here seek to settle a nationwide class for claims that they have not alleged individual standing to pursue. This is not a case where a class action settles a claim that a plaintiff could have asserted but did not. Here, there are purportedly settled claims that no named plaintiff has standing to bring. For instance, none of the *Echard* plaintiffs are alleged to have sent a dispute letter, a prerequisite for a FCRA failure to investigate claim under 15 U.S.C. § 1681s-2(b), *see Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 784 (W.D. Ky. 2003), and there is no private right of action for violations of 15 U.S.C. § 1681s-2(a), *see* 15 U.S.C. § 1681s-2(c)(1).

In addition, there are no allegations that Wells Fargo is a "creditor" for Ms. Shimp, as is required to assert a claim under TILA against a mortgage servicer. *See Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 719 (6th Cir. 2013). Further, Ms. Shimp has not alleged that the subject property is her primary residence, a requirement for a private right of action under RESPA, and there is reason to believe that it

was not. *See* Dkt. 107-1 ¶¶ 91-93, 101. While Wells Fargo is alleged to be the "creditor" for Mr. Echard, and his property is alleged to be his primary residence, he does not appear to even fit the class definition. *See supra.* Finally, as Mr. Shimp does not appear to be a class member, there is no active duty servicemember with standing to pursue the second claim in the Second Amended Complaint on behalf of a putative nationwide servicemember subclass – a subclass that is not even reflected in the proposed settlement. Thus, without a named plaintiff able to pursue these claims, preliminary approval of this settlement is improper. *See Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279, 47 Fed. R. Serv. 3d 953 (11th Cir. 2000) (decertifying a class because the proposed class representatives did not have standing with respect to some of the claims made by the class).

### c. Movants Have Not Shown that the Proposed Class Is Likely to Be Certified.

Intervenors do not dispute, and to be sure, strongly believe that *a* potential class regarding Wells Fargo's forbearance program is certifiable. However, the settlement class proposed by Echard is flawed due to defects in the proposed class definition and the inadequacy of the proposed class representatives.

As for the proposed class definition, it "must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-38 (6th Cir. 2012). This is because, in the Sixth Circuit, Rule 23(b)(3) classes must meet an implied ascertainability requirement. *See Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017). The mechanism by which a given absent class members' loan was placed into a forbearance is not ascertainable from any of the information provided, nor are the identities of the borrowers "whose forbearances Wells Fargo previously determine were erroneous." Nor do the papers describe the basis for that determination.[3]

---

[3] The proposed settlement class, as defined, unfairly excludes many borrowers who were placed into unrequested forbearances. The class definition appears to exclude consumers who were placed into forbearance through a Proactive Wells Fargo Business Decision, and thus were undisputedly placed into an unrequested forbearance, but who then later requested a second forbearance or a forbearance extension. Similarly, if a borrower were placed into a forbearance due to utilization of the IVR or

In addition, proposed class counsel is not adequate to represent the class in this case, a prerequisite for certification under Rule 23(a). Settlement classes can, if not properly policed, allow premature, inadequate, and perhaps collusive settlements because "plaintiffs' counsel is under strong pressure to conform to the defendants' wishes at the early stages of the litigation." *In re Beef Industry Antitrust Litigation,* 607 F.2d 167, 176; *Ace Heating & Plumbing Co. v. Crane Co.*, 3d Cir., 453 F.2d 30, 33 (1971).[4] This is so because a defendant may seek to negotiate with another class member in the event negotiations stall. *See, id.* Indeed, that appears to have occurred here. Intervenors were unwilling to acquiesce to that implied pressure during their attempt to mediate, and Wells Fargo found a more pliant plaintiff who would.[5] In addition to the indicia of collusion, proposed class counsel's adequacy is questioned by his copying of earlier filed complaints and inconsistent statements when compared to the ultimate relief proposed. *See* Bartholow Decl. ¶ 3, Ex. 1; Preusch Decl. ¶ 4, Ex. A.

The copy-cat nature of the initial complaint raises concerns about proposed class counsel's adequacy. Proposed class counsel's own declaration suggests that the initial complaint added nothing beyond a servicemembers gloss that has now proved illusory. *See* Dkt. 108 at ¶ 5. Mr. Echard purportedly contacted Mr. Lowney on January 25, 2021, after which proposed class counsel reviewed the Intervenor's then-pending complaints and filed his own complaint *just three days later*, on January 28th, 2021, largely mirroring the language from the then-operative *Forsburg* and *Delpapa* complaints. *See* Bartholow Decl. ¶ 3, Ex. 1; Preusch Decl. ¶ 4, Ex. A. The *Echard* complaint not only mirrored the allegations and structure of the complaints, it also copied a scrivener's error. *See* Preusch Decl. ¶ 5-8,

---

online system at a time when those lacked adequate disclosures, missed one payment due to their automatic payments being terminated, and immediately canceled the forbearance upon learning of that missed payment, they would be excluded.

