UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Brian Echard, *on behalf of themselves and all others similarly situated, et al.*,

    Plaintiffs,

v.

Wells Fargo Bank N.A., *et al.*,

    Defendants.

Case No. 2:21-cv-5080

Judge Michael H. Watson

Magistrate Judge Jolson

## OPINION AND ORDER

There are several pending motions before the Court, including a motion for preliminary settlement approval and a motion to intervene. However, upon review of the pending motions and related briefing, the Court concludes that the first-to-file rule applies in this case. Accordingly, as explained more fully below, the Court **STAYS** this case pending the resolution of *In re Wells Fargo Forbearance Litigation*, Case No. 3:20-cv-06009 (N.D. Cal.).

### I. BACKGROUND

In March 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES" Act). Third Am. Compl. ¶ 10, ECF No. 148. In relevant part, the CARES Act instructed mortgagees and mortgage services to create COVID-19 mortgage forbearance programs for all federally backed mortgages (the "Forbearance Program"). *Id.* ¶ 11.

Wells Fargo Bank N.A. ("Wells Fargo") created such a Forbearance Program and allegedly placed borrowers into the Forbearance Program without the borrowers' consent or knowledge. *Id.* ¶¶ 14–15. In many cases, Wells Fargo allegedly did not notify borrowers that it had placed their mortgages in the Forbearance Program, and when Wells Fargo did provide notice, the notice was allegedly insufficient. *Id.* ¶¶ 16–17. In addition, after placing a mortgage into the Forbearance Program, Wells Fargo allegedly failed to properly apply payments made to the mortgage, to report payments made to credit agencies, and to properly provide statements to the borrower. *Id.* ¶ 18.

Litigation quickly arose out of these alleged events. In July and August of 2020, two different plaintiffs filed class action complaints in the Northern District of California. *See* ECF No. 1, Case No. 3:20-cv-5296 (N.D. Cal.); ECF No. 1, Case No. 3:20-cv-06009 (N.D. Cal.). By January 2021, the Northern District of California consolidated those cases into one action ("*In re Wells Fargo*"); Judge James Donato presides over the consolidated action. *See* ECF Nos 70 & 74, Case No. 3:20-cv-06009 (N.D. Cal.). The *In re Wells Fargo* plaintiffs allege the same underlying facts described above and assert the following claims: (1) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (2) violation of the Truth in Lending Act ("TILA"); (3) violation of the Real Estate Settlement Procedures Act ("RESPA"); (4) violation of the Fair Credit Reporting Act ("FCRA"); (5) breach of the implied covenant of good faith and fair dealing; (6) unjust enrichment; (7) gross negligence; and (8) several state statutory

consumer protection, credit reporting, or debt collection claims. Third Am. Compl. ¶¶ 413–587, ECF No. 162, Case No. 3:20-cv-06009 (N.D. Cal.). The *In re Wells Fargo* plaintiffs propose the following nationwide class definition:

> All residential mortgage borrowers for whom Wells Fargo Bank, N.A., placed a residential mortgage into forbearance or continued forbearance without receiving the borrower's request or continued consent for a forbearance and affirmance that the borrower is experiencing a financial hardship due to COVID-19.

*Id.* ¶ 398. The *In re Wells Fargo* plaintiffs also propose similar state-specific sub-class definitions for the states of California, Florida, Georgia, New York, Texas, and Virginia. *Id.* ¶¶ 399–404.

Brian Echard filed his first class-action complaint in the Western District of Washington in late January 2021 ("*Echard*"). ECF No. 1, Case No. 2:21-cv-5080 (S.D. Ohio). Several months later, the Western District of Washington transferred *Echard* to the Northern District of California, but Judge Donato was not assigned to the case. *See* ECF Nos 34 & 50. Subsequently, the Northern District of California granted a joint motion to transfer *Echard* to this Court. *See* ECF Nos. 53 & 55.

The *Echard* plaintiffs allege substantially the same underlying facts against Wells Fargo and assert the following claims: (1) breach of contract and breach of the implied covenant of good faith and fair dealing; (2) breach of fiduciary duty; (3) fraud; (4) violation of the TILA; (5) violation of the RESPA; (6) violation of the FCRA; (7) unjust enrichment; (8) negligence and negligent misrepresentation; and (9) violation of Ohio's Deceptive Trade Practice Act. Third Am. Compl.

