**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| BRIAN ECHARD et al., | Case No. 2:21-cv-05080-MHW-EPD |
| Plaintiffs, | **PLAINTIFFS' JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS** |
| v. | |
| WELLS FARGO BANK, N.A. | Judge Michael H. Watson |
| Defendant. | Magistrate Judge Elizabeth A. Preston Deavers |

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: WELLS FARGO FORBEARANCE LITIGATION** | Case No. 2:24-cv-01026-MHW-EPD |
| | **PLAINTIFFS' JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS** |
| | Judge Michael H. Watson |
| | Magistrate Judge Elizabeth A. Preston Deavers |

## I.    INTRODUCTION

Plaintiffs Luis and Marisol Castro, Pamela Delpapa, Jenna Doctor, Samara Green, Patrick Healy, Barbara Prado, and Renrick and Vivian Robinson ("Consolidated Plaintiffs"), and Brian Echard, Heather Shimp, and Patricia Foley (the "*Echard* Plaintiffs") hereby submit this motion for preliminary approval of a proposed class action settlement and certification of settlement class (the "Settlement"), reached with defendants Wells Fargo Bank, N.A. and Wells Fargo & Co. ("Wells Fargo" or "Defendants").[1] Pursuant to the Settlement Agreement, Plaintiffs file this motion jointly, but are simultaneously filing separate Rule 23(g) motions that address matters on which Plaintiffs do not agree. Pursuant to S.D. Ohio Civ. R. 7.3(a), the Parties conferred, and Defendants do not oppose this motion or the Settlement. The terms of the Settlement are set forth in the Settlement Agreement (the "Agreement" or "Agr.") filed as **Exhibit 1**. Together with this motion, counsel for the Consolidated Plaintiffs and the *Echard* Plaintiffs each seek appointment as class counsel for the settlement class, pursuant to Fed. R. Civ. P. 23(g). Agr., § II(C).

The Settlement resolves the litigation between Plaintiffs and Defendants for $185 million on behalf of a proposed class that includes the borrowers associated with approximately 273,000 loans. If approved, the Settlement Fund shall be used to pay: (1) Costs of Settlement Notice and Administration; (2) Service Awards to the Class Representatives; (3) Payments to Class Members; and (4) the attorneys' fees and costs to Plaintiffs' counsel. *Id.* §IV(A).

The proposed Settlement is fair, adequate, and reasonable, and satisfies all the criteria for preliminary settlement approval and certification for settlement purposes under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). Indeed, the Settlement is an excellent recovery for the class that provides substantial relief to Class Members. Accordingly, Plaintiffs move for an

---

[1] Consolidated Plaintiffs, *Echard* Plaintiffs, and Defendants are collectively referred to as the "Parties." Consolidated Plaintiffs and *Echard* Plaintiffs are collectively referred to as "Plaintiffs."

order: (a) certifying the Settlement Class for settlement purposes; (b) preliminarily approving the proposed Settlement; (c) appointing Plaintiffs as Class Representatives; (d) approving the class Notice Plan; (e) appointing Epiq Class Action & Claims Solutions, Inc. ("Epiq") as a settlement administrator; and (f) scheduling a Final Approval Hearing.

## II.    FACTUAL ALLEGATIONS

In response to the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which, among other things, gave homeowners across the United States that were concerned about their ability to make their mortgage payments due to COVID, the right to *request* and be granted a forbearance if they had a federally backed mortgage loan. Mortgage forbearance plans, can, however, have potential financial consequences, such as preventing borrowers from accessing credit markets to obtain loans and lines of credit and preventing them from refinancing existing mortgage loans while borrowers are in the mortgage forbearance plans. A forbearance may indirectly negatively impact borrowers' credit scores.

Plaintiffs allege that Defendants were aware of these potential implications when Defendants implemented their COVID forbearance program. Consolidated Plaintiffs' CAC, ECF No. 210, PageID 9; *Echard* Plaintiffs' TAC, ECF No. 148 at ¶ 181. During the first few months of the COVID pandemic, Wells Fargo made the decision to use automation to place hundreds of thousands of mortgage loans within its servicing portfolio automatically into forbearance, without any advance notice to affected borrowers. *See* CAC at PageID 28-34; *Echard* TAC, ECF No. 148 at ¶¶ 14-17, 54-59. Plaintiffs allege that Defendants' conduct harmed consumers, including Plaintiffs, while benefitting Defendants financially. *See* CAC at PageID 52-54; *Echard* TAC, ECF No. 148 at ¶¶ 61-72. Defendants deny these allegations, assert that Wells Fargo provided mortgage

forbearances in an attempt to help customers who were concerned they would not be able to make their next mortgage payment, and maintain that they have valid defenses to these claims. Agr., *2.