[4] When competition among different sets of plaintiffs' counsel exists, as it does here, there is the ever-present danger that unscrupulous counsel may "sell out" the class in order to receive a fee. *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co. of Chicago*, 7th Cir., 834 F.2d 677, 681 (1987).

[5] In fact, the filename of the Second Amended Complaint filed in conjunction with the proposed settlement is: "Second Amended Complaint WF accepted redlines_220907.pdf", suggesting that Wells Fargo reviewed and approved the complaint that the settlement is based upon.

Exs. B-C. It appears counsel for Echard merely added a later-abandoned Servicemembers Civil Relief Act claim onto complaints in earlier filed cases in which the parties had already agreed to mediate at the direction of Judge Donato in the Northern District of California.

### d.    There Are Red Flags of Collusion and Reverse Auction.

The circumstances surrounding the proposed settlement, and proposed class counsel's communications with Intervenors, have raised red flags that his interests are adverse to the class. This implicates both the proposed class counsel's adequacy under Rule 23(e)(2)(A) and the potential that the settlement was collusive, under Rule 23(e)(2)(B).

First, the circumstances of *Echard*'s transfer away from the Consolidated Action provide "facts implying collusion after the mediation in the Northern District of California failed." Dkt. 106, *9. While normally, a "defendant, facing multiple litigation, might prefer a single case, often a defendant would prefer two cases so that it can pit the plaintiffs' attorneys against one another and settle at a lower value via a so-called 'reverse auction.'" Newberg and Rubenstein on Class Actions § 10:36 (6th ed.). Here, mere days before stipulating to transfer to Ohio, Echard's counsel represented that such a transfer out of the Northern District of California would "keep Mr. Echard and other similarly situated victims of Wells Fargo's COVID-relief scam in venue purgatory" and "delay justice for the victims of Wells Fargo's COVID-relief scam." Dkt. 46 at *1, 4. Then Mr. Echard's counsel stipulated to just that transfer, enabling Wells Fargo to engage in a reverse auction.

Second, communications after that transfer have continued to raise red flags. Intervenors have repeatedly offered to include Echard and his counsel in the Consolidated Action, but Echard's Counsel has rebuffed these offers because Intervenors' counsel would not provide Echard's counsel, a late arrival, with a promise of a fixed percentage of attorneys' fees. Bartholow Decl. ¶ 14; Preusch Decl. ¶ 10, Ex. D. The refusal to work with Intervenors is an indication of a potential reverse auction. *See In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1126 (7th Cir. 1979) ("furthermore, settlement

negotiations with less than all class counsel weaken the class' tactical position even if the attorney who enters into the negotiations attempts to represent the class' interests vigorously.") Nor does the presence of a mediator fully resolve these concerns, as proposed class counsel represented that his settling of the case was a foregone conclusion before the mediation ever occurred. Bartholow Decl. ¶¶ 4-17; Preusch Decl. Ex. E. Proposed class counsel stated that, although he did not have a sense of what the case was worth, that his team "will settle the case and the case will be ours." Bartholow Decl. ¶¶ 7, 12. Echard's counsel referred to the popular HBO television series "Succession" - a show about hostile takeovers and backroom deals - when making these comments. Bartholow Decl. ¶ 9.

Third, even after the proposed settlement was reached, proposed class counsel's communications raised red flags. Proposed class counsel attempted to add the Putative Intervenors as named plaintiffs to this case, after the settlement had been reached, with a proposal to request significant service awards of $12,500 to be granted to them, in exchange for the Intervenor's agreement not to object to or oppose the settlement. Bartholow Decl. ¶ 20. Such an agreement would be adverse to the putative class, and Echard's counsel's offer to pay a bounty to plaintiffs in the Consolidated Actions indicates a lack of adequacy. *See Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 311 (6th Cir. 2016); *accord Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013).