¶¶ 120–216, ECF No. 1, Case No. 2:21-cv-5080 (S.D. Ohio). After *Echard* was removed to this Court, the *Echard* parties purported to reach a nationwide class settlement of all claims raised in *Echard*. See ECF No. 108. The *Echard* parties now move for preliminary approval of that class-action settlement. ECF No. 108. The settlement agreement defines the proposed settlement class as follows:

> [A]ll persons in the United States who: (a) had a Mortgage serviced by Wells Fargo that was placed into a Forbearance Without Adequate Informed Consent between March 1, 2020 and December 31, 2021; (b) were not in a Chapter 13 bankruptcy case on the date that the person was placed into the Forbearance; and (c) are not Wells Fargo's officers, directors, or employees, Counsel for Wells Fargo, or Class Counsel.

Settlement Agreement 4, ECF No. 108-1.

As is obvious from the above definition, the settlement class in *Echard* would encompass some of the plaintiffs in *In re Wells Fargo*. Not surprisingly, perhaps, the *In re Wells Fargo* plaintiffs seek to intervene in this case, ECF No. 123, and the *Echard* parties oppose that intervention, ECF Nos. 132 & 133.

## II. STANDARD OF REVIEW

The first-to-file rule provides that when actions "involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment." *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016) (cleaned up; citing cases). The first-to-file rule "encourages comity among federal courts of equal rank," "conserves judicial resources by minimizing duplicative or piecemeal litigation, and protects the parties and the courts from the possibility of

conflicting results." *Id.* (citing cases). A district court "may raise the [first-to-file] rule sua sponte." *Mack Indus. of Kalamazoo, LLC v. J3 Eng'g Grp., LLC*, No. 1:18CV1806, 2018 WL 5994968, at *4 (N.D. Ohio Nov. 15, 2018) (citing cases).

Courts weigh three factors when considering whether to apply the first-to-file rule: "(1) the chronology of events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake." *Heyman v. Lincoln Nat'l Life Ins. Co.*, 781 F. App'x 463, 476 (6th Cir. 2019) (internal quotation marks and citations omitted). Even if these factors weigh in favor of applying the first-to-file rule, courts must also consider "whether any equitable considerations"—including "bad faith, anticipatory litigation, forum shopping, or inequitable conduct"—indicate that application of the rule would be inappropriate. *Boling v. Prospect Funding Holdings, LLC*, 771 F. App'x 562, 571 (6th Cir. 2019). If a court decides to apply the first-to-file rule, it may, *inter alia*, stay, transfer, or dismiss its pending case. *See Baatz*, 814 F.3d at 793–95 (discussing the options available after a court concludes the first-to-file rule applies).

### III. ANALYSIS

In this case, all the factors favor applying the first-to-file rule, and no equitable considerations suggest against applying it. Therefore, the rule applies, and the Court will stay the case.

#### A. Chronology of the Actions

As to the chronology of the actions, the "dates to compare for chronology purposes of the first-to-file rule are when the relevant complaints are filed."

*Baatz*, 814 F.3d at 790. Here, *In re Wells Fargo* was filed in August 2020. *See* ECF No. 1, Case No. 3:20-cv-06009 (N.D. Cal.). *Echard* was filed several months later in January 2021. *See* ECF No. 1, Case No. 2:21-cv-5080 (S.D. Ohio). Therefore, *In re Wells Fargo* was filed first, and the first factor weighs in favor of applying the first-to-file rule.

## B. Similarity of the Parties

The second factor that the Court must consider is the similarity of the parties. This factor "does not require that the parties in the competing lawsuits be *identical*." *Heyman*, 781 F. App'x at 476 (emphasis in original). Instead, the "first-to-file rule applies when the parties in the two actions substantially overlap." *Baatz*, LLC, 814 F.3d at 790 (cleaned up).

The *In re Wells Fargo* and *Echard* parties substantially overlap. First, the defendants are the same in the California litigation and this case, namely, Wells Fargo and affiliated entities. *Compare* Third Am. Compl., ECF No. 162, Case No. 3:20-cv-06009 (N.D. Cal.) *with* Third Am. Compl., ECF No. 148 Case No. 2:21-cv-5080 (S.D. Ohio).