## III.    PROCEDURAL BACKGROUND

### A. Procedural Background of the Consolidated Litigation

Beginning in July of 2020, Consolidated Plaintiffs commenced filing lawsuits stemming from what Plaintiffs allege was Defendants' improper placing of residential mortgage borrowers into forbearance. On July 23, 2020, Gerald Forsburg filed suit against Defendants in the United States District Court for the Western District of Virginia (Case No.: 5:20-cv-00046). On July 31, 2020, Samara Green and Brett Jacob filed suit against Defendants in the United States District Court for the Northern District of California (Case No.: 3:20-cv-05296). On August 11, 2020, Patrick Healy filed a complaint against Wells Fargo Bank, N.A. in the Superior Court for the County of San Diego, which was removed to the Southern District of California (Case No.: 3:20-cv-01838). On August 26, 2020, Pamela Delpapa filed suit against Wells Fargo Bank, N.A. in the United States District Court for the Northern District of California (Case No.: 3:20-cv-06009). On December 24, 2020, an amended complaint was filed, adding Samara Green, Brett Jacob and Charles Johnson to the *Delpapa* action and asserting claims against both Defendants (the "Consolidated Action").

On January 11, 2022, *Healy* was transferred to the Northern District of California. On May 16, 2022, *Forsburg* was transferred to the Northern District of California. On August 19, 2022, all of the cases in California were consolidated into *In re Wells Fargo Forbearance Litigation* and all filings and submissions after that were filed in Case No 3:20-cv-06009-JD.

On May 2, 2023, an Order on Defendants' motion to dismiss the Third Amended Complaint was issued, dismissing with prejudice one claim, and dismissing all state law claims

with prejudice to the extent they relate to credit reporting. ECF No. 191. The remaining claims were either unchallenged, found to be properly pled, or granted leave to amend. On May 19, 2023, the Consolidated Plaintiffs filed the Fourth Amended Consolidated Class Action Complaint ("CAC"). The Consolidated Plaintiffs asserted claims under (1) the Racketeer Influenced and Corrupt Organizations Act; (2) the Truth in Lending Act ("TILA"); (3) the Real Estate Settlement Procedures Act ("RESPA"); (4) the Fair Credit Reporting Act ("FCRA"); (5) the Rosenthal Fair Debt Collection Practices Act; (6) the Georgia Fair Business Practices Act; (7) the New York Deceptive Trade Practices Act; (8) the Texas Debt Collection Practices Act; (9) the Florida Consumer Collections Practices Act; and for (10) a Breach of Implied Covenant of Good Faith and Fair Dealing; (11) Unjust Enrichment; (12) Unfair Competition under California's Unfair Competition Law; and (13) Gross Negligence. Wells Fargo again moved to dismiss on June 16, 2023. ECF No. 197.

Consolidated Plaintiffs contend that they engaged in robust formal discovery to develop their claims. Kazerounian Decl. ¶¶ 8-16. On January 4, 2022, Consolidated Plaintiffs served a first set of written discovery. *Id*. ¶ 8. Defendants began their rolling document production on or about March 9, 2022, producing 9,147 documents in the first production. *Id*. ¶ 9. Defendants continued this rolling production through November of 2023. *Id*. ¶ 10. Defendants produced over 44,000 documents (consisting of over 145,000 pages) in the Consolidated Action, which were the result of extensive meet and confer efforts and discovery disputes requiring court intervention. *Id*. ¶ 11. On August 18, 2022, Consolidated Plaintiffs obtained an order requiring Defendants to produce limited discovery relating to early pool buyouts, which was the subject of many meet and confer efforts. Consolidated Plaintiffs also responded to written discovery on January 23, 2023. *Id*. ¶ 12. Consolidated Plaintiffs have taken eight depositions since July 20, 2022. *Id*. ¶ 14.

### B. Procedural History of the Echard Litigation

On January 28, 2021, Brian Echard filed his original complaint against Defendants in the United States District Court for the Western District of Washington (Case No.: 2:21-cv-00112). That case was transferred to the Northern District of California on September 7, 2021, and then transferred to this Court on October 19, 2021 (Case No.: 2:21-cv-05080).

*Echard* Plaintiffs contend that they engaged in robust formal and informal discovery to develop their claims. Lowney Decl. ¶¶ 5-7. On August 10, 2021, *Echard* Plaintiffs served a first set of written discovery. *Id*. ¶ 6. Defendants produced the same 44,000 documents that had been produced to the Consolidated Plaintiffs (consisting of over 145,000 pages), mentioned above, to the *Echard* Plaintiffs. *Id*. Echard Plaintiffs also responded to informal discovery requests by Wells Fargo. *Id*. at ¶ 7. *Echard* Plaintiffs attended three of the eight depositions taken by the Consolidated Plaintiffs. *Id*. ¶ 5. *Echard* Plaintiffs also fully briefed one motion to dismiss and filed three amended complaints over the course of the three-year litigation. ECF Nos. 13, 14, 116, 148. *Echard* Plaintiffs third amended complaint filed after they reached a settlement with Wells Fargo asserts claims under: (1) Breach of contract and implied covenant of good faith and fair dealing; (2) breach of fiduciary duty; (3) fraud; (4) TILA; (5) RESPA; (6) FCRA; (7) unjust enrichment; (8) negligence and negligent misrepresentation; and (9) Ohio Deceptive Trade Practices Act.