Proposed Class Counsel's conduct—copying a complaint and attempting to extract a rent from an ongoing mediation by demanding a fixed percentage of recovery, declining to cooperate with the Intervenors when invited to do so without a promise of a fixed percentage of attorney's fees, coordinating with Wells Fargo to transfer the case away from the one it copied, and offering bounties to plaintiffs in the earlier filed actions (*see infra* § III-B-f) —should preclude preliminary approval. That conduct also provides a basis for discovery into the settlement negotiations.[6]

---

[6] These concerns weigh strongly against granting preliminary approval and in favor of allowing a more fulsome investigation to ascertain whether there was, in fact, collusion or a reverse auction. *See Ross v. Convergent Outsourcing, Inc.*, 323 F.R.D. 656, 660 (D. Colo. 2018) (denying preliminary class

**RENEWED MOTION TO INTERVENE**
**PAGE 16**

**e.    The Movants Have Not Shown the Adequacy of the Proposed Class Relief.**

Balancing the class's potential recovery against the amount offered in settlement is "perhaps the most important factor to consider" in preliminary approval. *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016). Rule 23(e)(1)(A) makes clear that the burden is on the parties seeking preliminary approval of a proposed settlement to provide the information necessary to make that determination. The Sixth Circuit has held that a court "cannot judge the fairness of a proposed compromise without weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *See Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 309-10 (6th Cir. 2016); *Vassalle v. Midland Funding* LLC, 708 F.3d 747, 754 (6th Cir. 2013). Thus, plaintiffs seeking preliminary approval should "show their work by explaining the relative value of their claims in significant detail." *Eddings v. DS Servs. of Am., Inc.*, No. 15-CV-02576-VC, 2016 WL 3390477, at *1 (N.D. Cal. May 20, 2016).

This requirement is all the more stringent where, as here, there are "suspicious circumstances." *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 280 (7th Cir. 2002). Especially under such circumstances, quantifying the adequacy of a settlement requires "estimating the range of possible outcomes and ascribing a probability to each point on the range." *Id.* The *Echard* parties have not shown that the proposed relief to class members is adequate because the settlement does not describe the valuation of claims and what led to the determination that $94 million is a reasonable amount.

Further, while the preliminary approval motion is supported by the declaration of an expert who purports to have developed conclusions on consumer damages based on the credit harms to borrowers and lost time and inconvenience, notably absent from that declaration are those valuations, any findings

---

action settlement approval due to red flag of a reverse auction, and ordering discovery requested by intervenors); *Hilsley v. Gen. Mills, Inc.*, No. 3:18-cv-00395-L-BLM, 2021 U.S. Dist. LEXIS 105648, at *16 (S.D. Cal. June 4, 2021) (denying preliminary approval after intervenors argued the inadequacy of the settlement and there was reason to believe a reverse auction had taken place).

concerning Wells Fargo's enrichment, or any non-conclusory assertion on which the Court can evaluate the adequacy of the proposed class relief. Dkt. 113.[7]

Even more absent is any indicia of the valuation of the unjust enrichment claim, which is a critical feature of Intervenors' class action because it appears that the forbearance scheme resulted in enormous unjust profits by Wells Fargo, fueled by EPBO options, separate and apart from the damage to borrowers. While purporting to release EPBO-related claims, the preliminary approval motion does not shed any light on how it accounts for the potentially billions of dollars in profits that Intervenors contend Wells Fargo *unjustly* made from exercising EPBO options after placing consumers into forbearances, which resulted in the loans becoming delinquent and thus eligible for buyout. Intervenors are in the process of obtaining discovery on this subject.[8]

The recently filed Second Amended Complaint makes no mention of EPBO whatsoever, despite noting EPBOs as a potential source of "massive wrongful gain" for Wells Fargo in the motion for preliminary approval. *See* Dkt. 107; 108 at *10, n.9. While proposed counsel avers that he performed "a full analysis of the allegation that Wells Fargo earned billions of dollars in wrongful profit through the Early Pool Buy Out ("EPBO") program," Dkt. 110 at ¶17, he provides no suggestion whatsoever of what that analysis was based upon or what the valuation of that claim was. Nor could the value of that claim

---

[7] While Mr. Smith's declaration is purportedly "vague" due to the mediation privilege, that privilege does not preclude a court from considering mediation information for purposes other than establishing liability. *See* Fed. R. Ev. 408(b). Thus, courts have found that privilege to be inapplicable when the purpose of evidence to be introduced is aid the court in evaluating the reasonableness of a settlement. *See Lohman v. Duryea Borough*, 574 F.3d 163, 167 (3d Cir. 2009) (specifically finding that plaintiffs valuations from mediation are admissible when used to compare what a plaintiff "requested" to what the plaintiff was ultimately "awarded."); *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1124, n. 20 (7th Cir. 1979); *In re Ocean Power Techs. Inc.* 2016 WL 6778218, at *16 (D.N.J. Nov. 15, 2016).