Turning to the plaintiffs, in the context of the first-to-file rule and Rule 23 class actions, the Sixth Circuit has explained the following:

> For purposes of identity of the parties when applying the first-to-file rule, courts have looked at whether there is substantial overlap with the putative class even though the class has not yet been certified. The reason is fairly straightforward: if the opposite rule were adopted, the first-to-file rule might never apply to overlapping class actions as long as they were filed by different plaintiffs. Litigating a class action requires both the parties and the court to expend substantial

resources. Perhaps the most important purpose of the first-to-file rule is to conserve these resources by limiting duplicative cases. To serve this purpose, we must evaluate the identity of the parties by looking at overlap with the putative class. Furthermore, if duplicative class actions were allowed to proceed unabated, the class members could be subject to inconsistent rulings.

*Baatz*, 814 F.3d at 790–91 (cleaned up).

Here, the proposed nationwide classes in *Echard* and *In re Wells Fargo* substantially overlap. True, the *Echard* proposed class is narrower than the *In re Wells Fargo* proposed class. For example, the *Echard* proposed class covers only those borrowers placed in the Forbearance Program "without adequate informed consent" while the *In re Wells Fargo* proposed class covers borrowers whose mortgages were put in the Forbearance Program "without receiving the borrower's request or continued consent for a forbearance and affirmance that the borrower is experiencing a financial hardship due to COVID-19." Third Am. Compl., *Id.* ¶ 398, ECF No. 162, Case No. 3:20-cv-06009 (N.D. Cal.); Settlement Agreement 4, ECF No. 108-1. In addition, the *Echard* proposed class covers only those borrowers who were not in Chapter 13 bankruptcy proceedings at the time their mortgage was placed into the Forbearance Program, while the *In re Wells Fargo* proposed class contains no such limitation. *Id.*

Despite these differences, a substantial number of those who would meet the *Echard* proposed class definition would also meet the *In re Wells Fargo* proposed class definition. Indeed, the Court has difficulty imagining a person who would fit the narrower *Echard* proposed class definition without meeting the

broader *In re Wells Fargo* proposed class definition. Accordingly, because the defendants are the same and there is substantial overlap between the putative classes, the "similarities of the parties" factor weighs in favor of applying the first-to-file rule.[1] *See Heyman*, 781 F. App'x at 476–77 (concluding that the "similarities of the parties" factor weighed in favor of applying the first-to-file rule where the plaintiff in the later-filed action "clearly would be a member of the putative class in [the first-filed action] were it to be certified").

### C. Similarities of the Issues at Stake

The third factor the Court must consider is whether the issues in the two lawsuits are sufficiently similar to warrant application of the first-to-file rule. In considering this factor, courts "examine whether the issues in the case substantially overlap." *Boling*, 771 F. App'x at 571 (internal quotation marks and citations omitted). The "issues need not be identical, but they must be materially on all fours and have such an identity that a determination in one action leaves little or nothing to be determined in the other." *Baatz*, 814 F.3d at 791 (internal quotation marks and citations omitted).

---

[1] To whatever extent Plaintiffs here would argue that the parties do not overlap because they would opt-out of the California litigation, that argument would be unavailing. Although Plaintiffs would certainly have the right to opt-out of any other class action, allowing such plans to "prevent the first-to-file rule from being applied in the first instance would undercut the purposes of the first-to-file rule: parties, not courts, would determine when the rule could be applied, and could force resource-draining duplicative class actions to proceed simultaneously." *Baatz*, 814 F. 3d at 791.

Here, the issues substantially overlap. To start, the *Echard* and *In re Wells Fargo* plaintiffs bring many of the same claims, including alleged violations of TILA, RESPA, and FCRA. *See* Third Am. Compl. ¶¶ 413–587, ECF No. 162, Case No. 3:20-cv-06009 (N.D. Cal.); Third Am. Compl., ECF No. 148, 120–216, Case No. 2:21-cv-5080 (S.D. Ohio). Moreover, it seems that the *Echard* and *In re Wells Fargo* plaintiffs have many of the same legal theories for how Defendants violated those statutes. *Id.* Thus, one court's resolution of these claims would likely leave "little or nothing" for the other court to determine.

Next, the *Echard* and *In re Wells Fargo* plaintiffs assert state-law claims for unjust enrichment, breach of the covenant of good faith and fair dealing, and various types of consumer or borrower protection state statutes. *Id.* Of course, as these claims proceed under different states' laws, there will likely be some variations in the legal and factual issues. However, there will also be significant overlap because at the heart of all the state-law claims is the question of whether Defendants' conduct with the Forbearance Program was lawful (*e.g.*, if one court determines that Wells Fargo's conduct violates one state's consumer protection laws, much of the same reasoning could apply to an analysis of other state consumer protection claims). Thus, if the *In re Wells Fargo* Court makes a determination about the Forbearance Program's lawfulness, that determination would leave relatively little for this Court to consider on those claims. Accordingly, the issues substantially overlap.