### C. Arm's Length Mediation Efforts Prior to Settlement

On October 3, 2023, and October 24, 2023, Plaintiffs and Wells Fargo attended global mediation sessions in front of the Honorable Layn Phillips (Ret.). Mediation sessions with Judge Phillips took place on October 3 and October 24, 2023, but ended without agreement. On November 7, 2023, Judge Phillips made, and the Consolidated Plaintiffs and Wells Fargo accepted, a mediator's recommendation to settle the Actions on the monetary and class composition terms

described herein to which the *Echard* Plaintiffs subsequently assented. Agr. *3. After a final mediation session with Judge Phillips held on December 3, 2024 regarding the Term Sheet, a Term Sheet was executed by the Parties on February 12, 2024. *Id.* On February 29, 2024, the Consolidated Action was transferred to this District. *Id.* §II(A)(1)*.* The Settlement Agreement was executed on April 16, 2024. *Id.* This Settlement, if approved, will resolve the claims in **_both_** Actions. *Id.* §II(A)(2).

## IV. THE PROPOSED CLASS ACTION SETTLEMENT

### A. The Settlement Class

> All persons in the United States who: (a) had a mortgage serviced by Wells Fargo that was placed into a forbearance Without Adequate Informed Consent between March 1, 2020 and December 31, 2021; (b) were not a debtor or the Co-Borrower of a debtor in a Ch. 13 bankruptcy on the date that the Mortgage was placed into the forbearance; and (c) are not Wells Fargo's officers, directors, or employees, Counsel for Wells Fargo, or Plaintiffs' Counsel.

Agr., § I(8). The defined term, "Without Adequate Informed Consent," as used in the above Class definition means: (1) **the Mortgage entered Forbearance via Wells Fargo's online banking or interactive voice response ("IVR") portal prior to May 11, 2020**, *unless* the customer (i) made no payments from the date that the Forbearance was requested and continuing during the entire Forbearance period (unless the customer was set up on forbearance before April 15, 2020 and for whom Wells Fargo turned off automatic ACH mortgage payments); (ii) also requested Forbearance via Wells Fargo's online banking or IVR portal on or after May 11, 2020; or (iii) requested a Forbearance extension; **or** (2) **the Mortgage entered Forbearance as a result of a Proactive Wells Fargo Business Decision,** *unless* the customer (i) requested forbearance online or through the IVR portal on or after May 11, 2020; or (ii) requested a Forbearance extension; **or** (3) **Wells Fargo has determined that the Forbearance was provided in error**. *Id*. § I(72)(c).

### B. Monetary Relief to Class Members

Under the Agreement, Defendants will pay $185,000,000.00 into a *non-reversionary* Settlement Fund within forty-five (45) calendar days after preliminary approval. *Id*. §II(E). The Settlement Fund represents the total and maximum agreed upon payment under the Settlement. *Id*. § IV(A). Relief to Class Members under the Settlement includes two sources of payments: (1) $69,000,000 will be distributed on a pro-rata basis to Class Members who do not opt out without any need to submit a claim; and (2) the remainder of the available Settlement Funds will be paid pursuant to the Allocation Plan. *Id*. § IV(B)(2).

> i. $69,000,000 Automatic Payment Fund to be distributed automatically on a pro-rata basis without requiring a claim form

Based on data produced to Plaintiffs, the Settlement Class contains about 375,000 individuals associated with approximately 273,000 mortgages serviced by Defendants. For the purposes of receiving a pro-rata distribution from the $69,000,000 Automatic Payment Fund, co-borrowers on a mortgage account will be treated as a single Class Member under the Settlement. Agr., § IV(B)(1). Assuming zero opt-outs, the $69,000,000 in the Automatic Payment Fund will be distributed equally, with a payout of approximately $252 per mortgage account.

> ii. Allocation Plan for Class Members who submit a valid claim

The remainder of the available Settlement Fund (less the costs for Notice and Administration, Service Awards, and up to 25% of the Settlement Fund for attorneys' fees, plus reasonable expenses) will be paid pursuant to an allocation and claims process, subject to Court approval. *Id*. § IV(B)(2). The Allocation Plan ensures that all Class Members are provided with compensation and allows those Class Members who suffered actual, provable harm as a result of Wells Fargo's actions to request further compensation for those injuries. *Id*.

The Allocation Plan was also designed in a manner to ensure that it (i) will not be dilutive of the recovery that Eligible Class Members would have received under the *Echard* Settlement, and (ii) will compensate for the forms of damages compensable under the *Echard* Settlement. The Allocation Plan is attached as Exhibit 2.

       iii.   <u>Second Distribution for Any Unclaimed or Uncashed Funds</u>

If there is a material number of residual funds, and if a second distribution is practicable, there will be a pro-rata distribution on a mortgage account basis to those who cashed their first payments. *Id*. § IV(B)(3). If impracticable to conduct a second distribution, any residual funds will be treated pursuant to the state unclaimed funds procedures or through a *cy pres* distribution, as determined by the Court. *Id*.