[8] Intervenors allege in their recently filed pleading that, "Based on Wells Fargo's 2021 reporting, the bank profited by at least $789 million on the resecuritization of roughly $13 billion of the $30 billion in 2020 GNMA repurchases." *In re Wells Fargo Forbearance Litigation*, ECF. 162 ¶ 164.

be adduced by the depositions witnessed by proposed class counsel, as Wells Fargo refused to put forward any designee to speak to EPBO. Bartholow Decl. ¶ 21-22.

Plaintiff Echard makes no mention of having asked for or received any formal (or informal) discovery from Wells Fargo as it relates to the early pool buyouts, nor does the Second Amended Complaint include any reference to early pool buyouts whatsoever. Neither this Court, nor the Intervenors, can ensure that the proposed settlement is fair and reasonable when the movants have provided no basis for that determination.

### f.     The Proposed Settlement Does Not Treat Class Members Fairly.

Preliminary approval of the proposed settlement should be denied because it fails to treat class members fairly and includes improper provisions relating to service awards that constitute "bounties."

Courts are to consider potential "inequitable treatment of some class members vis-a-vis others," such as "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(A)-(B) advisory committee's note to 2018 amendment. Echard contends that Wells Fargo's scam "had a different legal impact on borrowers who were active duty servicemembers or veterans" (Dkt. 116, ¶¶ 2, 3, 4, 40). Echard's counsel previously expressed confidence that their claims presented unique value.

> We would want to ensure that in any future negotiations, our firm can negotiate for additional and/or different relief for servicemembers and veterans and that the larger team will support us in that effort. Obviously we cannot know how those negotiations will play out, but we strongly believe that servicemembers and veterans have somewhat different claims and that if we proceed on our own we will be successful in achieving additional relief for them.

Preusch Decl. Ex. D; *also see* Bartholow Decl. ¶¶ 16-17. Yet, the proposed settlement provides no additional relief for servicemembers. While Intervenors may not agree, proposed class counsel clearly believes that servicemembers' claims in this litigation are more valuable than civilian class members' claims. If this is so, the proposed settlement is not fair.

**RENEWED MOTION TO INTERVENE**
**PAGE 19**

Proposed Class Counsel also proposed to request, as part of this settlement, $12,500 service awards for named plaintiffs in the Consolidated Action. Bartholow Decl., ¶¶ 19-20. These were to be paid out of the class fund, provided that the Intervenors agreed not to oppose to the settlement before this Court or in public. Bartholow Decl. ¶¶ 19-20. These proposed service awards have all the hallmarks of "bounties" – service awards that create "a disincentive for the [named] class members to care about the adequacy of relief afforded unnamed class members[.]" *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 311 (6th Cir. 2016) (emphasis in original), as the offer came with the provisio that if Intervenors or their counsel opposed the settlement "in public and/or before Judge Watson, you would close the door to later signing onto the settlement, which we believe is the most viable and speedy path to getting money into the hands of the Class and getting your clients and their counsel compensated." Bartholow Decl. ¶¶ 19-20. Such conditional service awards create a serious risk of adequacy. *See Radcliffe v. Experian Info. Sols*, 715 F.3d 1157, 1166 (9th Cir. 2013) (finding improper conditioning of service awards when proposed class counsel represented that they "don't see a way for people who don't support the settlement to receive an incentive award.").

## IV. CONCLUSION

Intervenors respectfully request that the Court grant their motion for intervention for the purpose of i) appearing at the October 18th status conference; and ii) filing an opposition to the pending Preliminary Approval Motion.

RESPECTFULLY SUBMITTED this 3rd day of October, 2022.

*s/ Robert J. Wagoner*
Robert J. Wagoner (0068991)
DITTMER, WAGONER & STEELE, LLC
107 W. Johnstown Road
Gahanna, Ohio 43230
Tel: (614) 471-8181
Fax: (614) 327-4696
bob@dwslaw.com

s/ Derek W. Loeser
Derek W. Loeser, *pro hac vice*
Gretchen Freeman Cappio, *pro hac vice*
Zachary W. Gussin, *pro hac vice*
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Tel: (206) 623-1900
Fax (206) 623-3384
dloeser@kellerrohrback.com
gcappio@kellerrohrback.com
zgussin@kellerrohrback.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of October, 2022, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System. Copies will be served upon counsel of record, and may be obtained through, the Court's CM/ECF System.

Respectfully submitted,

*s/ Derek W. Loeser*
Derek W. Loeser, *pro hac vice*
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Tel: (206) 623-1900
Fax (206) 623-3384
dloeser@kellerrohrback.com