To whatever extent the *Echard* parties might argue that the fact that they have reached a settlement negates the similarity of the issues, that argument is unpersuasive. Because *Echard* is a Rule 23 class action, any settlement must be approved by the Court as fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). The Court is hesitant to sign-off on the now-settled *Echard* claims when similar claims are before another Court on a pending motion to dismiss. *See* ECF No. 172, Case No. 3:20-cv-06009 (N.D. Cal.). If the *In re Wells Fargo* Court were to decide against Plaintiffs on the merits, that could suggest that a settlement purporting to resolve those claims is not fair or reasonable. On the other hand, if the *In re Wells Fargo* claims survive a Rule 12(b)(6) motion, that could suggest that the claims are worth more than the amounts the *Echard* parties agreed on in settlement. In short, waiting for the Northern District of California's resolution of pending dispositive motions would promote judicial economy and help avoid inconsistent results. *Cf. Baatz*, 814 F.3d at 789 (explaining that some of the policies behind the first-to-file rule include conserving judicial resources and protecting "the parties and the courts from the possibility of conflicting results" (citing cases)).

Moreover, if this case were to have a finally approved settlement, it would not obviate the need for further litigation in *In re Wells Fargo*. *Cf. Long v. CVS Caremark Corp.*, No. 5:09CV1392, 2010 WL 271428, at *3 (N.D. Ohio Jan. 15, 2010) *amended on other grounds*, 695 F. Supp. 2d 633 (N.D. Ohio 2010) ("If the parties to the [first-filed action], which include the parties before this Court, reach

a settlement, no court need reach the requested determination."). As discussed above, some borrowers fit the *In re Wells Fargo* proposed class definition but do not fit the *Echard* proposed definition, and, therefore, those borrowers' claims cannot be resolved by a settlement in *Echard*. As such, litigation on those claims would likely continue in *In re Wells Fargo*. Thus, allowing settlement to proceed in this case would not promote efficiency or protect against conflicting results.

Accordingly, the third factor weighs in favor of applying the first-to-file rule.

### D. Equitable Considerations

Having found all three factors met, the Court must now consider "whether any equitable considerations in the case counsel against application of the rule." *Boling*, 771 F. App'x at 571 (internal quotation marks and citations omitted). "Factors that weigh against enforcement of the first-to-file rule include extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007) (internal quotation marks and citation omitted).

There is no evidence that *In re Wells Fargo*—which was initiated several months before *Echard*—was an anticipatory suit, filed in bad faith, or an exercise in forum shopping. Further, there is nothing about either *Echard* or *In re Wells Fargo* that is so extraordinary that applying the first-to-file rule would be inappropriate. Accordingly, the Court will apply the first-to-file rule in this case.

### E. Appropriate Disposition

The only remaining question is what disposition is appropriate here. "After deciding that the first-to-file rule applies, disposition of the second-filed action is within the court's discretion." *Long*, 2010 WL 271428, at *2. Among the available options are staying, dismissing, or transferring this case. *See Baatz*, 814 F.3d at 793–95.

Under the circumstances of this case, a sua sponte transfer is inappropriate. The *Echard* parties requested their case be heard in this district, and the Northern District of California agreed with the parties. Thus, there is minimal utility in transferring the case back to California against the parties' wishes.

Dismissal, even dismissal without prejudice, would be inefficient in this case. Named Plaintiffs in this case may choose to opt out of *In re Wells Fargo* and wish to continue to pursue their own action. If so, a stay, rather than a dismissal, would allow all parties to pick up where they left off in this litigation without the need to re-file any of the over-one-hundred-fifty docket entries in this case. Accordingly, a stay is the best approach here. *See Baatz*, 814 F.3d at 795 ("Why take chances? It is simpler just to stay the second suit" (internal quotation marks and citations omitted)).

### IV. CONCLUSION

For these reasons, the Court **STAYS** this case pending the resolution of *In re Wells Fargo Forbearance Litigation*, Case No. 3:20-cv-06009 (N.D. Cal.). The

parties are **ORDERED** to file a report outlining the status of the California litigation **WITHIN 180 DAYS**.

If the *Echard* parties would prefer to have this case transferred back to the Northern District of California, they may file a joint motion to that effect **WITHIN SIXTY DAYS**.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**