**C.  Attorneys' Fees and Costs, and Service Awards**

Under the Agreement, Plaintiffs may request a service award in an amount of up to $12,500 for their efforts in litigation to represent the Class Members, which will be paid from the Settlement Fund if approved by the Court. *Id*. § VII(E). Plaintiffs will separately apply to the Court for service awards and awards of attorneys' fees and litigation costs to be paid from the Settlement Fund. Agr. § VII(A). Defendants will not object to any motion for attorneys' fees so long as the fees requested between Consolidated Plaintiffs and *Echard* Plaintiffs do not exceed 25% of the Settlement Fund.

**V.     THE COURT SHOULD GRANT PRELIMINARY APPROVAL**

A class action may only be settled with the court's approval. *See* Fed. R. Civ. P. 23(e). Rule 23(e)(1)(B)(i) directs a court to determine, at the preliminary approval stage, whether it "will likely be able to ... approve the proposal under Rule 23(e)(2)." Rule 23(e)(2), as amended December 1, 2018, sets out four factors for courts to consider when determining whether to preliminarily approve a class action settlement. *See Stephens v. ADS Alliance Data Sys., Inc.*, Case No. 2:20-cv-2152, 2023 WL 5528757 at * 1 (S.D. Ohio, Aug. 28, 2023) (slip opinion) (Watson,

J.) (applying Rule 23(e)(2) factors determining court would likely be able to certify the settlement, as required by Rule 23(e)(1)(B)).

Noting that the previous Sixth Circuit factors were somewhat duplicative of the new considerations in Rule 23(e), the *Day* court also used the Sixth Circuit factors in its analysis because the Advisory Committee specifically stated that the goal of the 2018 amendment was "not to displace any factor [developed by the federal circuit courts]." *Day v. AMC Corp.*, No. 5:17-cv-183, WL 3977253, * 5-6 (E.D. Ky. July 26, 2019); Advisory Committee Notes, 324 F.R.D at 918. Here, the Settlement meets the criteria enumerated by Rule 23(e) as well as the Sixth Circuit's fairness factors, and warrants preliminary approval.

### a. The Settlement is "Fair, Reasonable, and Adequate"

"When deciding whether to approve a proposed settlement, the Court must consider whether the settlement is 'fair, reasonable, and adequate.'" *Bartell v. LTF Club Operations Co.*, No. 2:14-cv-401, 2020 U.S. Dist. LEXIS 229682, at *7 (S.D. Ohio Aug. 7, 2020) citing Fed. R. Civ. P. 23(e)(2). The Agreement is fundamentally "fair, adequate, and reasonable," because: (1) the Class Representatives and Class Counsel have, and will continue, to adequately represent the Class; (2) the proposed Settlement was the result of years of litigation and arm's length settlement negotiations facilitated by a third-party neutral; and (3) the monetary relief is meaningful and significant; and (4) the Settlement treats class member equitably relative to each other.

#### i. The Class Representatives and Class Counsel have adequately represented the class.

Counsel for the Consolidated Plaintiffs and the *Echard* Plaintiffs do not agree on who should be appointed to serve as Class Counsel. This dispute is set forth in detail in the accompanying, competing Rule 23(g) motions. Notwithstanding this dispute, and however it is resolved by the Court, there is no question that the Class has at least one adequate applicant for

appointment as class counsel. The Settlement is an outstanding result made possible by at a minimum some plaintiffs who were devoted to the interests of the Class, and at a minimum some counsel who vigorously represented the Class, and who, once appointed, will continue to look after the best interests of the Class Members. Counsel attest to the adequacy of their own clients, and the work they have done to achieve the Settlement.

ii.   The proposed Settlement was the result of arm's length negotiations.

As explained above, this proposed Settlement followed nearly four years of contentious litigation in several venues across the nation, several days of intense mediation, as well as several months of vigorous post-mediation negotiations. Additionally, this Settlement was ultimately achieved through acceptance of a mediator's proposal. It is well established that the use of a neutral mediator, and acceptance of a mediators' proposal, can be evidence of a fair and arms-length settlement. *See Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007) ("The participation of an independent mediator in the settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.").

iii.   The Settlement provides substantial monetary relief to Class Members

At a minimum, Class Members will receive approximately $252 per mortgage account *automatically*. Agr., § IV(B)(1). Moreover, once this automatic payment is made, and after approved fees, costs and expenses are deducted, there will still be tens of millions of dollars available to distribute to Class Members with the Supplemental Payment Fund. *Id.* § IV(B)(2). Assuming a 25% attorneys' fee award, service awards, and litigation and settlement expenses generously estimated at $3 million, there will remain as much as $66.75 million for distribution to the Class through the supplemental Allocation Plan. Assuming, for the sake of analysis, equal distribution to all Class Members, and no opt-outs, this would nearly double the average Class

Member recovery, to over $496. Such a settlement is the "gold standard" for this type of consumer claim. *Reyes v. Experian Info. Sols.*, 856 F. App'x 108, 110 (9th Cir. 2021).

The proposed Automatic Payment of approximately $252 per loan plus additional compensatory damages compares favorably to other recent settlements of FCRA claims. *See Moore v. Aerotek, Inc.*, No. 2:15-cv-2701, 2017 U.S. Dist. LEXIS 102621, at *14-15 (S.D. Ohio June 30, 2017) (approving per class member payments of between $13-$80).

The Plaintiffs asserted a number of different claims providing different types of relief. These included FCRA and RFDCPA claims that each provide up to $1,000 in statutory damages; RESPA and TILA claims, each providing up to $2,000 in statutory damages; unjust enrichment damages, which Consolidated Plaintiffs estimate to be in the ballpark of $750,000,000; and credit related damages, which the Consolidated Plaintiffs' expert economist estimated to be approximately $136 million. Wells Fargo vigorously disputes Plaintiffs' damages estimates.

It is highly unlikely that Plaintiffs would have prevailed on all of these claims and been awarded all of these damages, for among other reasons, they could be considered stacking, redundant and excessive. *See Belliard v. Tarnovsky*, No. 20-cv-1055-GBD-KHP, 2023 WL 3004963, at *5 (S.D.N.Y. Mar. 6, 2023) (overlapping stacked statutory damages impermissible double recovery).  But even assuming a total victory on all claims and all damages, the $185 million Settlement amounts to more than 20% of the total potential, home run damages, save for punitive damages. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2017 WL 2212783, at *24 (N.D. Cal. May 17, 2017) (noting common practice of not considering punitive damages for evaluating settlements). As this Court has noted, "no matter how confident one may be of the outcome of litigation, such confidence is often

misplaced." *In re Nationwide Fin. Servs. Litig.*, No. 2:08-cv-00249, 2009 U.S. Dist. LEXIS 126962, at * 6 (S.D. Ohio, August 18, 2009) (Watson, J.).

There can be no serious doubt that this is an outstanding result for the Class. *See In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 1001 (N.D. Ohio 2016) (noting that settlements recovering 6% of damages have been approved, as "a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair").

<u>iv. The proposal treats Class Members equitably relative to each other</u>

The Settlement provides for an initial pro-rata payment to all Class Members without the requirement of a claim form, from the Automatic Payment Fund. Agr. § IV(B)(1). In addition, Class Members may submit a claim under the Allocation Plan. Agr. § IV(B)(2). Any remaining unclaimed/uncashed funds will be distributed on a pro-rata basis via a second distribution. Agr. § IV(B)(3). Thus, all Class Members are treated equitably and fairly under the Settlement, providing a substantial recovery to every Class Member, while also taking into account situations in which Class Members experienced unique financial consequences as a result of Wells Fargo's actions.

**b. The Seven Fairness Factors Established by The Sixth Circuit Are Satisfied**

"After considering the enumerated Rule 23(e)(2) factors, many courts in this Circuit also consider whether a settlement will likely satisfy the seven factors established by the Sixth Circuit for assessing the fairness, reasonableness, and adequacy of a class action settlement." *In re Procter & Gamble Aerosol Prods. Mktg.*, 2022 U.S. Dist. LEXIS 243238, at *27.

<u>i. The risk of fraud or collusion.</u>

"In this Circuit, 'Courts presume the absence of fraud or collusion' in reaching a settlement 'unless there is evidence to the contrary.'" *Karpik*, 2021 U.S. Dist. LEXIS 38641, at *15 (citation omitted). "Accordingly, Courts consistently approve class action settlements reached through

arms-length negotiations after meaningful discovery." *Id*. As noted above, this $185 million Settlement was reached after extensive and numerous arm's length non-collusive negations, and is the product of a mediator's proposal, "strong evidence that the negotiations were vigorous, were conducted at arm's length, and were without any fraud or collusion." *See Griffin*, 2013 U.S. Dist. LEXIS 173702, at *9. Finally, the Settlement creates a non-reversionary fund, further supporting the non-collusiveness of this Settlement. *See Gascho v. Glob. Fitness Holdings*, LLC, 822 F.3d 269, 291 (6th Cir. 2016).

ii. <u>The complexity, expense and likely duration of the litigation.</u>

"[A]voiding the delay, risks, and costs of continued litigation against a defendant is a valid reason for counsel to recommend and for the court to approve a settlement." *In re Nationwide Fin. Servs. Litig*., No. 2:08-CV-00249, 2009 U.S. Dist. LEXIS 126962, at *10 (S.D. Ohio Aug. 18, 2009). Plaintiffs believe that the claims asserted in the Actions are meritorious, but Defendants continue to deny that Plaintiffs are entitled to any form of damages or relief based on the conduct alleged. Defendants also continue to contest the pleadings and have fully briefed a motion to dismiss the Consolidated Plaintiffs' Fourth Amended Complaint. Given the Parties' positions on this case and considering the fact that the Plaintiffs and Defendants have actively litigated the case, followed by many months of settlement negotiations, continued litigation would be protracted, unduly burdensome, and expensive. Plaintiffs and their counsel have carefully balanced the risks of engaging in protracted and contentious litigation against the benefits to the Class and believe the relief obtained now outweighs the risks of continued litigation.

iii. <u>The amount of discovery engaged in by the parties.</u>

Plaintiffs and Defendants engaged in almost four years of extensive, formal and informal discovery, permitting each side to fully assess the strengths and weaknesses of their respective

claims and defenses, which included reviewing over 44,000 documents, analyzing millions of data points, taking eight depositions, and engaging several experts. *See Koenig*, 2012 U.S. Dist. LEXIS 207799, at *10 (settlement is favored where there has been "sufficient discovery to be fully apprised about the legal and factual issues presented as well as the strengths and weaknesses of their cases"). This factor too weighs in favor of preliminary approval.

    iv. <u>The likelihood of success on the merits.</u>

  While Plaintiffs are confident that they would ultimately prevail on at least some of their claims, there are risks inherent in all litigation, including this litigation stemming from Defendants' actions during the COVID-19 pandemic, when the CARES Act was enacted, and its application was novel. *See e.g.*, *Connectivity Sys. Inc.*, 2011 U.S. Dist. LEXIS 7829, at *6 (finding settlement is favored where the "Named Plaintiffs' likelihood of success on the merits is uncertain."). Prior to the Settlement, Defendants had prevailed in dismissing some of Consolidated Plaintiffs' claims, and Defendants filed yet another motion to dismiss Consolidated Plaintiffs' claims. Even if the Plaintiffs had prevailed, there remained class certification and summary judgments motions to adjudicate, with likely appeals following decisions on these motions. *Agr.* *2. This factor weighs in favor of preliminary approval.

    v. <u>The opinions of class counsel and class representatives.</u>

  "The recommendation of Class Counsel, skilled in class actions and consumer litigation, that the Court should approve the Settlement is entitled to deference." *Bartell*, 2020 U.S. Dist. LEXIS 229682, at *12. The recommendations and experience of counsel for the Plaintiffs are explained in the concurrently filed Rule 23(g) motions.

    vi. <u>The reaction of absent class members.</u>

Given that there is substantial payment to all Class Members from the Automatic Payment Fund, coupled with the ability for Class Members to submit a claim form to obtain benefits under the Allocation Plan, Plaintiffs' counsel are confident the reaction of absent class members will be positive. Further, any dissenting Class Member will be permitted to object and be heard at a final approval hearing. Agr. § VIII(C). Nonetheless, this factor will be fully addressed after notice has been issued and Class Members have been given the opportunity to object or opt-out.

vii. Public Interest.

Public interest weighs in favor of preliminary approval, given that this Settlement would resolve multiple putative class actions involving hundreds of thousands of consumer claims across the nation. *In re Nationwide Fin. Servs. Litig.*, 2009 U.S. Dist. LEXIS 126962, at *22.

**c. The Proposed Notice Plan Is Appropriate and Adequate**

"When a class is certified for settlement purposes under Rule 23(b)(3), the notice must meet the requirements of both Rule 23(e) and (c)(2)(B)." *Melgard v. Ohiohealth Corp.*, No. 2:20-cv-5322, 2023 U.S. Dist. LEXIS 78603, at *9 (S.D. Ohio May 4, 2023). Rule 23(e)(1)(B) requires that "[t]he court must direct notice in a reasonable manner." Under Rule 23(c)(2)(B) "the court must direct. . . notice that is practicable under the circumstances." Here, the Notice Plan provides notice via email, mail (where an email is not available), and via the Settlement Website. Agr. § II(E); Epiq Decl. ¶¶ 20-25; *see also*, Exhibit A to Agr. Defendants have contact information for nearly all Class Members. Thus, the Notice Plan provides adequate notice and should be preliminarily approved. *See Pratt v. Kse Sportsman Media, Inc.*, No. 1:21-cv-11404, 2023 U.S. Dist. LEXIS 150580, at *27 (E.D. Mich. Aug. 25, 2023).

**VI. THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS**

**a. Numerosity**

Numerosity requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, the Settlement Class contains about 375,000 individuals associated with 273,000 mortgages. Thus, numerosity is easily satisfied.

### b. Commonality

Commonality requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The commonality test is qualitative. . . a single issue common to all members of a class satisfies the requirement." *Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 U.S. Dist. LEXIS 7829, at *21 (S.D. Ohio Jan. 25, 2011) (citation omitted). Here, there are several questions of law and fact common to Plaintiffs and to the Class stemming from the same alleged course of conduct by Defendants, which include, but are not limited to: (1) whether Defendants enrolled its residential mortgage customers in forbearance programs without their consent; (2) whether Defendants have breached terms implied in their contracts with Plaintiffs and the Class Members; (3) whether Defendants violated the various consumer protection statutes alleged in the operative complaint; and (4) whether Plaintiffs and the Class Members were damaged by Defendants' conduct, and, if so, the appropriate measure of damages. *See* Consolidated Plaintiffs' CAC, ECF No. 210, PageID 87-88; *Echard* Plaintiffs TAC, ECF No. 148, ¶ 115.

### c. Typicality

Typicality is established where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "A claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007). Here, Plaintiffs' claims are typical of the claims of the Class Members as they arise from the same business practice and course of conduct by Defendants

during the COVID-19 pandemic. Plaintiffs, like members of the proposed Settlement Class, were residential mortgage account holders whose mortgages were placed into forbearance by Defendants allegedly without proper informed consent. *See* Consolidated Plaintiffs' CAC, ECF No. 210, PageID 49-67, 72-79; *see Echard* Plaintiffs' TAC, ECF No. 148, PageID 18, 21-22.

### d. Adequacy of Representation

"Rule 23(a)(4) requires 'the representative parties will fairly and adequately protect the interests of the class.'" *Koenig v. USA Hockey, Inc.*, No. 2:09-cv-1097, 2012 U.S. Dist. LEXIS 207799, at *19-20 (S.D. Ohio Jan. 10, 2012) citing Fed. R. Civ. P. 23(a)(4). Both the Named Plaintiffs and their counsel must satisfy this requirement. Here, the Consolidated Plaintiffs and the *Echard* Plaintiffs are members of the Settlement Class. Their respective counsel attest to the work their clients have done to represent the interest of the absent Class Members over the course of this litigation, and their adequacy. Kazerounian Decl., ¶ 23; Lowney Decl., ¶ 14. They do not have any known conflicts of interest with other Class Members, their legal counsel or any Class Members. Kazerounian Decl., ¶ 20; ¶ 22; Lowney Decl., ¶ 14. Thus, Consolidated Plaintiffs and *Echard* Plaintiffs each assert that they are adequate representatives of the Settlement Class. Consolidated Plaintiffs and *Echard* Plaintiffs have separately filed motions pursuant to Rule 23(g) seeking appointment as Class Counsel for the Settlement Class, concurrently herewith.

### e. Common Questions Sufficiently Predominate

Once the prerequisites of Rule 23(a) are satisfied, the Court must determine if one of the subparts of Rule 23(b) are also satisfied. *Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997). Here, Rule 23(b)(3) is satisfied because "common questions will predominate over individual ones." *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 459 (6th Cir. 2020). Here, there are numerous common questions of fact and law that will predominate over individual inquiries.

Indeed, Plaintiffs believe that the central question of whether Defendants properly obtained informed consent before placing Class Members into a mortgage forbearance is a key common issue that would guide the litigation. *See e.g.*, *Daenzer v. Wayland Ford*, Case No. 1:01-CV-133, 2002 U.S. Dist. LEXIS 1296, at *9 (W.D. Mich. Jan. 23, 2002). Additionally, Plaintiffs contend that the alleged improper conduct is the result of standardized actions taken by Defendants.

### f. Superiority of Class Action Settlement

"Finally, before certifying a class under Rule 23(b)(3), the Court must find that a class action is 'superior to other available methods for fairly and efficiently adjudicating the controversy." *Zilinsky,* 2023 U.S. Dist. LEXIS 54661, at *8 citing Fed. R. Civ. P. 23(b)(3). When evaluating certification of a class for settlement purposes, "the Court need not consider the likely difficulty in managing the class action." *In re Procter & Gamble Aerosol Prods.* Mktg., No. 2:22-md-3025, 2022 U.S. Dist. LEXIS 243238, at *12 (S.D. Ohio Oct. 28, 2022).

Class resolution of this dispute is superior to all other available means for the fair and efficient adjudication of these controversies. Individualized litigation would cause significant delay, expense, and an overwhelming waste of already limited judicial resources, and could result in inconsistent judgments. *See Hillson v. Kelly Servs*., No. 2:15-cv-10803, 2017 U.S. Dist. LEXIS 8699, at *53 (E.D. Mich. Jan. 23, 2017). By contrast, a class action provides the benefits in single, economical, and comprehensive action. Further, the injury that Plaintiffs contend each individual member of the Settlement Class suffered is relatively small in comparison to the burden and expense of individual prosecution. "The reality is that few individual plaintiffs would sue or receive any redress at all in individual actions." *Geary v. Green Tree Servicing, LLC*, No. 2:14-CV-00522, 2017 U.S. Dist. LEXIS 93000, at *27 (S.D. Ohio June 16, 2017).

## VII. THE NOTICE PROGRAM, SETTLEMENT ADMINISTRATOR, AND PROCESS FOR OPT-OUTS AND OBJECTIONS SHOULD BE APPROVED

Based on a bidding process, Plaintiffs selected class action settlement administrator Epiq to serve as the Claims Administrator. Agr. § I(2). Notice will be given to each Class Member in multiple ways to best ensure notice to the greatest extent possible, starting with: (1) email, where email address is known, and then (2) by mail, where no email address is known, and (3) by detailed notice on the Settlement Website. *Id*. § II(E); Epiq Decl., ¶¶ 20-25. There will also be a toll-free number for inquiries. Agr. § VI(A)(16). All costs associated with the Notice Plan and Administration Costs shall be paid from the Settlement Fund. *Id.* § IV(A).

Defendants will provide Epiq with relevant records regarding the Settlement Population, including name, the last known email address, and the last known mailing address. *Id.* § II(E). If Defendants' records do not have a Class Member's email or the email is otherwise returned as undeliverable, Epiq will obtain email and/or mailing addresses through commercially or publicly available "reverse lookup" sources. Epiq Decl., ¶ 24. If Epiq is unable to find a valid email address via a reverse look up, Epiq will check a national database for a better email and/or mailing address. *Id.* Furthermore, notice will be provided by mail, to the extent Defendants have a mailing address, if the email notices are undeliverable. Agr. § II(E). Defendants will also provide notice (with the Claims Administrator's assistance) in accordance with the requirements of the Class Action Fairness Act ("CAFA"). *Id*. § II(F). The costs of administering the CAFA notice shall be paid from the Settlement Fund. *Id*.

### A. Reasonable Scope of Release

In exchange for the monetary relief, Class Members will relinquish all claims relating to their Forbearances. Agr. § III(A)(1). Thus, the release is tailored to the claims in the lawsuits.

### B. Submission of a Claim Form Under the Allocation Plan

Class Members who have evidence of actual damages will be given the opportunity to submit a claim form to receive benefits under the Allocation Plan via the Settlement Website or by mail. *Id*. § II(B). The Claims Submission Period will run for 120 days (120 days from a Preliminary Approval Order). Ex. 2, § III. The proposed claim form is attached as Exhibit 3. Among other things, the Claim Form will inform Class Members that they must fully complete and timely return the Claim Form and supporting documents within the Claim Submission Period to be eligible to obtain a recovery under the Allocation Plan. Ex. 3.

### C. Opportunity to Request Exclusion and Object to Settlement

Class Members may request to be excluded from (opt-out of) the Settlement via a Request for Exclusion. *Id*. § VIII(C). The Settlement Class Notice will provide the deadlines and procedures for exercising this right. *Id*.; Ex. 1. A sample exclusion request form will be included with the Settlement Class Notice. Ex. 1. The exclusion form must be submitted to the Settlement Administrator via U.S. mail or submitted online by the Opt-Out Deadline. *Agr.* § VIII(C). Class Members who object must provide the objection to the Claims Administrator via writing, on or before the Objection Deadline, as specified in the Preliminary Approval Order.

## VIII. THE PROPOSED FINAL APPROVAL HEARING SCHEDULE

Plaintiffs request a formal Final Approval hearing, held jointly for both cases, be scheduled consistent with the proposed schedule in the Preliminary Approval Order.

## IX. CONCLUSION

Plaintiffs respectfully request that the Court: (a) certify the Settlement Class; (b) preliminarily approve the proposed Settlement; (c) appoint Class Representatives and Class Counsel as sought through separate motions, filed simultaneously herewith; (d) approve the class Notice Plan; and (e) schedule a Final Approval Hearing.

RESPECTFULLY SUBMITTED this 17th day of April, 2024.

ROBERT J. WAGONER CO.,
L.L.C.

*s/Robert J. Wagoner*
Trial Attorney
Robert J. Wagoner (0068991)
107 W. Johnstown Road
Gahanna, Ohio 43230
Telephone: (614) 796-4110
Facsimile: (614) 796-4111
Email: bob@wagonerlawoffice.com


Abbas Kazerounian (*Pro Hac Vice*)
KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
(800) 400-6808, Fax (800) 520-5523
ak@kazlg.com


Derek W. Loeser (*Pro Hac Vice*)
Gretchen Freeman Cappio (*Pro Hac Vice*)
Zachary W. Gussin (*Pro Hac Vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
(206) 623-1900, Fax (206) 623-3384
dloeser@kellerrohrback.com
gcappio@kellerrohrback.com
zgussin@kellerrohrback.com


Theodore O. Bartholow III ("Thad") (*Pro Hac Vice*)
Karen L. Kellett (*Pro Hac Vice*)
KELLETT & BARTHOLOW PLLC
11300 N. Central Expressway, Suite 301
Dallas, TX 75243
(214) 696-9000, Fax (214) 696-9001
thad@kblawtx.com
kkellet@kblawtx.com


*Counsel for Consolidated Plaintiffs*

<u>s/ Nathan A. Hunter</u> (0096389)
Trial Attorney
Nathan A. Hunter (0096389)
Hunter & Hunter LLC
1491 Polaris Pkwy #21416
Columbus, OH 43240
Tel: (234) 738-4648
nathan@hunterfirm.org

<u>s/ Knoll Lowney</u>
Knoll Lowney (*admitted pro hac vice*)
Claire Tonry (*admitted pro hac vice*)
Marc Zemel (*admitted pro hac vice*)
Alyssa Koepfgen (*admitted pro hac vice*)
Smith & Lowney, PLLC
2317 E. John Street
Seattle, WA 98112
Tel: (206) 860-2883
knoll@smithandlowney.com
claire@smithandlowney.com
marc@smithandlowney.com
alyssa@smithandlowney.com

*Counsel for Echard Plaintiffs*

## <u>CERTIFICATION OF SERVICE</u>

I, Alyssa Koepfgen, hereby certify that on April 17, 2024, I electronically filed the foregoing with the Clerk of the United States District Court for the Southern District of Ohio Eastern Division using the CM/ECF system, which shall send electronic notification to all counsel of record who have appeared in this action.

<u>s/Alyssa Koepfgen</u>
Alyssa Koepfgen (*pro hac vice*)
